## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESPN ENTERPRISES, INC., a Delaware corporation; ABC CABLE NETWORKS GROUP, a California corporation; INTERNATIONAL FAMILY ENTERTAINMENT, INC., a Delaware corporation; and SOAPnet, L.L.C., a Delaware limited liability company,<br><br>          Plaintiffs,<br><br>    v.<br><br>DISH Network L.L.C., a Colorado limited liability company,<br><br>          Defendant. | Civil Action No. _____<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND INJUNCTIVE RELIEF** |

Plaintiffs ESPN Enterprises, Inc.; ABC Cable Networks Group; International Family Entertainment, Inc.; and SOAPnet, L.L.C. (collectively, "Licensor") for their complaint against Defendant DISH Network L.L.C. ("Dish"), allege as follows:

### NATURE OF THE ACTION

1.　　Licensor brings this action to enjoin Dish's unauthorized transmittal, distribution, and sale of some of the most in-demand and valuable television programming in the country, including the ESPN Network and Disney Channel (the "Licensor Programming"). By offering a "Day Pass" in its Sling Orange service, an action taken without notice to Licensor and without its consent, Dish has violated the terms of its contract, and undermined Licensor's decades-long business model.

2.　　Dish has a limited over-the-top digital license ("OTT License") to distribute the Licensor Programming as part of its streaming Sling TV service, which aggregates linear television networks and accompanying on-demand content and delivers it over the Internet to

subscribers who sign up for monthly subscriptions.[1]  Under this OTT License as well as previous

licenses between the parties, and consistent with the rest of the industry, ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████.  A copy of this OTT License is

attached to this Complaint as **Exhibit A.**

3.       Just days ago, Dish—without consulting Licensor—decided to offer Licensor's

ESPN networks and other Licensor Programming on a transactional basis as part of a new

service called "Day Pass."  In what it heralds as an "industry-first" product,[2] Dish has advertised

that users can watch the ESPN Network "***with no subscription***" at all using the Day Pass service,

for as little as one day.[3]  Dish acted unilaterally, without even informing Licensor of its intention

or seeking comment, and timed its ambush to capitalize on the opening of the college football

and NFL seasons, and specifically telecasts of marquee games on the ESPN Network and

ESPN2.[4]

---

[1] "Over-the-top" or "OTT" refers to a service that distributes programming digitally over the Internet, distinct from broadcast, cable, and satellite distribution.  OTT services include virtual multichannel video programming distributors (virtual MVPDs or vMPVDs), such as Sling TV and YouTube TV, and subscription-based film and television content (SVOD), like Netflix or Amazon Prime.

[2] *Sling TV Launches Industry-First $4.99 Day Pass Redefining How Viewers Watch Live TV*, DISH Newsroom (Aug. 15, 2025), https://about.Dish.com/2025-08-12-Sling-TV-Launches-Industry-First-4-99-Day-Pass-Redefining-How-Viewers-Watch-Live-TV.

[3] *Day Pass by Sling TV*, Sling, https://www.sling.com/service/day-pass (emphasis added). This Complaint refers to Dish's Day Pass, Weekend Pass, and Week Pass options collectively as "Day Pass."

[4] *See Sling TV Launches Industry-First $4.99 Day Pass Redefining How Viewers Watch Live TV*, *supra* n. 2 ("Now [Dish is] breaking the mold again, just in time for football season . . . 'With college football just around the corner, our new Day Pass offering is all consumers need to win on game day, for just $4.99.'").

4.       Rather than a subscription, Day Pass provides users, for a "[o]ne-time charge,"[5] access to live sporting events like headlining football games and other Licensor Programming for a single day, weekend, or week, with no renewal or commitment of any kind. ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████. Day Pass is fundamentally inconsistent with and wholly unauthorized by the OTT License and constitutes a material and ongoing breach of the license.

5.       ████████████████████████████████████████████████████████████, Licensor's business model—its ability to finance, acquire, develop, produce, and program content—is based and dependent on monthly subscriptions to 24/7 network programming that includes hundreds of different programs. Day Pass fundamentally undermines that model by providing access to Licensor's most valuable programming without any subscription at all, permitting users to pick and choose content for as little as one day at a time. The Licensor Programming is central to Dish's Day Pass offering and essential to its value proposition. █

████████████████████████████████████████████████████████████████████

████████████████████████. Dish's Day Pass announcement boasted that the service includes "popular sports channels like ESPN, ESPN2, and ESPN3,"[6] and the front page of Sling TV's website advertised that Day Pass has "your favorite channels," including three different ESPN networks, ESPN4K, Freeform, and Disney Channel, all of which are Licensor networks:

---

[5] *See Plan Comparison*, Sling, https://www.sling.com/service/compare-plans (describing the Monthly plan as a "[m]onthly subscription," compared to the "Day Pass," "Weekend Pass," and "Week Pass," which are available for a "[o]ne-time charge").

[6] *Day Pass by Sling Gives Sports & TV Fans Unparalleled Flexibility Starting at $4.99*, Sling (Aug. 12, 2025), https://www.sling.com/whatson/announcements/sling-day-week-weekend-passes?msockid=200eacf672d36c901ccfbacf73336daf.



6.      Dish's unauthorized conduct is irreparably harming Licensor and must be enjoined.  It not only violates the OTT License, but also jeopardizes Licensor's business model, which is structured around, depends on, and uniformly requires monthly subscriptions.  It also threatens to severely disrupt Licensor's longstanding contractual and business relationships with its distribution partners by offering unauthorized access to Licensor's valuable programming ███████████████████████████████████.  And it devalues Licensor's programming and harms its goodwill with consumers, who have never seen Licensor's prized programming sliced and diced this way.

7.      When Licensor learned—through the media—of Dish's Day Pass offering, Licensor asked Dish to cease and desist, but Dish refused, forcing Licensor to seek relief from this Court.  Licensor accordingly seeks an injunction to stop this illegal distribution and exploitation of the Licensor Programming.  Damages are insufficient to remedy the harm Licensor has suffered and will continue to suffer as a result of Dish's purposeful disregard of Licensor's valuable intellectual property and contract rights.

**PARTIES**

8.      Plaintiffs are a group of parties that granted Dish a limited license to transmit various of Plaintiffs' linear television networks and the content displayed thereon over the Internet to paid subscribers via the OTT License.  Dish now offers these Plaintiffs' networks on the Day Pass service.  These parties are:

a.  ESPN Enterprises, Inc., a Delaware corporation with its principal place of business in Connecticut;

b.  ABC Cable Networks Group, a California corporation with its principal place of business in California;

c.  International Family Entertainment, Inc., a Delaware corporation with its principal place of business in California; and

d.  SOAPnet, L.L.C., a California limited liability company with its principal place of business in California.

9.      Defendant DISH Network L.L.C. is a Colorado limited liability company with its principal place of business in Colorado.  Its sole member is DISH DBS Corporation, which is incorporated in Colorado, with a principal place of business in Colorado.  Dish is the counterparty to the OTT License, which provides limited rights to distribute Licensor's networks via its virtual multichannel video programming distributor (vMVPD) service, Sling TV.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties.  Upon information and belief, Dish is a citizen of Colorado.  As set forth in Paragraph 8 above, each Plaintiff entity is incorporated in a state other than Colorado and has its principal place of business in a state other than Colorado.  Therefore, none of the Plaintiffs is a citizen of Colorado and each Plaintiff is diverse from Dish.

11.      Dish's conduct has caused and will cause Licensor irreparable harm and an injury that exceeds $75,000.

12.      This Court has personal jurisdiction over Dish ███████████████████

███████████████████████████████████████████████████



13.    Venue is proper in this Court pursuant to ████████████████████████, as set forth above, and 28 U.S.C. § 1391(b)(3).

### LICENSOR'S VALUABLE TELEVISION PROGRAMMING

14.    Licensor owns extremely valuable programming, including sports network ESPN and Disney Channel.  Licensor authorizes distribution of these and other linear television networks in the United States by multichannel video programming distributors (MVPDs) and vMVPDs like Sling TV, which provide paying subscribers with linear content on live television networks and accompanying video-on-demand streaming content.  Licensor authorizes unaffiliated distributors like Dish to provide customers access to these networks solely through contractual licenses.

15.    Licensor's linear networks provide an array of content, including a variety of live sports events and original programming, on a 24/7 basis.  The ESPN networks, for instance, telecast both college and professional sports, including various NCAA conferences, the NFL, the NBA, the WNBA; original in-studio programming, such as Pardon the Interruption, SportsCenter, and NFL Primetime; and news and documentaries, such as 30 for 30.  Licensor's networks include hundreds of different programs that appeal to a wide variety of audiences.

16.    Programming and content-acquisition decisions for the networks covered by the OTT License, including the ESPN networks, depend on a monthly subscription model.  For instance, the ESPN networks invest heavily to acquire the exclusive rights to telecast marquee

live sports events like Monday Night Football, the NBA playoffs, and the College Football

Playoff.

17.    What makes those enormous, long-term investments possible is Licensor's ability

to monetize that content on a monthly basis for a specific monthly, per-subscriber fee across

multiple distribution agreements and to reliably forecast the revenue those fees will generate

years down the line.  The economics of the business model do not account for, and are

incompatible with, a transactional service like Day Pass.

18.    An underpinning of this monthly subscription-based business model is to retain

monthly subscribers over the long term by offering an array of valuable content that appeals to

different portions of the market.  For example, many ESPN Network subscribers may subscribe

to an MVPD or vMVPD service like Sling TV to gain access to specific sports categories or

events.  Those subscriber volumes support ESPN's longer-term investments in other

programming, which in turn have contributed to massive growth in certain sport categories (*e.g.*,

women's basketball), benefiting athletes and audience members alike.  Licensor's costs of

acquiring content reflect this reality.

19.    Licensor's programming decisions also depend on the monthly subscription

model.  One salient example is America's national tennis championship, the U.S. Open.

Licensor acquires rights to the U.S. Open based on a packaged multi-week event; it cannot pick

and choose, even though many viewers will only watch a handful of the total number of matches.

Licensor justifies its investment based on the fact that subscribers will pay for at least full month

of access and makes related programming decisions accordingly.  Offering one-time access on a

transactional basis to key U.S. Open matches via a Day Pass would be a very different economic and strategic prospect.

20.    Licensor's agreements with Dish go back decades. 



. ESPN's own direct-to-consumer streaming service, which provides access to the ESPN linear networks, on demand replays, studio shows, and original programming, is also available only on a monthly or annual basis, as is the Disney+ streaming video-on-demand service.

### DISH ANNOUNCES UNAUTHORIZED "DAY PASS" OFFERING

22.    On or about August 12, 2025, Dish publicly announced the Day Pass service via press release.[7]  The press release described Day Pass as "flipping the script on traditional streaming bundles" with a "first of its kind" service.  Dish told the public it was "breaking the mold again, just in time for football season" with "the latest move in Sling's mission to challenge industry norms by creating flexible, fan-first streaming solutions at a time when customers are demanding more control and less cost.  This industry-first product gives viewers instant, 24-hour access to live TV, sports and entertainment without a long-term commitment."  The press release repeatedly stated that Day Pass could be used to watch college football and professional sports, advertising "24 hours of football for $4.99" and access to Licensor networks ESPN, ESPN2,

---

[7] *Sling TV Launches Industry-First $4.99 Day Pass Redefining How Viewers Watch Live TV*, *supra* n. 2.

ESPN3, Disney Channel, and more.  Sling Orange's monthly subscription starts at $45.99.

23.     Dish's website also published an announcement, dated August 12, advertising that consumers did not need a subscription to access the Day Pass service: "Best of all, you don't need to remember to cancel: When your access is up, you won't be charged again until you purchase another Day Pass" because "Day Pass is not a recurring charge."[8]  Again, Dish emphasized that Day Pass "include[s] popular sports channels like ESPN, ESPN2, and ESPN3 (which simulcasts select sports programming on ABC)," and "children's programming on Disney Channel."

24.     ██████████████████████████████████████████████████████████████████████████████████████████████, Dish's website has also prominently advertised that the Day Pass service provides "24 hours of access to ESPN, TNT & more *with no subscription*":[9]



_____

[8] *Day Pass by Sling Gives Sports & TV Fans Unparalleled Flexibility Starting at $4.99*, *supra* n. 6.
[9] *Day Pass by Sling TV*, *supra* n. 3 (emphasis added).

25.     Dish similarly admits in its Frequently Asked Questions that Day Pass is not a subscription, stating that "[w]hen the time expires, you will not be charged again until the next time you order another Sling Day Pass *or subscribe to the service*."[10]  Dish contrasts "[m]onthly subscribers" with those who buy "short term viewing options," *i.e.*, Day Pass.[11]  And on its Plan Comparison page, Dish contrasted its "Monthly" service, which it describes as a "Monthly subscription" with "24/7 access," with its Day Pass service, which is available for a "[o]ne-time charge."[12]

26.     These statements make clear that Day Pass service is a transactional service, which permits customers to access Licensor Programming on a one-time basis without a monthly subscription, or indeed a subscription of any length.

27.     In offering the Day Pass, Dish is delivering and providing customers with access to the following networks of Licensor Programming via the Day Pass service: ESPN, ESPN2, ESPN3, ESPNU, ESPNEWS, ACC Network, SEC Network, SEC Network+, Freeform, Disney Channel, Disney Jr., and Disney XD, either as part of the base offerings or as available add-ons.

28.     Dish did not consult with Licensor before announcing and offering Day Pass. Rather, Licensor learned of Dish's actions through articles in the trade press, such as Deadline.[13] Deadline reported that, according to Sling TV's Senior Vice President of Product and Operations, "programming partners were briefed about the company's plans for the short-term subscriptions."[14]

---

[10] *Id.* (Sling Day Pass FAQ: Is this really a one-time charge?) (emphasis added).

[11] *Sling Orange—Service Details, Channels, & Information*, Sling, https://www.sling.com/service/sling-orange (FAQ: What if I want to cancel?).

[12] *Plan Comparison*, *supra* n. 5

[13] Dade Hayes, *Sling TV Slices up the Bundle, Launching Subscriptions for Day, Weekend and Full Week Starting at $4.99*, Deadline (Aug. 12, 2025), https://deadline.com/2025/08/sling-tv-slices-up-the-bundle-subscriptions-Dish-streaming-1236483566/.

[14] *Id.*

29.     That representation was false.  Even though all but two of the networks prominently displayed in Dish's ads for Day Pass belong to Licensor (with another eight available as Day Pass "Extras"), Dish never consulted with Licensor about the Day Pass service. On the contrary, once it learned about Day Pass, Licensor swiftly contacted Dish to object to the Day Pass on the grounds that it is inconsistent with, and constitutes a breach of, the OTT License, and demanded that Dish cease and desist offering it.  Dish has refused.

30.     After Dish received these communications from Licensor, it began removing references to Day Pass's "one-time access" from its website in an attempt to obscure that its Day Pass offering is unauthorized by the parties' agreement.  For instance, on Dish's main Sling webpage as well as its Plan Comparison page, Dish removed the comparison between a "Monthly subscription" versus the Day Pass "One-time charge":

Original Description:



Modified Description:



31.    Dish also changed its list of highlighted channels on its main Sling TV webpage in an attempt to downplay its reliance on the Licensor Programming:

Original Graphic:



Modified Graphic:



**"DAY PASS" BREACHES DISH'S LIMITED LICENSE TO DISTRIBUTE LICENSOR PROGRAMMING** ████████████████████████████

32.    Licensor and Dish entered into an agreement ██████████████ granting Dish a limited license to distribute Licensor Programming to subscribers through OTT services offered by Dish's Sling TV platform. ████████████████████████████████

████████████████████████████████████████.

33.    The OTT License grants Dish a limited and carefully circumscribed set of non-exclusive distribution rights ████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ .

34.    ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ .

35.    ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

36.    ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

37.    ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

_____

████████████████████████████████████████████

- 13 -

███████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████

38.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

39.    Upon information and belief, ███████████████████████████

████████ until on or about August 12, 2025, Dish has been offering its customers access to

Licensor Programming exclusively on a monthly subscription basis, ████████████

██████████.

40.    Dish's Day Pass program is not permitted by the OTT License.  That agreement

gives Dish the right to distribute Licensor Programming █████████████████████████

███.  Subscribers sign up for a recurring monthly subscription to Dish's vMVPD service, ███

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████ Dish's own advertising requires "no subscription."[16]

---

[16] *Day Pass by Sling TV*, *supra* n. 3.

41.    

42.

43.    Dish's rights ██████████████████████ are limited to those

granted to it by the OTT License.  Those rights do not include Dish's new Day Pass offering.

Dish is in material breach of the OTT License.

### DISH'S UNLICENSED DISTRIBUTION OF THE LICENSOR PROGRAMMING HAS CAUSED AND WILL CAUSE IRREPARABLE HARM

44.    Dish's unauthorized distribution of the Licensor Programming is causing, and will

continue to cause, irreparable harm to Licensor unless and until Dish stops offering Day Pass to

its customers.  Dish's Day Pass is unprecedented in the industry.  Dish itself recognized this,

advertising Day Pass as a "first of its kind" and "industry-first product."[17]  Dish's unprecedented

move threatens Licensor's overall business model in several ways that cannot be remedied by

damages, and such harms continue to worsen each day that Day Pass is permitted to continue.

45.     Licensor's business is the development and distribution of linear television

networks, such as the ESPN networks.  The fundamental mechanics of that business model, from

the cost of licensing content to the networks' programming decisions, are based on monthly

subscriptions.  Allowing distributors to slice and dice these 24/7 linear networks on a day-by-day

basis is inconsistent not only with the basic economics underlying that business model, including

Licensor's programming acquisition costs and the viability of various programming.

46.     Licensor's brand is built on offering linear televisions networks, not transactional

access to its most popular programs.  Licensor has intentionally and strategically chosen to

develop flagship brands like ESPN as 24/7 linear networks that offer a multitude of sports and

related original content, not available through one-time transactions.  Day Pass represents a

serious and imminent threat to the value of these established brands by suggesting that they can

be sold in one-time chunks for $4.99.

47.     Dish's conduct is harming Licensor's goodwill and relationships in the

marketplace with other distributors and causing market confusion about the availability of the

Licensor Programming.  Licensor has already been contacted by other distributors requesting

authorization to distribute Licensor Programming on a less-than-monthly basis as a result of

Dish's actions.  Dish's conduct ███████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[17] *Sling TV Launches Industry-First $4.99 Day Pass Redefining How Viewers Watch Live TV*, *supra* n. 2.

████████████████████████████████████████████████████. Yet Licensor faces the

very real risk that Day Pass starts a domino effect of claims to the contrary.

## COUNT I: BREACH OF CONTRACT

48.     Licensor incorporates herein by this reference each and every allegation contained

in paragraphs 1 through 44 above.

49.     Licensor and Dish are parties to the OTT License, which is a binding contract.

50.     Licensor has performed all material obligations imposed by the OTT License.

51.     Dish's Day Pass, Weekend Pass, and Weekly Pass services, collectively referred

to herein as "Day Pass," constitute a material breach of the OTT License, including the implied

covenant of good faith and fair dealing contained therein, which provides the sole terms by

which Dish is authorized to distribute the Licensor Programming via an OTT service.

52.     As a result of Dish's acts and conduct, including its breach of the OTT License

and the implied covenant contained therein, Licensor has sustained and will continue to sustain

substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

Licensor is informed and believes, and on that basis avers, that unless enjoined by this Court,

Dish will continue to breach the OTT License by advertising, distributing, and selling the

Licensor Programming inconsistent with the terms of the OTT License.  Licensor is entitled to

injunctive relief to restrain and enjoin Dish's conduct.

53.     Licensor has suffered substantial harm attributable to Dish's breach in the period

prior to issuance of an injunction.

## COUNT II: INJUNCTIVE RELIEF

54.     Licensor incorporates herein by this reference each and every allegation contained

in paragraphs 1 through 50 above.

55.     Licensor has a likelihood of success on the merits.

56.     Licensor has sustained and will continue to sustain substantial, immediate, and irreparable injury in the absence of an injunction, including threats to its overall business model, brand strategy and value, confusion in the marketplace, and relationships with other distributors. Remedies available at law, such as damages, are insufficient to remedy these harms. Moreover, quantifying damages would be virtually impossible given the nature of these harms to Licensor's goodwill, marketplace relationships, and fundamental business.

57.     The balance of harms tips strongly in Licensor's favor. Dish just launched the Day Pass service on August 12, 2025. It has no dedicated customer base for the service—on the contrary, Dish explicitly advertised Day Pass as requiring no loyalty or commitment whatsoever. Dish can simply remove Licensor's networks from the service or cease offering it in favor of the monthly subscriptions it has always offered. On the other hand, Licensor is being irreparably harmed in numerous ways, as described herein, that are core to its business functions.

58.     The public interest will not be harmed by an injunction. On the contrary, an injunction would simply restore the status quo, under which the public has a variety of options available to view Licensor Programming pursuant to the terms of valid license agreements.

## PRAYER FOR RELIEF

WHEREFORE, Licensor prays for a judgment in its favor and against Dish as follows:

A.     That Dish is in breach of the OTT License;

B.     An injunction preliminarily and permanently enjoining Dish, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing, from:

        i.     Distributing, marketing, advertising, promoting, displaying, performing, selling, transmitting, or authorizing any third party to distribute, market,

advertise, promote, display, perform, sell, or transmit the Licensor

Programming in any manner other than as a monthly subscription in

accordance with the OTT License, specifically including via Dish's Day Pass,

Weekend Pass, and Week Pass services; and

    ii.    Aiding, assisting, or abetting any other individual or entity in doing any such

act.

C.    Any other and further relief as the Court deems just and proper.

Dated:  August 26, 2025

Respectfully Submitted,

**O'MELVENY & MYERS LLP**

By: _____
Allen W. Burton

Daniel M. Petrocelli*
dpetrocelli@omm.com
Heather Welles*
hwelles@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Allen W. Burton
aburton@omm.com
1301 Avenue of the Americas, 17th Floor
New York NY 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Brian P. Quinn*
bquinn@omm.com
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

* Pro hac vice application forthcoming

*Attorneys for Plaintiffs ESPN Enterprises, Inc., et al.*