**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ESPN ENTERPRISES, INC., et al.,

*Plaintiffs*,

-against-

DISH NETWORK L.L.C.,

*Defendant*.

Civil Action No. 1:25-cv-07169-AS-BCM

**REDACTED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
T: (212) 506-3900

*Attorneys for Defendant DISH Network L.L.C.*

Date: January 2, 2026

# TABLE OF CONTENTS


**I. PRELIMINARY STATEMENT ........ 1**

**II. STATEMENT OF FACTS ........ 3**

A. DISH Launches Sling Passes ........ 3

B. The OTT License ........ 3

1. DISH's Distribution Rights ........ 4
2. DISH's Right to Determine its Retail Pricing ........ 4
3. DISH's Right to Use "Licensor Marks" ........ 5

C. Disney's Counts I and II ........ 6

1. Disney's "Subscription" Breach Claim ........ 6
2. Disney's "Licensor Marks" Breach Claim ........ 7

D. Disney's Allegations on Good Faith and Fair Dealing ........ 8

**III. LEGAL STANDARD ........ 9**

**IV. ARGUMENT ........ 10**

A. Disney's Sling Pass Breach of Contract Claim Fails Because the OTT License Unambiguously Authorizes Sling Passes ........ 10

B. Disney's "Licensor Marks" Breach of Contract Claim Fails, Because [redacted] ........ 11

C. Disney's Implied Covenant Claims Also Fail ........ 15

**V. CONCLUSION ........ 19**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alta Partners, LLC v. Getty Images Holdings, Inc.*,
700 F. Supp. 3d 32 (S.D.N.Y. 2023)....................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................9

*Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*,
145 F.3d 481 (2d Cir. 1998)....................11

*Callahan v. Glob. Eagle Ent. Inc.*,
No. 18-CV-8343 (PKC), 2019 WL 2325903 (S.D.N.Y. May 30, 2019)....................9

*Chanel, Inc. v. The RealReal, Inc.*,
449 F. Supp. 3d 422 (S.D.N.Y. 2020)....................14

*CPTS Hotel Lessee LLC v. Holiday Hospitality Franchising LLC*,
98 N.Y.S.3d 18 (App. Div. 1st Dep't 2019)....................13

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)....................3, 4, 9

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985)....................17

*Great Minds v. FedEx Off. & Print Servs., Inc.*,
886 F.3d 91 (2d Cir. 2018)....................11

*Greenfield v. Philles Recs., Inc.*,
98 N.Y.2d 562 (2002)....................11, 15

*Int'l Info. Sys. Sec. Cert. Consortium, Inc. v. Sec. Univ., LLC*,
823 F.3d 153 (2d Cir. 2016)....................14

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
157 F. Supp. 3d 352 (S.D.N.Y. 2016)....................16

*JA Apparel Corp. v. Abboud*,
568 F.3d 390 (2d Cir. 2009)....................10

*Roberts v. Weight Watchers Int'l, Inc.*,
712 F. App'x 57 (2d Cir. 2017)....................11

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*,
769 F.3d 807 (2d Cir. 2014)....................15, 19

*Southern Telecom Inc. v. ThreeSixty Brands Group, LLC*,
520 F. Supp. 3d 497 (S.D.N.Y. 2021)....................13

*Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*,
147 F.4th 73 (2d Cir. 2025) ....................10

Defendant DISH Network L.L.C. ("Defendant" or "DISH") respectfully submits this Memorandum of Law in support of its Partial Motion to Dismiss the Amended Complaint filed by Plaintiffs ESPN Enterprises Inc., ESPN, Inc., ABC Cable Networks Group, FX Networks, LLC, International Family Entertainment, Inc., NGC Network US, LLC and SOAPnet, L.L.C., WABC Television (NEW YORK), LLC, WPVI Television (PHILADELPHIA), LLC, KABC Television, LLC, KFSN Television, LLC, KGO Television, Inc., KTRK Television, Inc., WLS Television, Inc., and WTVD Television LLC (collectively, "Plaintiffs" or "Disney") ("Am. Compl.," Dkt. 90). DISH moves to dismiss Counts I and II of the Amended Complaint.

## I. PRELIMINARY STATEMENT

Disney filed this lawsuit as a vehicle to block DISH's innovative, consumer-friendly Sling Passes, which provide short-term access to the Sling Orange streaming service. Disney alleges that Sling Passes breach the parties' OTT License and/or violate the implied duty of good faith and fair dealing. Disney also alleges that DISH is contractually prohibited from using Disney's marks in any Sling TV promotions that include Sling Passes. All of Disney's claims related to Sling Passes, pleaded as Counts I and II, fail to state a claim upon which relief may be granted.[1] This Court already ruled, in the context of Disney's preliminary injunction motion (Dkt. 26), that the OTT License unambiguously authorizes Sling Passes. Opinion and Order Denying Preliminary Injunction, Dkt. 85 ("PI Opinion").

*First*, Disney asserts that the OTT License requires that Sling Orange be a "paid subscription" service and that Sling Passes are not "subscriptions." *See, e.g.,* Am. Compl. ¶¶ 34, 56. Disney ignores that the OTT License broadly defines a "Subscriber" as any "person" DISH

---

[1] In the Amended Complaint, Disney added a breach of contract claim that seeks to collect interest on late payments, which is Count III. *See* Am. Compl., ¶¶ 12, 78–83, 112–16. This motion does not address that claim.

"authorize[s] . . . to receive any level of video programming service or package of programming networks via the Sling Platform." OTT License at 33-34. Pursuant to this contractual definition, Sling Pass customers are "Subscribers" and Sling Passes unambiguously qualify as subscriptions. Disney also asserts that the OTT License requires DISH to sell *monthly* subscriptions for access to its television networks. *See, e.g.*, Am. Compl. ¶¶ 28, 62. However, the OTT License nowhere restricts DISH to monthly subscriptions. The Grant of Rights broadly authorizes DISH to distribute Disney's networks to Sling TV Subscribers, without any minimum subscription length. OTT License at 37-39 (§ 2).

*Second*, Disney asserts that it may prohibit DISH from using the names and logos of Disney's networks (contractually defined as "Licensor Marks") [redacted]. *See, e.g.,* Am. Compl. ¶¶ 73-77. Disney's attempt to bar DISH from using Licensor Marks contravenes the contract's plain terms. The OTT License expressly grants DISH [redacted] Moreover, DISH's use of the Licensor Marks is a "fair use."

*Third*, Disney asserts that Sling Passes violate the duty of good faith and fair dealing. However, the Amended Complaint pleads no facts that would support such a claim.

Disney moved for a preliminary injunction on September 11, 2025. In the context of ruling on that motion, this Court endorsed DISH's contract interpretation and rejected the basis for Disney's current claims for breach of contract and breach of the duty of good faith and fair dealing. This Court held that the OTT License "isn't ambiguous" and "plainly includes Sling Passes." PI Opinion at 4, 6. For those same reasons, the Sling Pass claims in Disney's Amended Complaint should be dismissed with prejudice.

## II. STATEMENT OF FACTS[2]

### *A. DISH Launches Sling Passes*

DISH launched Sling Passes on August 12, 2025. Am. Compl. Ex. D. For a one-time fee, Sling Passes provide access to the Sling Orange service for defined time periods on a non-renewing basis. *Id.*, Exs. F and G.[3] Certain Disney networks, including ESPN, are carried on Sling Orange. *Id.*, Ex. G.

### *B. The OTT License*

DISH's distribution of Disney content on the Sling platform is governed by the OTT License (Dkt. 3-1; Dkt. 90-1).[4] Am. Compl. ¶ 2. Pursuant to the OTT License, Sling Orange is a "PSS Service." *See* Am. Compl. ¶ 56; *see also* OTT License at 27 (§ 1). A "PSS Service" is defined as "a video programming service . . . as part of which subscribers then-currently entitled

---

[2] Solely for purposes of this Motion to Dismiss, DISH treats the well-pleaded allegations of the Amended Complaint as true. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010).
[3] DISH originally offered a Day Pass (24 hours), Weekend Pass (Friday through Sunday) and Week Pass (7 days). Am. Compl. Ex. D. DISH discontinued the Weekend Pass. The Sling Passes are now 1 day, 3 days, or 7 days. *See* Ex. 1.
[4] The OTT License is attached to the Amended Complaint as Exhibit A, and incorporated by reference. *See DiFolco*, 622 F.3d at 111.

to receive applicable linear programming networks . . . may access . . . only one stream of content at any time on a paid subscription basis." OTT License at 27 (§ 1). The Disney television networks carried on Sling Orange are "PSS Networks." *Id.* at 27 (§ 1).

### 1. DISH's Distribution Rights

The scope of DISH's distribution rights for Disney networks is defined in the OTT License's "Grant of Rights." OTT License at 37 (§ 2). The Grant of Rights broadly authorizes DISH to distribute the PSS Networks "for reception, viewing, exhibition and display by" the "Network Subscribers to the PSS Network." *Id*. at 37-38 (§ 2(a)(i)). Those Network Subscribers are any and all individuals DISH authorizes to receive any level of video programming service or package of programming networks on the Sling Platform.

The OTT License specifically defines the terms "Subscriber" and "Network Subscriber." OTT License at 21, 33 (§ 1); PI Opinion at 2-3. A "Subscriber" is "a person intentionally authorized by DISH to receive *any level of video programming service or package of programming networks via the Sling Platform.*" OTT License at 33-34 (§ 1) (emphasis added).[5] A "Network Subscriber," in turn, is defined as a "Subscriber intentionally authorized to receive the Subscription Network via the Sling Platform." *Id.* at 21 (§ 1). The Subscription Networks are the full suite of linear cable television networks covered by the OTT License. *Id.* at 34 (§ 1).

### 2. DISH's Right to Determine its Retail Pricing

The OTT License expressly reserves to DISH the right to determine the retail pricing for its Sling TV services. It states: "DISH *shall determine* the retail pricing of each package of programming networks made available via the Sling Platform." OTT License at 73 (§8(g))

[5] The users of DISH's free services on the Sling Platform are included as Subscribers: "For purposes of this Agreement, a person who accesses programming content via the DISH Free Service will be deemed to be a Subscriber." *Id.*

(emphasis added). The OTT License furthermore authorizes DISH to provide temporary access to its paid subscription services at no charge. The PSS Service definition states: "neither offering video content as part of a limited free trial or free preview . . . will disqualify a video programming service from being a PSS Service." OTT License at 27 (§ 1). Indeed, so long as DISH pays License Fees to Disney in accordance with the OTT License, its provision of temporary *free* access to a streaming service is not considered a "Free Preview." OTT License at 13 (§ 1).

**3. <u>DISH's Right to Use "Licensor Marks"</u>**

In the OTT License, [redacted]

The OTT License expressly contemplates that DISH will [redacted]

The OTT License further provides that [redacted]

[redacted]

### *C. Disney's Counts I and II*

In Count I of the Amended Complaint, Disney alleges two breach of contract claims. First, Disney alleges that, in breach of the OTT License, Sling Passes are not "subscriptions." Second, Disney alleges that, in breach of the OTT License, [redacted]

In Count II of the Amended Complaint, Disney alleges that Sling Passes violate the implied covenant of good faith and fair dealing.

#### 1. <u>Disney's "Subscription" Breach Claim</u>

Disney asserts that Sling Passes are not subscriptions and that the OTT License requires that DISH sell monthly subscriptions. Am. Compl. ¶¶ 53–58. These breach allegations may not be credited, because they are belied by the plain terms of the OTT License. As set forth above, the OTT License defines "Subscriber" and "Network Subscriber" in very expansive terms. *See also* PI Opinion at 6.

Disney capitalizes on the phrase "paid subscription basis" in the PSS Service definition to assert that monthly subscriptions are required. Am. Compl. ¶ 56. That phrase merely requires that Subscribers generally pay for access to Sling Orange.[6] Disney concedes in the Amended Complaint that Sling Pass customers pay for the service. *Id.*, ¶¶ 32, 39, 41, 52. The OTT License does not impose any minimum subscription length nor does it require that subscriptions

[6] As set forth above, the PSS Service definition allows DISH to provide free trials and previews without disqualifying the service from being a PSS Service. OTT License at 27 (§ 1).

auto-renew. The Subscriber definition provides that any person receiving *any level of video programming service or package of programming networks via the Sling Platform* qualifies as a subscriber. OTT License at 33-34 (§ 1) (emphasis added).

Disney primarily relies on the license fee terms to assert that the parties contemplated monthly subscriptions. The monthly license fees that DISH pays to Disney are based on the number of "Network Subscribers" to Sling Orange. Those Network Subscribers are counted on the 21st day of each month. OTT License at 70-71 (§ 8(b)(i)). The reference to "Network Subscribers" in the License Fees section "makes clear . . . that this defined term governs who has access to Disney's networks." PI Opinion at 4. While DISH pays license fees to Disney on a monthly basis, the license fee provisions nowhere restrict DISH to monthly subscriptions. "[N]othing in the License Fees provision purports to say that subscribers *must* contract for services for at least a month." *Id.*

The License Fee formula requires DISH to pay a full-month license fee for active Sling Pass customers on the 21st day of a month, even though these customers are not accessing the Sling Orange service for a full month's time. OTT License at 70-71 (§ 8(b)(i)); PI Opinion at 5. This "fees mechanism doesn't lead to absurd results that would counsel departing from the plain language of the agreement." PI Opinion at 5 n.8.

**2. <u>Disney's "Licensor Marks" Breach Claim</u>**

Disney alleges [redacted]

[redacted]

[redacted]

### *D. Disney's Allegations on Good Faith and Fair Dealing*

Disney misguidedly asserts that DISH's actions with respect to Sling Passes, which comply with the OTT License, breach the implied covenant of good faith and fair dealing. Disney takes issue with DISH's Sling Pass pricing, which it claims is "contrary to market standards and . . . arbitrary and irrational." Am. Compl. ¶ 105. Disney also asserts that Sling Passes are improperly designed to avoid paying License Fees. *Id.* And, Disney argues that Sling Passes are aimed to interfere with unspecified business relationships. *Id.*

Disney pleads no facts that would support a claim for breach of the implied covenant of good faith and fair dealing arising out of DISH's contractually authorized Sling Passes. Disney

has not plausibly pleaded that DISH jerry-rigged Sling Passes to evade License Fee payments. *See* PI Opinion at 6 ("[i]f DISH has structured its Passes to purposefully evade the License's payment requirements, then that could constitute . . . breach of the implied covenant of good faith and fair dealing.") Instead, the pleadings show that Disney is paid for Sling Passes at *more* than a *pro rata* rate. *See, e.g.* Am. Compl. ¶ 1, 6, 9, 107 (Disney is paid a full month's License Fee for 5% of Day Passes).

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purposes of a motion to dismiss, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *DiFolco*, 622 F.3d at 110-11. "In assessing the sufficiency of a pleading, a court must disregard legal conclusions," such as a party's interpretation of an unambiguous contract term, "which are not entitled to the presumption of truth." *Callahan v. Glob. Eagle Ent. Inc.*, No. 18-CV-8343 (PKC), 2019 WL 2325903, at *2 (S.D.N.Y. May 30, 2019).

A claim turning on contract interpretation may be resolved on a motion to dismiss when "there is no ambiguity to a contract and the intent of the parties can be determined from the face of the agreement." *Id.* at *3 (quoting *Rounds v. Beacon Assocs. Mgmt. Corp.*, No. 09-CV-6910 (LBS), 2009 WL 4857622, at *3 (S.D.N.Y. Dec. 14, 2009)). When the contract terms material to the dispute are unambiguous, and favor the defendant, a district court may dismiss a breach of contract claim. *Callahan*, 2019 WL 2325903, at *2 (citing *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016)).

"[T]he question of whether a written contract is ambiguous is a question of law for the court," which can determine ambiguity "by looking within the four corners of the document, not to outside sources." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (citations omitted). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Id.* (citing *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)); *see* PI Opinion at 6-7.

## IV. ARGUMENT

### *A. Disney's Sling Pass Breach of Contract Claim Fails Because the OTT License Unambiguously Authorizes Sling Passes*

Disney's Sling Pass breach of contract claim fails, because Sling Passes fit within the OTT License Grant of Rights. Disney cannot show a contractual breach.

The essential elements of a breach of contract claim are "(1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73, 88 (2d Cir. 2025); PI Opinion at 1. In this case, there is no breach.

Sling Pass users qualify as "Subscribers" and "Network Subscribers" under the OTT License. The "Subscriber" definition includes any person authorized to receive "any level of video programming service or package of programming networks" and it contains no minimum subscription length or other restrictions. The Grant of Rights explicitly authorizes DISH to distribute the television networks to Network Subscribers. While "paid subscription basis" is not defined in the OTT License, the parties defined "Network Subscriber" in a way that plainly includes Sling Pass customers. Anyone encompassed in the Network Subscriber definition is a subscriber, and has a subscription, pursuant to the OTT License. *See* PI Opinion at 6 ("As the Court has explained, the definition of 'Network Subscriber' includes anyone authorized to

receive 'any level of video programming service or package of programming networks,' so it plainly includes Pass users.").

Disney did not insert language into the parties' agreement to require that subscriptions must last for one month or more. *See* PI Opinion at 6. Under these circumstances, DISH is authorized to sell short-term subscriptions to Sling Orange.

When a license "is more reasonably read to convey one meaning, the party benefitted by that reading should be able to rely on it; the party seeking exception or deviation from the meaning reasonably conveyed by the words of the contract should bear the burden of negotiating for language that would express the limitation or deviation." *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 487 (2d Cir. 1998); *Great Minds v. FedEx Off. & Print Servs., Inc.*, 886 F.3d 91, 96 (2d Cir. 2018) (same).

While Disney may believe that it is not fairly paid for Sling Pass customers (*see, e.g.,* Am. Compl. ¶¶ 46, 51, 63, 89), that is not a basis for a court to rewrite the parties' contract. *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 570 (2002) ("[A] court is not free to alter the contract to reflect its personal notions of fairness and equity."); *Roberts v. Weight Watchers Int'l, Inc.*, 712 F. App'x 57, 60 (2d Cir. 2017) (same).

The OTT License unambiguously authorizes Sling Passes, which defeats Disney's authorization breach of contract claim.

***B. Disney's "Licensor Marks" Breach of Contract Claim Fails, Because*** [redacted]

Disney claims that DISH breached the OTT License by using "Licensor Marks" [redacted]

[redacted] This breach of contract claim should be dismissed because it fails to state a cause of action. [redacted] In any event, DISH's references to Disney networks are nominative fair use.

In the OTT License, Disney [redacted]

[redacted]

[redacted]

[redacted]

[redacted] New York law does not allow Disney to render illusory DISH's contractual rights [redacted]

In addition, DISH may [redacted] under the nominative fair use doctrine. [redacted]

Disney specifically cites Exhibits D, E, F and H to the Amended Complaint as examples of DISH's purported [redacted] Am. Compl. ¶ 75. These materials do nothing more than inform consumers that Disney's networks are available on Sling Orange and accessible with Sling Passes. Exhibit F is a Sling TV webpage that contains a "Plan comparison" for "Sling TV Plans" including Orange, Blue, Orange & Blue and Select. Dkt. 90-6. That Sling TV webpage states, "We have your favorite channels," listing ESPN, Disney Channel and others. It does not link those channels to Sling Passes. *Id.* at 4, 10.

Exhibit D is a press release dated August 12, 2025 that announces the launch of Sling Passes. On the bottom half of the page, it includes the names of Disney's networks carried on Sling Orange, stating: "Day Pass, Weekend Pass and Week Pass include live and on-demand access to popular networks on Sling Orange like ESPN, ESPN2, ESPN3, TNT, A&E, TBS, Disney Channel, Comedy Central, History Channel and more." Dkt. 90-4 at 3. Exhibit E is a Sling TV webpage that states: "Day Pass grants you instant, 24-hour access to 34 popular channels, including ESPN, TNT, CNN, AMC, and more." Dkt. 90-5 at 3, 8. Exhibit H is a Sling TV blog post that states: "The Day Pass by Sling gives subscribers instant 24-hour access to the 34 channels included with the Sling Orange Service. These channels include ESPN, ESPN2, and

ESPN3 (which simulcasts sports on ABC), live news on CNN, sports and entertainment on TNT and TBS, and Disney Channel for your kids." Dkt. 90-8 at 3.

All of the above materials are routine, in that they merely inform consumers of the content carried on Sling Orange. Indeed, DISH's use of Disney network names comports with fair use. DISH did not need Disney's approval in order to inform consumers that it carries Disney's networks. And, Disney may not vitiate DISH's rights by [redacted]

### *C. Disney's Implied Covenant Claims Also Fail*

Disney attempts to plead an alternative claim for breach of the implied covenant of good faith and fair dealing. Disney's implied covenant allegations all arise out of its dislike of Sling Passes. Disney asserts that Sling Pass pricing is "contrary to market standards and . . . arbitrary and irrational"; Sling Passes are improperly designed to avoid paying License Fees; and Sling Passes are targeted to interfere with Disney's business relationships. Am. Compl. ¶ 105. Disney's allegations fail to state a claim for breach of the implied covenant of good faith and fair dealing.

The implied covenant mandates that "neither party shall do anything [that] will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 817 (2d Cir. 2014). Notably, the implied covenant does not "undermine a party's 'general right to act on its own interests in a way that may incidentally lessen' the other party's expected benefit. *Id.* And, "a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Greenfield*, 98 N.Y.2d at 570.

As set forth above, Sling Passes are contractually authorized. Disney may not invoke the implied covenant as an end-run around the fact that the OTT License allows Sling Passes.

Furthermore, an implied covenant claim may not rest on the same facts as a breach of contract claim. *See Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 369 (S.D.N.Y. 2016), *aff'd,* 850 F. App'x 38 (2d Cir. 2021). Here, the implied covenant claim relies on the very same allegations as Disney's breach of contract claim. *See, e.g.,* Am. Compl. ¶¶ 84, 87 (alleging that DISH's purported "unauthorized distribution of the Subscription Networks" is conduct that "is harming OTT Licensor's goodwill and relationships in the marketplace with other distributors."); *see also* Am. Compl. ¶¶ 46, 51, 63, 89 (alleging that Sling Passes breach the OTT License because Disney believes it is not fairly compensated for them).

Moreover, the implied covenant cannot be used to impose terms that a party has not bargained for. *Alta Partners, LLC v. Getty Images Holdings, Inc.*, 700 F. Supp. 3d 32, 47 (S.D.N.Y. 2023). Disney may not invoke the implied covenant of good faith and fair dealing as a basis to (i) dictate DISH's pricing; or (ii) prohibit Sling Passes.

*Sling Pass Pricing*. DISH's Sling Pass pricing cannot serve as a basis for an implied covenant claim. It is within DISH's express contractual rights to set its pricing. The OTT License provides that "DISH *shall determine the retail pricing* of each package of programming networks made available via the Sling Platform." OTT License at 73 (§8(e)) (emphasis added).

Disney alleges that Sling Pass prices violate the implied covenant because they purportedly are "arbitrary and irrational." Am. Compl. ¶ 105. That contention is demonstrably false. Sling Pass prices are objectively reasonable in relation to the monthly rates for Sling TV. The Sling Orange monthly service retails for $45.99 per month (Am. Compl. Ex. F), which translates to approximately $1.50 per day, $4.50 per three-day weekend and $10.50 per week. The Day Pass is $4.99; the Weekend Pass was $9.99; and the Week Pass is $14.99. *See id.*

DISH currently offers a $29.99 promotional price for one month of *both* Sling Orange and Sling Blue. *See* Am. Compl. Ex. L. The daily price for *two* streaming services pursuant to that promotion is approximately $1. DISH's limited-time offer of $1 Day Passes (Am. Compl. Ex. H), which was in effect from November 19 through November 30, is consistent with DISH's promotional pricing for both Sling Orange and Blue. That $1 Day Pass price also is consistent with the $29.99 monthly price for the ESPN Unlimited streaming service bundled with Disney+ and Hulu. *See* Dkt. 47-2 at 1 ("Special Bundle Offer at Launch: Disney+, Hulu, ESPN Unlimited for $29.99/month for first 12 months").

In any event, DISH's Sling Pass pricing does not injure Disney's right to enjoy the benefits of the OTT License. [redacted]

*Sling Pass License Fees*. In the PI Opinion, this Court stated that, "[i]f DISH has structured its Passes to purposefully evade the License's payment requirements, then that could constitute . . . breach of the implied covenant of good faith and fair dealing." PI Opinion at 6. Disney alleges no facts that might show that Sling Passes were structured to purposefully avoid paying License Fees. Sling Passes are in effect for 24 hours, 72 hours or 7 days. They are standardized so that they begin at the moment that the customer pays for the Pass and expire 24 hours, 72 hours or 7 days later. *See, e.g.,* Dkt. 49 ¶ 7 (the Day Pass has a duration of 24 hours commencing at the time of payment; the Week Pass has a duration of 7 days commencing at the time of payment) (incorporated in the Amended Complaint by reference at ¶ 30).[7]

Disney asserts that it is not paid for 95% of Sling Passes. Am. Compl. ¶¶ 1, 6, 9, 107. The necessary corollary to that assertion is that DISH is paying a full month's License Fee for

[7] The pleadings "include any document attached to it as an exhibit or any document incorporated in it by reference." *Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d Cir. 1985).

5% of Sling Passes customers, even though Sling Passes provide less than a full month of access to Sling Orange. Disney initially alleged that it would only be paid for 1 in 30 Day Pass customers (Dkt. 32 at 21), at a rate of 3.3%, which effectively is *pro rata* payment. Now, Disney alleges that it's paid at the more favorable rate of 5%. Am. Compl. ¶¶ 1, 6, 9, 107. Those allegations do not show that DISH has done anything to manipulate Sling Passes to avoid paying License Fees.

Disney also claims that the three-day Weekend Pass initially was designed to count subscribers on only two of the three applicable days. The Weekend Pass originally began at 4 a.m. Mountain time on Friday and expired at 1 a.m. Mountain time on Monday.[8] Am. Compl. ¶ 65. On October 23, 2025, DISH changed the timing for the Weekend Pass to the 72-hour period spanning from 1 a.m. Mountain time on Friday through 1 a.m. Mountain time on Monday. Dkt. 79; *see also* PI Opinion at 6 n. 8 (DISH addressed the potential "reporting gap" associated with the Weekend Pass); Am. Compl. ¶ 65. DISH subsequently discontinued the Weekend Pass entirely, replacing it with a 3-day pass. *See* Ex. 1.

Under the OTT License, the original Weekend Pass timing, which was in place for only three reporting period snapshots, had no impact on Disney's License Fees, and did not deprive Disney of any contractual benefits as a matter of law. Network Subscribers are counted for License Fee purposes at 3 a.m. on the 21st day of the month. Am. Compl. ¶ 70. In August 2025, the 21st day of the month was a Thursday, which did not implicate the Weekend Pass. In September 2025, the 21st day of the month was a Sunday. On that Sunday, all active Weekend Pass customers would have been counted for License Fee purposes. In October 2025, the 21st

[8] The original Weekend Pass window equated to 6 a.m. Eastern time Friday until midnight Pacific time on Sunday, such that it covered at least the time period from 6 a.m. Friday to midnight Sunday in each continental US time zone.

day of the month was a Tuesday, which did not implicate the Weekend Pass. Thus, based on the plain terms of the OTT License, the hypothetical Weekend Pass reporting gap could not have materialized.

*Disney's Business Relationships*. Disney makes a conclusory allegation that DISH somehow violated the duty of good faith and fair dealing by "intentionally interfering with and undermining [Disney's] businesses and relationships with other network providers." Am. Compl. ¶ 105. Disney pleads no facts related to that portion of its implied covenant claim. In connection with Disney's breach of contract claim, Disney alleges that DISH's purported "unauthorized distribution" is causing it irreparable harm. *See, e.g.,* Am. Compl. ¶ 84. Because Sling Passes are contractually authorized, any incidental impact on Disney's relationships with third parties does not breach the implied covenant. *Sec. Plans*, 769 F.3d at 817.

In sum, Disney has not pleaded an implied covenant claim.

## V. CONCLUSION

For all of the reasons set forth above, Disney's Amended Complaint should be dismissed with prejudice.

Dated: January 2, 2026
New York, NY

**STEPTOE LLP**

By: *Elyse D. Echtman*

Elyse D. Echtman
1114 Avenue of the Americas
New York, NY 10036
T: (212) 378-7551
eechtman@steptoe.com

Michael J. Allan
Michelle Kallen (admitted *pro hac vice*)
Emma Marshak (admitted *pro hac vice*)
1330 Connecticut Ave NW
Washington, DC 20036
T: (202) 429-3000
mallan@steptoe.com
mkallen@steptoe.com
emarshak@steptoe.com

*Attorneys for Defendant DISH Network L.L.C.*

**WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, word count certification, and certificate of service is 6,030.

*/s/ Elyse D. Echtman*
Elyse D. Echtman

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2026, the foregoing was filed with the Clerk of Court for the United States District Court of the Southern District of New York using the CM/ECF system.

I further certify that the following participants in the case were served via email with an electronic copy of the sealed versions of the foregoing:

- Allen W. Burton, aburton@omm.com
- Daniel M. Petrocelli, dpetrocelli@omm.com
- Brian Quinn, bquinn@omm.com
- Heather Welles, hwelles@omm.com

*/s/ Elyse D. Echtman*
Elyse D. Echtman