**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ESPN ENTERPRISES, INC., et al.,

*Plaintiffs*,

-against-

DISH NETWORK L.L.C.,

*Defendant.*

DISH NETWORK L.L.C.,

*Defendant/Counterclaim Plaintiff,*

-against-

ESPN ENTERPRISES, INC., et al.,

*Plaintiffs/Counterclaim Defendants,*

and

THE WALT DISNEY COMPANY, et al.,

*Counterclaim Defendants.*

Civil Action No.

1:25-cv-07169-AS-BCM

**REDACTED**

**REPLY IN SUPPORT OF DISH'S PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
T: (212) 506-3900

*Attorneys for DISH Network L.L.C.*

Date: February 13, 2026

# TABLE OF CONTENTS


**I. INTRODUCTION .......... 1**

**II. ARGUMENT .......... 2**

A. *The OTT License Unambiguously Authorizes Sling Passes* .......... 2

B. *DISH has a License to use the* [redacted] .......... 5

C. *Disney's Implied Covenant Claims Also Fail* .......... 6

1. Disney Has Not Pleaded Purposeful Manipulation of Sling Passes to Evade License fees .......... 6

2. Disney Has Not Pleaded an Arbitrary or Irrational Exercise of Discretion that Destroyed its Contractual Benefits .......... 7

3. Disney's Implied Covenant Claim is Impermissibly Duplicative of its Breach of Contract Claim .......... 9

**III. CONCLUSION .......... 11**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*19 Recordings Ltd. v. Sony Music Ent.*,
97 F. Supp. 3d 433 (S.D.N.Y. 2015)....................8, 9, 10

*City of New York v. Gordon*,
155 F. Supp. 3d 411 (S.D.N.Y. 2015)....................2

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
976 F.3d 239 (2d Cir. 2020)....................10

*Espire Ads LLC v. TAPP Influencers Corp.*,
655 F. Supp. 3d 223 (S.D.N.Y. 2023)....................9

*ESPN Enters., Inc. v. DISH Network L.L.C.*,
No. 25-CV-7169 (AS), __ F. Supp. 3d __, 2025 WL 3215571 (S.D.N.Y. Nov. 18, 2025) .................... *passim*

*Giambalvo v. Suffolk Cnty., New York*,
155 F.4th 163 (2d Cir. 2025) ....................3

*Int'l Tech. Mktg., Inc. v. Verint Sys., Ltd.*,
157 F. Supp. 3d 352 (S.D.N.Y. 2016)....................9

*JN Contemporary Art LLC v. Phillips Auctioneers LLC*,
29 F.4th 118 (2d Cir. 2022) ....................9

*Maniolos v. United States*,
741 F. Supp. 2d 555 (S.D.N.Y. 2010)....................5

*MBIA Ins. Co. v. GMAC Mortg. LLC*,
914 N.Y.S.2d 604 (Sup. Ct. N.Y. Cnty. 2010) ....................9

*Najjar Grp., LLC v. W. 56th Hotel LLC*,
850 F. App'x 69 (2d Cir. 2021) ....................8

*Pall Corp. v. Cleanspace Modular LLC*,
No. 23-cv-02082, 2023 WL 7412096 (S.D.N.Y. Nov. 9, 2023)....................11

*S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*,
520 F. Supp. 3d 497 (S.D.N.Y. 2021)....................6

*Spinelli v. National Football League*,
903 F.3d 185 (2d Cir. 2018)....................10, 11

*Sulzer Mixpac AG v. DXM Co.*,
No. 19 Civ. 9404 (LAP), 2024 WL 3536366 (S.D.N.Y. July 25, 2024) ....................2

*Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*,
No. 20-cv-5015 (VEC), 2021 WL 3668092 (S.D.N.Y. Aug. 17, 2021) ..................................10

Defendant DISH Network L.L.C. ("Defendant" or "DISH") respectfully submits this Reply in further support of its Partial Motion to Dismiss the Amended Complaint, Dkt. 101 ("Mot.").[1]

## I. INTRODUCTION

First, Disney primarily uses its Opposition (Dkt. 137) to reargue this Court's holding that the OTT License is unambiguous and authorizes Sling Passes. That ruling is law of the case. Disney provides no compelling reasons for this Court to depart from its findings on this legal issue. Indeed, the Court's holding is correct. Disney lacks any breach of contract claim related to Sling Passes, because the unambiguous contract terms allow the Passes. The claim should be dismissed.

Second, with respect to Disney's [redacted], Disney acknowledges that it granted DISH a license to [redacted] cannot serve as the predicate for a breach claim.

Finally, Disney has not stated a claim for breach of the implied covenant of good faith and fair dealing. Disney pleads no facts that would support a claim that DISH purposely structured Sling Passes to evade License Fees or that DISH has taken any other action that wrongfully deprives Disney of the fruits of OTT License. And, to the extent Disney's implied covenant claim repeats Disney's breach of contract allegations, it must be dismissed as impermissibly duplicative.

[1] Capitalized terms not otherwise defined have the meaning set forth in the Motion or the OTT License.

## II. ARGUMENT

### *A. The OTT License Unambiguously Authorizes Sling Passes*

In connection with Disney's preliminary injunction motion, this Court held, as a matter of law, that the OTT License "isn't ambiguous" and "plainly includes [Sling] Passes." *ESPN Enters., Inc. v. DISH Network L.L.C.*, No. 25-CV-7169 (AS), __ F. Supp. 3d __, 2025 WL 3215571, at *3, *5 (S.D.N.Y. Nov. 18, 2025). That legal holding, contained in a soon-to-be-published opinion, is law of the case. Disney's opposition repeatedly attacks the Court's holding, and even goes so far as to call it "counterfactual" and "an acontextual misinterpretation of isolated terms that ignores the contract's structure, economic foundation and fundamental bargain." Opp. at 1. Disney asserts that "no ordinary person would ever describe a one-time charge as a 'subscription.'" *Id.* at 3. Disney's invective does not save its breach of contract claim. Disney presents no compelling grounds for this Court to depart from its prior ruling on contract interpretation.

When a district court is faced with a legal question on a motion to dismiss that was previously resolved at the preliminary injunction phase, "good sense dictates that a court interpret the same [contract] in the same way throughout a litigation, unless there is an intervening change in the law." *City of New York v. Gordon*, 155 F. Supp. 3d 411, 419 (S.D.N.Y. 2015). There has been no intervening change in the law here. This issue is governed by black letter principles of contract interpretation.

This Court's legal determination should not be revisited. There is no cogent or compelling reason to do so. *Gordon*, 155 F. Supp. 3d at 419; *Sulzer Mixpac AG v. DXM Co.*, No. 19 Civ.9404 (LAP), 2024 WL 3536366, at *4 (S.D.N.Y. July 25, 2024) ("The law of the case doctrine, although not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons[.]") (citing *In re*

*Peters*, 642 F.3d 381, 386 (2d Cir. 2011) (cleaned up)); *cf. Giambalvo v. Suffolk Cnty., New York*, 155 F.4th 163, 177 n.4 (2d Cir. 2025) (considering the law of the case and concluding, "even in the preliminary injunction posture . . ., a well considered conclusion of law . . . in a published opinion, which addresses a pure issue of law that cannot be impacted by further development of the record, is binding precedent . . . .").

Not only is this Court's prior ruling the law of the case, the Court got it right. Disney generally concedes, as it must, that a Sling Pass customer qualifies as a "Network Subscriber" under the OTT License. *See* Opp. at 2–3, 13–14. Disney argues that Sling Passes nonetheless breach the contract by transforming Sling Orange into something other than a "PSS Service," because Disney contends that Sling Passes are not "paid subscriptions," pursuant to the OTT License. But, "the License makes clear" that "the subscribers to Disney's networks through Sling Orange are" those subscribers "encompassed by the definition of 'Network Subscribers.'" *ESPN,* 2025 WL 3215571, at *2. "The parties didn't leave the definition of who subscribers are up to chance. They spelled it out in the contract." *Id.*

Disney argues that the Court failed to address whether Sling Orange is a PSS Service. Opp. at 15. In fact, the Court directly addressed that issue, stating: "The question is whether the reference to 'paid subscription basis' moves Sling Orange out of the [PSS Service] definition when users access it through Passes, as opposed to traditional monthly subscriptions." *ESPN,* 2025 WL 3215571, at *1. The Court correctly found that, under the OTT License, Network Subscribers have "subscriptions." *Id.* at *1–*2. The Grant of Rights unequivocally provides DISH with a license to distribute each "DISH PSS English Service" to "Network Subscribers." The Court noted that the Passes "are paid for, and they fit within the License's Grant of Rights,

including the express definition of 'Network Subscriber,' which covers anyone receiving 'any level of video programming service or package of programming networks.'" *Id.* at *2 n.1.

Contrary to Disney's arguments, this finding creates no surplusage. *See* Opp at 17. Indeed, the Court found that Disney's interpretation improperly renders the term "Network Subscriber" surplusage. *ESPN*, 2025 WL 3215571, at *2 (Disney did not "explain why the 'Network Subscriber' term is in the License if, as Disney argues, the License's Grant of Rights begins and ends with the undefined term 'paid subscription basis' in the PSS Service definition.").

Disney urges this Court to reconsider its prior ruling and adopt a different understanding of the word "subscription" that is divorced from the relevant contractual context.[2] Opp. at 18–19. Yet Disney presents no reasoned basis for the Court to do so, merely repeating arguments this Court soundly rejected at the preliminary injunction stage. For example, Disney argues that some dictionary definitions describe a subscription as something requiring regular payments. Opp. at 18; *contra ESPN*, 2025 WL 3215571, at *3 ("treating the Passes as subscriptions" does not "necessarily defy" the "conventional understandings about what a 'subscription' is."). Disney argues that the License Fee provisions require monthly subscriptions. Opp. at 19; *contra ESPN*, 2025 WL 3215571, at *3 ("[N]othing in the License Fees provision purports to say that subscribers *must* contract for services for at least a month.") (emphasis in original). Disney points to cases under the Video Privacy Protection Act. Opp. at 18 n.6; *contra ESPN*, 2025 WL

[2] Disney argues that when there are defined and undefined versions of the very same word in a contract, the word can be given different meanings in those different contexts. *See* Opp. at 15–16. That is not the situation here. In this contract, the word "Subscriber" has a "broad definition" that "clearly covers users of the Passes at issue in this case." *ESPN*, 2025 WL 3215571, at *2. The undefined related word "subscription" must be read in context with the "Subscriber" definition and the Grant of Rights. "Disney and DISH included *37 pages* of definitions in the License, precisely to avoid a dispute like this one arising." *Id.* (emphasis in original).

3215571, at *3 n.6 ("that statute isn't at issue here" and the VPPA does not define "subscriber"). And, Disney argues that DISH purportedly admitted that Sling Passes are not subscriptions. Opp. at 2, 18; *contra ESPN*, 2025 WL 3215571, at *5 (after-the-fact statements by employees who weren't involved in contract negotiations shed no light on the parties' intent). None of these arguments moves the needle. Disney has no breach of contract claim.

***B. DISH has a License to use the*** [redacted]

Disney concedes that it granted DISH a license to use the [redacted]. Opp at 3, 8. It also concedes that it is attempting to blanketly [redacted] Disney seeks to squash Sling Passes by [redacted]. The [redacted] claim does not state a claim upon which relief may be granted.

[redacted] does not create issues of fact for purposes of this motion to dismiss. Disney concedes facts that demonstrate it is [redacted]. Because interpretation of an unambiguous contract is a question of law, not fact, a court may interpret an unambiguous contract at the pleading stage, including [redacted]. *Maniolos v. United States*, 741 F. Supp. 2d 555, 566 (S.D.N.Y.

2010), *aff'd*, 469 F. App'x 56 (2d Cir. 2012); *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497 (S.D.N.Y. 2021) ([redacted]).

### *C. Disney's Implied Covenant Claims Also Fail*

Disney premises its implied covenant claims on three theories that all fail as a matter of law. First, Disney makes a conclusory assertion that DISH purposely structured Sling Passes to avoid License Fees, but it pleads no facts showing any manipulation in avoidance of payments. Second, Disney claims that DISH abused its discretion around pricing, but it pleads no facts showing any arbitrary or irrational Sling Pass pricing or that DISH's pricing deprived it of any benefits under the contract. Third, Disney repeats its breach of contract claims, which are impermissibly duplicative, and fail to state a claim.

#### *1. Disney Has Not Pleaded Purposeful Manipulation of Sling Passes to Evade License fees*

Disney makes a conclusory assertion that DISH breached the implied covenant by purposefully structuring Sling Passes to avoid payment of License Fees. Opp. at 25. The supporting "factual allegations" Disney cites do not support that assertion. Disney has not plausibly pleaded any purposeful manipulation that deprived it of License Fees.[3]

Disney repeatedly emphasizes that DISH pays it License Fees for approximately 5% of Sling Pass customers. Opp. at 1, 4, 10, 24, and 28. As shown in DISH's Moving Brief, that equates to *more than pro rata* payment. Mot. at 9, 18. It does not support any claim that DISH is evading License Fees.

---

[3] Disney references the Amended Complaint at ¶¶ 6, 45–50, 52, and 107. Opp. at 25. Paragraphs 6 and 107 contain conclusory statements. Paragraphs 45–50 and 52 reference DISH's promotion of Sling Passes to YouTube TV subscribers who lost access to Disney's networks during contract negotiations.

Disney further concedes that it is paid a full month's rate for Sling Pass customers on high traffic days, such as Sunday, September 21, 2025, which can skew License Fees in Disney's favor. Opp. at 10, 25. While Disney complains that YouTube TV customers may have purchased Sling Passes during the time that Disney imposed a blackout on YouTube TV (October 30 – November 14, 2025), that situation was of Disney's making. DISH did not create the blackout. It merely provided YouTube TV subscribers with an easy option to view Disney networks during Disney's takedown.

Notably, while Disney alleges that DISH manipulated the original timing for Weekend Passes (which has since been changed), it does not dispute that the initial Weekend Pass duration had no impact whatsoever on Disney's License Fees, and thus cannot support the damages element of the claim. Similarly, [redacted] does not give rise to any cognizable injury.

### 2. *Disney Has Not Pleaded an Arbitrary or Irrational Exercise of Discretion that Destroyed its Contractual Benefits*

Disney concedes that DISH has discretion to choose its retail prices. Opp. at 28. Disney claims that DISH abused that discretion by charging arbitrary and irrational prices for Sling Passes. Opp. at 29. That allegation cannot be credited. Disney's allegation is belied by undisputable facts showing that the prices bear a reasonable relationship to monthly rates. DISH's standard prices for Sling Passes represent a premium over 1, 3, or 7 days calculated *pro rata* from the monthly subscription price of $45.99. Mot. at 16. And DISH's limited-time promotional offer of $1 Day Passes is consistent with its promotional offer of both Sling Orange and Blue for a monthly price of $29.99. The relevant benchmarks show that these prices are not arbitrary or irrational.

A party may base an implied covenant claim on an arbitrary or irrational exercise of discretion. *See, e.g., 19 Recordings Ltd. v. Sony Music Ent.*, 97 F. Supp. 3d 433, 438 (S.D.N.Y. 2015) (the implied covenant "works only to ensure that a party to whom discretion is vested does not act arbitrarily or irrationally"). However, Disney has no factual basis to assert arbitrary or irrational behavior in connection with Sling Pass pricing, and does not plausibly allege that DISH "exercise[d] its [pricing] discretion malevolently, for its own gain as part of a purposeful scheme designed to deprive" Disney of contractual benefits. *Najjar Grp., LLC v. W. 56th Hotel LLC*, 850 F. App'x 69, 72 (2d Cir. 2021) (summary order) (cleaned up).

Moreover, Disney has not plausibly alleged that Sling Pass pricing materially deprived it of any cognizable contractual benefit. [redacted] And, if low prices encourage more Sling Pass usage, then Disney makes more money in License Fees. Pursuant to the OTT License, Disney is paid at a full month's rate for any Sling Pass customer active on the 21st day of the month. *ESPN*, 2025 WL 3215571, at *4 ("[T]he License's payment formula requires DISH to pay Disney a full-month license fee for active Pass users on the 21st day of a month, even though they are only signing up for a day, weekend, or week at a time[.]"). Notably, DISH's limited-time $1 Sling Pass promotion included November 21, 2025. This Court has already found that these payment terms do not lead to absurd results. *Id.* at *4 n.8.

Disney complains about harm to its relationship with other distributors. Opp. at 29. These alleged ancillary reputational harms are not the "fruits of the contract." Disney utterly fails to connect them to its contractual benefits.

### 3. *Disney's Implied Covenant Claim is Impermissibly Duplicative of its Breach of Contract Claim*

To the extent the factual allegations underpinning Disney's implied covenant claim and its breach of contract claim are identical, such as Disney's assertions that License Fee structure does not contemplate anything less than a monthly subscription, the claims are impermissibly duplicative, and the implied covenant allegations must be dismissed.

"A claim for violation of the covenant survives a motion to dismiss only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract." *JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (affirming dismissal of implied covenant claim as impermissibly duplicative of breach of contract claim). A party may not rest an implied covenant claim on reiterations of its breach of contract claim with the addition of an assertion of "bad faith." *MBIA Ins. Co. v. GMAC Mortg. LLC*, 30 Misc. 3d 856, 866, 914 N.Y.S.2d 604 (Sup. Ct. N.Y. Cnty. 2010). Claims for breach of the implied covenant must be based on allegations that are distinct from the factual predicate for the contract claims. *Int'l Tech. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 369 (S.D.N.Y. 2016) (dismissing implied covenant claims based on the same allegations as contract claim as improperly "redundant."); *see also 19 Recordings Ltd. v. Sony Music Ent.*, 97 F. Supp. 3d 433, 438 (S.D.N.Y. 2015) ("Where the two claims depend on the same facts, the breach of the implied covenant of good faith and fair dealing claim *must* be dismissed.") (emphasis added); *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 265 (S.D.N.Y. 2023) (New York law does not recognize a separate cause of action for breach of the implied covenant when a breach of contract claim is pleaded based on the same facts). As discussed in the Motion at 16, Disney's implied covenant claim relies on the same factual allegations as the breach of contract claim.

Disney relies on *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, No. 20-cv-5015 (VEC), 2021 WL 3668092, at *7–*8 (S.D.N.Y. Aug. 17, 2021), to argue that the "intent of this [contractual] arrangement was that Licensor would receive payment, on a monthly basis, for each customer to whom DISH sold access to the Subscription Networks," Opp. at 25, and that a payment mechanism whereby Disney is paid a full month's License Fee for every single Sling Pass customer with a Pass active on the 21st of the month violates the implied covenant. But *Trireme* recognized that "a party may not rely on the implied covenant of good faith and fair dealing to avoid the express terms of the contract," and cautioned that "if facts that constitute a breach of the implied covenant claim could have been alleged within Plaintiffs' breach of contract claim, a separate cause of action for breach of the implied covenant cannot stand." 2021 WL 3668092, at *5–*6.

An implied covenant claim requires that a party "directly violate an obligation that may have been presumed to have been intended by the parties." *19 Recordings*, 97 F. Supp. 3d at 438. The implied covenant "does not give rise to new, affirmative duties on contracting parties." *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239, 248 (2d Cir. 2020) (collecting cases). In this case, the Court found that DISH is correct that the OTT License authorizes less-than-monthly offerings that do not auto-renew. Given that DISH has the right to make such offerings, it cannot also be presumed, for purposes of an implied covenant claim, that the parties intended to prohibit these very same offerings.

Disney relies upon *Spinelli v. National Football League*, 903 F.3d 185 (2d Cir. 2018), to argue that it may plead identical claims in the alternative. That case does not stand for such a broad proposition. In *Spinelli*, plaintiff photographers asserted that their contracts with the Associated Press ("AP") prohibited AP from sublicensing their photos at no charge. The Second

Circuit found the contract ambiguous on that issue. *Id.* at 201. The photographers plausibly alleged that AP's complimentary sublicense to the NFL breached their contracts. *Id.* at 201–02. With respect to the alternative good faith and fair dealing claim, the Second Circuit held that the photographers also plausibly alleged that AP had purposefully structured its sublicenses to evade royalty payments, by not attributing *any compensation at all* to the sublicenses for the photos. *Id.* at 206. By contrast, here (as set forth above) Disney does not dispute that it is paid License Fees at a higher than pro rata rate, or that it will receive higher License Fee payments if the 21st of the month is a high-traffic day. DISH has not structured the Sling Passes in a way that avoids incurring License Fees.

While implied covenant claims may, under certain circumstances, be alleged in the alternative, they may not merely repeat the breach of contract claims. *See Pall Corp. v. Cleanspace Modular LLC*, No. 23-cv-02082, 2023 WL 7412096, at *6 (S.D.N.Y. Nov. 9, 2023) (an alternative implied covenant claim must rely on facts distinct from the breach of contract claim). To the extent Disney pleads that "less-than-monthly" and "non-recurring" subscriptions violate the implied covenant, its allegations are indistinct from its claim for breach of contract, and the allegations must be dismissed.

## III. CONCLUSION

For all of the reasons set forth above, Counts I and II of Disney's Amended Complaint should be dismissed with prejudice.

Dated: February 13, 2026
New York, NY

**STEPTOE LLP**

By: */s/ Elyse D. Echtman*

Elyse D. Echtman
Michael Weiner
Evan Glassman
1114 Avenue of the Americas
New York, NY 10036
T: (212) 378-7551
eechtman@steptoe.com
mweiner@steptoe.com
eglassman@steptoe.com

Pantelis Michalopoulos*
Matthew R. Friedman*
Emma Marshak*
1330 Connecticut Ave NW
Washington, DC 20036
T: (202) 429-3000
pmichalopoulos@steptoe.com
mfriedman@steptoe.com
emarshak@steptoe.com

*Attorneys for Defendant/Counterclaim-Plaintiff DISH Network L.L.C.*

* Admitted *pro hac vice*

**WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, word count certification, and certificate of service is 3,481.

*/s/ Elyse D. Echtman*
Elyse D. Echtman

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2026, the foregoing was filed with the Clerk of Court for the United States District Court of the Southern District of New York using the CM/ECF system.

I further certify that the following participants in the case were served via email with an electronic copy of the sealed versions of the foregoing:

- Allen W. Burton, aburton@omm.com
- Daniel M. Petrocelli, dpetrocelli@omm.com
- Brian Quinn, bquinn@omm.com
- Heather Welles, hwelles@omm.com

*/s/ Elyse D. Echtman*
Elyse D. Echtman