

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

April 20, 2026

**Daniel M. Petrocelli**
D: +1 310 246 6850
dpetrocelli@omm.com

<u>**VIA ECF**</u>

The Honorable Arun Subramanian
United States District Judge, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:    ***ESPN Enters., Inc. v. DISH Network L.L.C.*, 1:25-cv-07169-AS —
       Opposition to DISH's Motion to Stay**

Dear Judge Subramanian:

Disney opposes DISH's motion to stay Day Pass-related discovery pending its partial motion to dismiss ("Partial MTD").  Dkt. 198 (the "Motion").  To prevail, DISH must demonstrate "good cause" in light of "the breadth of discovery sought, the burden of responding to it, the prejudice that would result to the party opposing the stay, and the strength of the pending motion forming the basis of the request for stay."  *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018).  It has failed to do so.

*First*, DISH's Motion is too little, too late because the parties have meaningfully advanced discovery in the four months following DISH's Partial MTD, Dkt. 101.

*Second*, DISH's Motion rests on the incorrect assumption that its Partial MTD is likely to succeed and thus obviate the need for this discovery.  But that motion would not dispose of the case even if granted and certainly does not show that Disney's Day Pass claims are "facially without merit," as would be required to justify a stay. *Bennett v. Cuomo*, 2023 WL 2021560, at *2 (S.D.N.Y. Feb. 15, 2023).

*Third*, granting DISH's Motion would result in practically unworkable discovery, given the overlap between the Day Pass discovery DISH seeks to stay and the Most-Favored Nation ("MFN") discovery it wants to pursue.  For the sake of efficiency, should the Court be inclined to grant a stay, it should stay *all* discovery pending resolution of the parties' motions to dismiss.

**I. DISH's Motion to Stay Is Untimely.**

DISH unduly delayed bringing this Motion.  As DISH concedes, *see* Mot. at 2, the parties have actively progressed discovery—serving and responding to written discovery, meeting and conferring over the parties' respective positions, and collecting and producing documents—in the nearly *four months* since DISH filed its Partial MTD.  Indeed, DISH three weeks ago moved to compel further responses from Disney.  Its strategic about-face should not be rewarded. *Cf. Hachette Dist., Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 359 (E.D.N.Y. 1991) (denying stay motion in part because "plaintiffs have already responded to interrogatories" and RFPs were outstanding).

The timeline speaks for itself:  On December 19, 2025, Disney filed its Amended Complaint.  Dkt. 90.  That same day, DISH served its first set of RFPs, seeking discovery

relating to Disney's Day Pass claims, including documents regarding minimum subscription length terms, cancellation policies, terms of service, and Disney's monthly subscription model. Just two weeks later, on January 2, 2026, DISH filed its counterclaims and Partial MTD.

If DISH believed a stay was warranted, that was the time to seek it.  But DISH instead did the opposite.  DISH served additional discovery requests on February 5, 2026—more than a month after moving to dismiss—including a host of new RFPs relating to Day Pass.  DISH then met and conferred *five times* regarding its RFPs, which culminated in DISH filing a (moot) motion to compel Day Pass-related discovery on March 24, 2026.  *See* Dkt. 181.

DISH argues that its ask is effectively the same one this Court recently granted with respect to DISH's antitrust discovery.  Dkts. 188, 197.  Not so.  After Disney moved to dismiss DISH's antitrust counterclaims on February 20, 2026, Disney requested that DISH agree to stay discovery related to that isolated set of antitrust claims just *three days later*—not some four months after the fact.

## II.  DISH Has Not Made a Strong Showing That Disney's Claims Are Unmeritorious.

To demonstrate good cause, DISH must make a "strong showing" that Disney's Day Pass claims are "so meritless as to warrant a stay."  *Bennett*, 2023 WL 2021560, at *2.  "Courts generally decline to grant discovery stays when there is no pending motion that completely disposes of the entire action."  *Cooper v. Off. of Comm'r of Baseball*, 2025 WL 419335, at *2 (S.D.N.Y. Jan. 9, 2025).  Here, DISH has filed only a partial motion to dismiss certain contract claims, recognizing that it has no basis to dismiss Disney's claims that it has underpaid the license fees it owes by millions of dollars.  Dkts. 90, 101.[1]  That alone justifies denying DISH's Motion.  *See Cooper*, 2025 WL 419335, at *2 (finding that this factor weighed against staying discovery pending a partial motion to dismiss without further analysis of the merits).

Moreover, DISH cannot use this Motion as "a vehicle for jumping the queue to receive a preliminary ruling on [its] motion to dismiss."  *Bennett*, 2023 WL 2021560, at *2.  The only question is whether Disney's complaint is "facially without merit," such that Disney has been "unable to cite relevant authority in response to [DISH's] challenge."  *Id.*  DISH cannot satisfy that standard.  Disney offered substantial argument not only on its express breach-of-contract claim, but on its separate claim that DISH violated the implied covenant of good faith— "ordinarily a question of fact to be determined by the jury," *360 N. Rodeo Drive, LP v. Wells Fargo Bank Nat'l Ass'n*, 2024 WL 3159843, at *3 (S.D.N.Y. June 25, 2024).  *See* Dkt. 138 at 11-20, 23-30.  DISH's argument to the contrary relies exclusively on "law of the case," which does not apply.  *See id.* at 15 n.4.  Disney also pleaded a further breach when DISH used Disney's Licensor Marks without permission to promote Day Pass.  *See id.* at 20-23.  DISH never disputed that it failed to seek approval, but argued only that its promotion of an industry-first product was "routine," Dkt. 101 at 11-15—hardly sufficient to meet the good-cause standard.

## III.  Day Pass and MFN Discovery Cannot Practically Be Separated.

"[W]hen weighing the breadth of discovery and the risk of unfair prejudice to the party opposing the stay, courts consider whether the nature of discovery will be fundamentally different from the discovery that [the moving party] would take if a pending motion to dismiss were granted."  *Cooper*, 2025 WL 419335, at *2 (quotation marks and citation omitted).

---

[1] DISH's Motion attacks claims that are intertwined with other claims for which it does *not* seek a stay—unlike Disney's request to stay antitrust discovery, which targeted a distinct subset of claims.

Here, the difficulty of separating Day Pass discovery from discovery related to DISH's counterclaims stemming from supposed violations of the OTT License's MFN provisions further weighs in favor of denial. Courts reject this sort of attempt to obtain "the best of both worlds" by taking discovery on overlapping counterclaims while staying plaintiff's affirmative discovery. *Cambridge Capital LLC v. Ruby Has LLC*, 2021 WL 2413320, at *3 (S.D.N.Y. June 10, 2021).

The Day Pass-related discovery DISH wants to stay and the MFN-related discovery it wants to pursue involve many of the same custodians, search terms, and deponents. For example, DISH RFP 29 seeks "All Documents concerning [Disney's] assessment, evaluation and/or compliance with [its] Most Favored Nation obligations to DISH," while RFP 39 seeks "All Documents concerning any most-favored nation terms between [Disney] and MVPDs and OVDs implicated or triggered by Sling Passes." Both requests target the same universe of conduct— one from the vantage point of Day Pass, and the other from the vantage point of the offers Disney extended to third-party licensees. In response to either request, the search terms should be the same. Yet DISH would have the first RFP proceed while the second is stayed.

The same is true with respect to custodians. In response to DISH's interrogatories seeking persons knowledgeable on these topics, at least five of the six individuals Disney identified for MFN discovery are the same people it identified for Day Pass discovery. DISH similarly identified four individuals involved in both negotiating and assessing DISH's purported MFN rights and developing, approving, and launching Day Pass. Although DISH speculates a partial stay could delay collection from some custodians, Mot. at 2, this duplication is both unavoidable and burdensome.

Staying Day Pass discovery while permitting MFN discovery to proceed would thus result in highly inefficient piecemeal collection and processing of documents from the same custodians, requiring the parties to separately search, collect, review, and produce overlapping materials on two different timelines. It would also result in repeat depositions of most of these witnesses, in direct tension with this Court's Civil Case Management Plan and Scheduling Order, which states that "no deposition shall extend beyond one business day without prior leave of the Court." And it would lead to inevitable disagreements over the stay's scope, further burdening the parties and the Court. *See CT Espresso LLC v. Lavazza Premium Coffees Corp.*, 2022 WL 1639485, at *2 (S.D.N.Y. May 24, 2022) (denying stay where motion to dismiss would not meaningfully reduce discovery's scope). This is again in contrast to the stay of antitrust discovery, which would have required discovery on Disney's Fubo acquisition, the ESPN-Fox One bundle, "skinny sports bundles," and competition in various alleged markets—all of which involve distinct custodians, documents, and issues. *See* Dkt. 188 at 2.

Finally, any burden on DISH is significantly reduced by the fact that it has already produced effectively identical discovery in the *Warner* litigation. DISH objects to Disney's outside counsel obtaining these documents, but that is exactly why the parties already adopted a protective order. *See* Dkt. 20. Nor can DISH justly complain about different ESI standards in the two cases. Disney explicitly asked to conduct joint negotiations so the parties would all be subject to the same protocol, but DISH refused.[2]

The relevant factors do not favor a stay of Day Pass discovery, so the Court should deny DISH's Motion. If the Court were inclined to issue any further stay, the more workable approach would be to stay *all* discovery pending the Court's resolution of all pending Rule 12 motions.

---

[2] DISH's complaint about the timing of Disney's edits to the ESI protocol, Mot. at 2 n.1, is frivolous; Disney provided edits within two weeks of serving its responses to DISH's first set of document requests, after which DISH refused to engage for weeks. *See* Dkt. 182 at 3.

O'Melveny

Respectfully submitted,

*/s/ Daniel M. Petrocelli*

Daniel M. Petrocelli (admitted *pro hac vice*)

*Counsel for Plaintiffs and Counterclaim Defendants ESPN Enterprises, Inc.; ESPN, Inc.; ABC Cable Networks Group; American Broadcasting Companies, Inc.; FX Networks, LLC; International Family Entertainment, Inc.; NGC Network US, LLC; SOAPnet, L.L.C.; The Walt Disney Company; Baby Network Limited*