**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESPN ENTERPRISES, INC.; ESPN, INC.; ABC CABLE NETWORKS GROUP; AMERICAN BROADCASTING COMPANIES, INC.; FX NETWORKS, LLC; INTERNATIONAL FAMILY ENTERTAINMENT, INC.; NGC NETWORK US, LLC; SOAPnet, L.L.C.; WABC TELEVISION (NEW YORK), LLC; WPVI TELEVISION (PHILADELPHIA), LLC; KABC TELEVISION, LLC; KFSN TELEVISION, LLC; KGO TELEVISION, INC.; KTRK TELEVISION, INC.; WLS TELEVISION, INC.; and WTVD TELEVISION LLC, | |
| *Plaintiffs*, | Case No. 1:25-cv-07169-AS |
| v. | |
| DISH NETWORK L.L.C., | **COUNTERCLAIM DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS AMENDED COUNTERCLAIMS, OR IN THE ALTERNATIVE, TO STRIKE OR FOR A MORE DEFINITE STATEMENT** |
| *Defendant*. | |
| DISH NETWORK L.L.C., | |
| *Defendant/Counterclaim Plaintiff*, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| ESPN ENTERPRISES, INC.; ESPN, INC.; ABC CABLE NETWORKS GROUP; AMERICAN BROADCASTING COMPANIES, INC.; FX NETWORKS, LLC; INTERNATIONAL FAMILY ENTERTAINMENT, INC.; NGC NETWORK US, LLC; and SOAPnet, L.L.C., | |
| *Plaintiffs/Counterclaim Defendants*, | |
| and | |
| THE WALT DISNEY COMPANY; BABY NETWORK LIMITED; FUBOTV INC.; and FUBOTV MEDIA INC., | |
| *Counterclaim Defendants*. | |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................. 2

    A.  DISH's Opposition Underscores the Implausibility of Its Tying Claims. ............. 2

        1.  DISH's shifting tying-market theory makes no sense. ............................ 3

        2.  DISH cannot sidestep its failure to adequately plead market power. ........ 4

        3.  DISH fails to plead a tied product market or anticompetitive effects in it. ............................................................................................................ 7

    B.  DISH's Arguments on the Fubo Merger Do Not Move the Needle. ..................... 7

    C.  DISH's Conspiracy Claims Are Still Nonstarters. ............................................... 10

    D.  DISH Cannot Recast Its Implausible Theories Into an Attempted-Monopolization Claim. ...................................................................................... 11

    E.  DISH's Count XII Allegations Are Still Insufficient. ......................................... 12

III. CONCLUSION ........................................................................................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Am. Praetorian v. N.Y. Times Co.*,
  2025 WL 949575 (S.D.N.Y. Mar. 28, 2025) ........................................................................ 4, 7

*Arista Records*,
  604 F.3d 110 (2d Cir. 2010) ................................................................................................. 12

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
  996 F.2d 537 (2d Cir. 1993) ................................................................................................. 10

*Choh v. Brown Univ.*,
  2026 WL 905018 (2d Cir. Apr. 2, 2026) ................................................................................ 4

*DeMartini v. Microsoft Corp.*,
  662 F. Supp. 3d 1055 (N.D. Cal. 2023) ................................................................................. 9

*FTC v. IQVIA Holdings Inc.*,
  710 F. Supp. 3d 329 (S.D.N.Y. 2024) ................................................................................... 11

*FTC v. Penn State Hershey Med. Ctr.*,
  838 F.3d 327 (3d Cir. 2016) ................................................................................................... 8

*FTC v. Tronox Ltd.*,
  332 F. Supp. 3d 187 (D.D.C. 2018) ........................................................................................ 8

*FuboTV, Inc. v. Walt Disney Co.*,
  745 F. Supp. 3d 109 (S.D.N.Y. 2024) ................................................................................... 11

*Gianna Enters. v. Miss World (Jersey) Ltd.*,
  551 F. Supp. 1348 (S.D.N.Y. 1982) ...................................................................................... 12

*Hack v. President & Fellows of Yale Coll.*,
  237 F.3d 81 (2d Cir. 2000) ..................................................................................................... 5

*Illumina v. FTC*,
  88 F.4th 1036 (5th Cir. 2023) ................................................................................................. 9

*Illumina, Inc. & Grail, Inc.*,
  FTC Docket No. 9401 (Mar. 30, 2021) ................................................................................... 9

*Int'l Distrib. Ctrs, Inc. v. Walsh Trucking Co.*,
  812 F.2d 786 (2d Cir. 1987) ................................................................................................... 6

*Kaufman v. Time Warner*,
  836 F.3d 137 (2d Cir. 2016) ................................................................................................... 6

*LLM Bar Exam, LLC v. Barbri, Inc.*,
  271 F. Supp. 3d 547 (S.D.N.Y. 2017) ................................................................................. 3, 4

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
  709 F.3d 129 (2d Cir. 2013) ................................................................................................. 10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Mediacom Comc'ns Corp. v. Sinclair Broad. Grp.*,
460 F. Supp. 2d 1012 (S.D. Iowa 2006) ...................................................... 5

*My Mavens LLC v. Grubhub, Inc.*,
2023 WL 5237519 (S.D.N.Y. 2023)........................................................... 12

*Phhhoto Inc. v. Meta Platforms, Inc.*,
2026 WL 872963 (E.D.N.Y. Mar. 30, 2026).............................................. 5

*Reisner v. Gen. Motors Corp.*,
511 F. Supp. 1167 (S.D.N.Y. 1981), *aff'd* 671 F.2d 91 (2d Cir. 1981) ..................................... 7

*Shak v. JPMorgan Chase & Co.*,
156 F. Supp. 3d 462 (S.D.N.Y. 2016) ...................................................... 5

*U.S. Steel Corp. v. Fortner Enters., Inc.*,
429 U.S. 610 (1977)............................................................................. 5, 6

*Walker v. Merrill Lynch & Co.*,
181 F. Supp. 3d 223 (S.D.N.Y. 2016) ...................................................... 4

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (4th & 5th eds. 2025)................... 6, 7, 8

## I.    INTRODUCTION

DISH cannot state a claim by citing a complaint that another party filed two years ago in a different action with different facts. This case is not *FuboTV,* and the ground has shifted under DISH's feet in the intervening years. DISH's Opposition only confirms that its claims warrant dismissal.

DISH cannot plausibly plead the gravamen of its complaint—that Disney schemes to prevent the emergence of "skinny sports bundles." When the court decided *FuboTV*, there were no "skinny sports bundles." Even DISH admits now there are five: YouTube TV Sports Plan, Fox One, Fubo Sports, ESPN Unlimited, and ESPN/Fox One, to say nothing of DIRECTV's MySports and Comcast Xfinity's Sports & News TV. DISH's gripe is that Disney forecloses competition by preventing the emergence of sports-focused offerings, but DISH's own pleadings show the opposite is true.

DISH does not and cannot plead many of the key allegations and theories undergirding the *FuboTV* decisions. DISH advances an entirely different (and unsupported) tying market, fails to plead market power in that market, doesn't plead *any* facts to support allegations of harm in the tied market, and cannot point to any restraint on any programmer's ability to launch additional bundles. What's more, DISH's reliance on *FuboTV* is misplaced because that case did not involve and cannot buttress the majority of claims DISH brings here: there were no challenges to the Fubo acquisition or the Fubo Sports and ESPN/Fox One bundles, nor an attempted-monopolization claim.

DISH goes so far down the *FuboTV* rabbit hole that it fails to address many arguments in Disney's Motion.

1

- Disney demonstrated that DISH fails to plausibly allege a tying market (Sports Programming) or tied markets (non-sports programming genres).  Mot. 8, 11-12. [1] DISH does not respond.

- Disney showed why DISH's "practical indicia" do not support a Skinny Sports Bundle market.  Mot. 25-26.  DISH recasts those indicia as "illustrative" and urges the Court to accept its market definition because of "business reality," whatever that means here.  Opp. 25.

- Disney explained that DISH's foreclosure-incentive theory (undergirding the merger, conspiracy, and attempted-monopolization claims) is factually unsupported and inconsistent with DISH's pleadings.  Mot. 19-21, 24, 26.  DISH offers no answers.

DISH was content when it had the skinniest offerings (Sling Orange and Blue).  Now that it faces more competition, it cries foul.  But the antitrust laws protect competition, not a flailing competitor *from* competition.  The Court should dismiss Counts I through VII and XII.

## II.    ARGUMENT

**A.    DISH's Opposition Underscores the Implausibility of Its Tying Claims.**

Fundamental pleading failures permeate DISH's tying claims.  It refuses to adequately (or consistently) plead a tying product market or power within that market.  DISH doesn't do any better with tied-market definition, and its own pleadings demonstrate the absence of anticompetitive effects.

---

[1] Unless otherwise noted, all internal quotation marks are omitted and emphasis is added, and Counterclaim-Defendants use the abbreviations from their memorandum in support of their Motion (Dkt. 185).  "Mot" refers to Dkt. 185, and "Opp." refers to Dkt. 193.

**1.     DISH's shifting tying-market theory makes no sense.**

DISH has yet to present a plausible and coherent explanation of its alleged tying market—an essential element of its tying claims.  Mot. 6-7.  DISH first alleged a Commercially Critical Sports Networks ("CCSNs") tying product market.  Counterclaims, Dkt. 106 ¶ 115.  In its Amended Counterclaims, it insists that the tying market is CCSNs in some places and Sports Programming in others.  AC ¶¶ 115, 118, 242.  Now DISH argues CCSNs and Sports Programming are the same because all networks in the Sports Programming market are commercially critical.  Opp. 7, n.2.  This is untenable.

To start: nothing in DISH's pleadings suggests that every network carrying sports is "commercially critical," which DISH defines as "programming that an MVPD or OVD *must* license to offer a commercially viable offering."  AC ¶ 115.  "It is axiomatic that a complaint cannot be amended by the briefs in opposition to a motion to dismiss."  *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 580 (S.D.N.Y. 2017).

Even if DISH had alleged that a distributor could not survive without *every* network carrying *any* sports programming (even niche offerings like the Tennis Channel or World Fishing Network), the allegation would defy common sense.  It runs counter to the *FuboTV* case DISH tries to mimic.  The tying market there consisted of "commercially critical sports channels," which Fubo identified as ESPN, NBC, CBS, ABC, and FOX.  Dkt. 194-2 ¶¶ 199, 202.  Fubo excluded "other sports networks such as ESPN Deportes and the Golf Channel" that "include sports content" but are "not critical (standing alone) to the viability of a traditional streaming package."  *Id*. ¶ 203.  In short, DISH relies almost entirely on a prior case while diligently ignoring that the accepted market definition in that matter directly conflicts with the market it asserts in this one.

3

Setting aside its incongruous claim that all sports programming is commercially critical, DISH never responds to Disney's argument that it fails to give notice of the Sports Programming market's boundaries or identify its contours based on interchangeability or *Brown Shoe* factors. Mot. 8. Earlier this month, the Second Circuit affirmed the rejection of a market definition at the pleading stage for similar reasons. *Choh v. Brown Univ.*, 2026 WL 905018, at *3 (2d Cir. Apr. 2, 2026). *Choh* repudiated an "Ivy-plus" market because the "[p]laintiffs put forth no accounting of which universities or colleges comprise [the market], nor [did] they make clear the boundaries of the market with respect to" certain *Brown Shoe* factors. *Id.* The same is true here. Without a plausibly defined tying product market, DISH has no tying claim. *See Walker v. Merrill Lynch & Co.*, 181 F. Supp. 3d 223, 235 (S.D.N.Y. 2016).

### 2.    DISH cannot sidestep its failure to adequately plead market power.

DISH abandons any indirect showing of market power in its Opposition and otherwise fails to plausibly plead direct evidence. The Court can make quick work of the former. Disney's alleged 36% share of a Sports Programming market is both uninformative (it includes Disney networks that were never alleged to be commercially critical) and insufficient. Mot. 9-10. DISH offers no rejoinder. "It is well-established that a plaintiff effectively concedes a defendant's arguments by his failure to respond to them." *1st Am. Praetorian v. N.Y. Times Co.*, 2025 WL 949575, at *11 (S.D.N.Y. Mar. 28, 2025).[2]

---

[2] Again, DISH improperly attempts to amend its pleadings in its Opposition by citing a new 43% share. Opp. 12; *Barbri, Inc.*, 271 F. Supp. 3d at 580. Even if it were part of the pleadings, the 43% is as uninformative as the 36%. Mot. 9.

DISH's direct-evidence showing fares no better.  None of its arguments demonstrates "direct evidence of … price control or exclusion of competitors from a particular market."  *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 482 (S.D.N.Y. 2016).[3]

*Unique content.*  A bare assertion that "ESPN controls content with a 'unique character'" is not enough.  Opp. 9; *see Mediacom Comc'ns Corp. v. Sinclair Broad. Grp.*, 460 F. Supp. 2d 1012, 1027-28 (S.D. Iowa 2006).  Most television networks offer "unique content," and it cannot be the case that each commands market power.  DISH's theory that *every* network with sports programming is commercially critical necessarily implies that ESPN does not have "some advantage not shared by [its] competitors in the market for the tying product" that confers market power.  *U.S. Steel Corp. v. Fortner Enters., Inc.*, 429 U.S. 610, 620-21 (1977); *see also Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 86 (2d Cir. 2000) ("there are many institutions of higher learning providing superb educational opportunities" other than Yale).  Nor can DISH rely on *FuboTV*.  The court there explicitly based its finding of direct evidence of market power on the defendants' control of "three of the five … most-watched channels by consumers."  Dkt. 194-3 at 153.  There is no corresponding allegation here.

*Pricing of non-critical networks.*  DISH says that Disney charges "disproportionately high" rates for non-critical networks, yet it doesn't identify a single fact—much less the "require[d] empirical evidence"—to support that bare assertion.  Opp. 10; *Phhhoto Inc. v. Meta Platforms, Inc.*, 2026 WL 872963 at *10-11 (E.D.N.Y. Mar. 30, 2026).  If DISH paid "disproportionately high" rates for Disney's non-critical networks compared to other programmers', it should have pleaded supporting facts from its own carriage agreements.

---

[3] That includes a selective 10-year-old quotation from then-CEO Bob Iger expressing his view of the importance of his company's product.

There's more: the prices for *non-critical* networks (the tied products) say nothing about whether Disney commands market power in the *tying* product market. "Proof that [plaintiff] paid a higher price for the tied product is consistent with the possibility that the [tying product] was unusually inexpensive and that the price for the entire package was equal to, or below, a competitive price." *Fortner*, 429 U.S. at 618 (1977); *see also Kaufman v. Time Warner*, 836 F.3d 137, 143 (2d Cir. 2016) (examining the price of the "tied package," not the tied product); Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ("Areeda") ¶ 1738f (4th & 5th eds. 2025). DISH cannot point to a single allegation showing the pricing of Disney's CCSNs or the entire bundle is supracompetitive.

*"Forc[ing] DISH to license non-critical television networks."* Opp. 10. Coercion is a separate element of a tying claim. Substituting it for well-pleaded market power allegations would effectively eliminate the latter as a distinct element. *Kaufman*, 836 F.3d at 141.

*Barriers to entry.* Adequately pleaded entry barriers are a necessary element (along with high market share) of an indirect showing. *Int'l Distrib. Ctrs, Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 792 (2d Cir. 1987). But they are not direct evidence of market power. If they were, a plaintiff could sufficiently allege market power for a firm with a 1% share in a market with high entry barriers.

*    *    *

DISH's failure to plead market power stymies its rule of reason and *per se* tying claims, the latter of which requires a heightened showing (and DISH does not dispute that a 36% share does not cut it). Mot. 10. DISH abandons the indirect-evidence route, *id*., and DISH's direct-evidence showing does not cross the plausibility threshold.

6

### 3.    DISH fails to plead a tied product market or anticompetitive effects in it.

DISH says that it needn't adequately plead a tied product market, Opp. 8, but it never grapples with the difference between a *per se* tying claim—for which this Court has held that a tied-product market definition is unnecessary—and a rule of reason claim—for which it is.  Mot. 14.  DISH has nothing to say on the merits, so it dodges.  It claims Disney never attacked the proposed tied "markets defined by various non-sports programming genres."  Opp. 8-9.  That's wrong.  Disney explained that DISH's allegations did not delineate the boundaries of those tied markets or analyze interchangeability.  Mot. 11-12.  DISH never responds, so it concedes the point.  *N.Y. Times*, 2025 WL 949575, at *11.

DISH likewise fails to join issue on anticompetitive effects.  It claims its "allegations of anticompetitive effects in the tied markets track *FuboTV*."  Opp. 14.  But it never addresses the key distinctions the Motion highlighted.  Fubo alleged specific networks it would have licensed but for the tie; DISH does not.  Mot. 12-13.  DISH's pleadings, by contrast, explain that DISH wants to *forego* a license to non-critical networks.  Mot. 14-15.  It doubles down in its Opposition.  Opp. 1.  Those assertions disprove even a "minimal showing" of *any* foreclosure in the licensing of non-critical networks, which means DISH cannot adequately plead its rule-of-reason or *per se* theories.[4]  Mot. 14-15.  The Court should dismiss Counts I and VII.

### B.    DISH's Arguments on the Fubo Merger Do Not Move the Needle.

DISH's Opposition cures none of the defects in its claims challenging the Fubo acquisition.  Three shortcomings are particularly glaring.

---

[4] DISH's reliance on harm manifesting *outside* the tied market contravenes black-letter law.  *See, e.g., Reisner v. Gen. Motors Corp.*, 511 F. Supp. 1167, 1179 (S.D.N.Y. 1981) (the "suppression of competition must be found" in the tied market), *aff'd* 671 F.2d 91 (2d Cir. 1981); Areeda ¶¶ 1704a, 1704e2, 1709a, 1727a.

*First*, DISH offers no explanation for its delay in seeking divestiture.  It does not deny that it waited a year after the transaction's announcement and more than two months after closing to seek that remedy.  And it does not address the line of cases rejecting divestiture in similar circumstances.  Mot. 15-16; Opp. 17.  Instead, DISH cites a single case from over 50 years ago and insists that divestiture would be "simple" and "easy" to administer.  Opp. 17.  Contemporary courts and the leading antitrust treatise disagree.  *See* Mot. 15- 16; *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 352-53 (3d Cir. 2016) (it is "extraordinarily difficult" to manage a divestiture after a transaction closes); *FTC v. Tronox Ltd.*, 332 F. Supp. 3d 187, 217 (D.D.C. 2018) ("divestitures are really hard to do, particularly post-consummation"); Areeda ¶ 990c ("significant problems of 'unscrambling the egg'").  And DISH does not support its argument about the feasibility of divestiture with a single factual allegation in its pleadings.  Opp. 17, n.6.  The Court should hold that remedy unavailable.

*Second*, DISH does nothing to resuscitate its vertical merger theory.  In response to Counterclaim-Defendants' argument that DISH did not plausibly allege harm to competition or to itself, DISH equivocates.[5]  It cannot explain away its own self-defeating allegations, including that Disney licensed YouTube TV to offer a skinny bundle *after* closing its transaction with Fubo.  Mot. 17-21.  And it does not identify facts that make this speculative foreclosure theory plausible.  The upshot is that DISH has no good answers on the standing and injury to competition elements of its Section 7 claims.

Grasping at straws, DISH hypothesizes that foreclosure remains a concern if Disney bars "a substantial number of rivals, even if some competitors remain able to obtain access" to its

---

[5] Those claims independently fail because DISH does not plausibly plead a Skinny Sports Bundle Market.  *See infra* at 11-12.

programming.  Opp. 20.  But DISH does not identify *any* other foreclosed rival, let alone a "substantial number."  Regardless, DISH misses the point—if Disney did not foreclose YouTube TV following the Fubo transaction, why is it plausible to expect that it would foreclose anyone else?

Ultimately, DISH's Section 7 claim hinges on the proposition that, even though Disney had not previously licensed skinny-bundle rights to DISH, Disney would do so in renewal negotiations but for the transaction.  DISH's pleadings are bereft of any factual support for that claim.  As the court explained in *DeMartini v. Microsoft Corp.*, 662 F. Supp. 3d 1055 (N.D. Cal. 2023), a plaintiff's *ipse dixit* about economic incentives doesn't suffice when it "do[es] not make any factual allegations that support the conclusory incentive assertion."  *Id.* at 1063.  This case is clearer than *DeMartini* because DISH cannot muster facts that support its theory, and instead pleads facts that undercut it.[6]

*Third*, DISH abandons its horizontal theory of harm.  It originally alleged the transaction "eliminated head-to-head rivalry [and] increased post-merger concentration."  AC ¶¶ 270, 277.  Confronted with the argument that it lacks standing to pursue that theory, DISH rehashed its vertical theory.  Opp. 15-16; 20 (arguing the acquisition "reinforce[s] the risk of vertical foreclosure").  Once again, DISH declines to respond and concedes the point.

*    *    *

---

[6] DISH's citation to *Illumina v. FTC*, 88 F.4th 1036 (5th Cir. 2023), doesn't help its cause.  The FTC's complaint pleaded detailed facts demonstrating that the benefits of foreclosure exceeded its costs.  Complaint ¶ 76, *Illumina, Inc. & Grail, Inc.*, FTC Docket No. 9401 (Mar. 30, 2021).  And unlike DISH, the FTC did *not* plead facts that undermined that theory.

DISH cannot support its divestiture request, mangled its vertical theory, and abandoned its horizontal theory. The Court should dismiss Counts IV (horizontal and vertical) and V (horizontal).

## C.  DISH's Conspiracy Claims Are Still Nonstarters.

DISH's pleading problems extend to its conspiracy claims. It fails to "allege enough facts to support the inference that a conspiracy actually existed," *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013), and its anticompetitive-effects allegations fall flat.

*First*, DISH abandons the only conspiracy "plus factor" it alleges.[7] DISH asserts in its pleadings that Disney acted against its self-interest in licensing programming for Fubo Sports. AC ¶ 82. After Disney pointed out DISH's failure to explain "why it would be irrational for a programmer to unilaterally agree to license some but not all of its networks to Fubo Sports," Mot. 22, DISH pivots to plus factors it never pleaded—motive and opportunity to conspire. Opp. 22. Those don't work either. Fox and CBS have no motive to conspire with Disney to create a product they do not own and that competes with their own. Mot. 23. Nor does DISH explain how three separate competitors could together "monopolize" a market. Opp. 22. Similarly, DISH does not explain how the *FuboTV* settlement could create an opportunity to conspire when CBS was never a party to that deal.[8]

*Second*, DISH's anticompetitive-effects allegations are equally inexplicable. DISH never addresses the tension in its position that competition should lead to more sports-centric offerings,

---

[7] Without direct evidence of conspiracy, DISH must adequately plead plus factors that "lead to an inference of conspiracy." *Citigroup*, 709 F.3d at 137.

[8] "The mere opportunity to conspire does not by itself support the inference that such an illegal combination actually occurred." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 545 (2d Cir. 1993).

and its claim that the creation of ESPN/Fox One bundle and Fubo Sports are anticompetitive.

Mot. 24.  Instead, DISH marshals its already discredited foreclosure-incentive theory again.

That theory is just as speculative and inconsistent here as it is in the merger context.

*FuboTV* cannot solve DISH's problem.  Unlike Fubo, DISH never alleges that *any* of the

challenged arrangements prevent participating programmers from launching *other* similar

offerings.  Mot. 26; *cf. FuboTV, Inc. v. Walt Disney Co.*, 745 F. Supp. 3d 109, 140-41 (S.D.N.Y.

2024).  There is no "restraint" here.  But DISH doesn't grapple with that problem.  Instead, it

dwells on an irrelevant analysis of whether launching Venu was profitable in the long run.  Opp.

24.[9]  DISH has not pleaded facts plausibly suggesting the existence of a conspiracy or an

anticompetitive effect.  The Court should dismiss Counts II and III.

**D.    DISH Cannot Recast Its Implausible Theories Into an Attempted-Monopolization Claim.**

DISH hasn't solved the problems with market definition, exclusionary conduct, and

specific intent that Disney identified in its Motion.

On market definition, DISH's rote recitation of "practical indicia" pleadings do not make

its "skinny sports bundle" market plausible.  Mot. 25-26; Opp 18-19.  DISH tries to relegate

those indicia to the background.  Opp. 25 ("practical indicia are only illustrative").  But their

replacement—an assertion that the Court should conduct an ephemeral "business reality" gut

check[10]—is just as unavailing.  DISH must plead a market with facts that bear a "rational relation

to the methodology courts prescribe to define a market," including "the interchangeability of use

---

[9] To the extent DISH suggests that the goal of Fubo Sports and ESPN/Fox One bundle is to monopolize skinny sports bundles, its admission that there are five skinny sports offerings already in the market (including YouTube TV) is fatal.

[10] The case DISH cites for this proposition includes a lengthy analysis of the *Brown Shoe* practical indica and a hypothetical monopolist test.  *FTC v. IQVIA Holdings Inc.*, 710 F. Supp. 3d 329, 355-76 (S.D.N.Y. 2024).

or the cross-elasticity of demand" and the *Brown Shoe* practical indicia. *Gianna Enters. v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348, 1354 (S.D.N.Y. 1982). Market definition by vibes doesn't suffice.

The remaining elements of DISH's attempted-monopolization claim fare no better. The alleged conduct is procompetitive, not exclusionary. Mot. 27. DISH laments that it must face more and different competition, a non-cognizable grievance under the Sherman Act. And with respect to specific intent, DISH never engages with the fundamental question: why is it plausible that Disney specifically intended to monopolize the alleged Skinny Sports Bundle Market when it granted YouTube TV a "skinny" license? DISH cannot explain how that reality accords with its implausible theory. The Court should dismiss Count VI.

### E.    DISH's Count XII Allegations Are Still Insufficient.

While DISH insists Paragraphs 238 and 322(d) are "properly alleged," Opp. 27, it still identifies no specific distributor, contract, timeframe, or MFN provision purportedly violated. Unlike that *Arista Records* plaintiff, Opp. at 27–28, who alleged specific IP addresses, dates, and copyrighted recordings, 604 F.3d 110, 121 (2d Cir. 2010), DISH offers zero factual support. AC ¶ 238. Conclusory allegations "upon information and belief" are insufficient and should be dismissed. *My Mavens LLC v. Grubhub, Inc.*, 2023 WL 5237519, at *22 (S.D.N.Y. 2023). Alternatively, the Court should strike these paragraphs as prejudicial or order a more definite statement.

### III.    CONCLUSION

For the foregoing reasons, the Court should dismiss DISH's Counts I through VII and XII with prejudice.

12

Dated: April 24, 2026

Respectfully Submitted,

**LATHAM & WATKINS LLP**

**O'MELVENY & MYERS LLP**

By: */s/ Lawrence E. Buterman*
Lawrence E. Buterman

By: */s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

Lawrence E. Buterman
lawrence.buterman@lw.com
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Facsimile: (212) 751-4864

Amanda P. Reeves*
amanda.reeves@lw.com
Francesca M. Pisano*
francesca.pisano@lw.com
Chanelle N. Jones*
chanelle.jones@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Charlotte H. N. Yeung*
charlotte.yeung@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

* Admitted pro hac vice

*Attorneys for Counterclaim Defendants
FuboTV Inc. and FuboTV Media LLC*

*(e-filed with consent)*

Daniel M. Petrocelli*
dpetrocelli@omm.com
Heather Welles*
hwelles@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Allen W. Burton
aburton@omm.com
1301 Avenue of the Americas, 17th Floor
New York NY 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Sergei Zaslavsky*
szaslavsky@omm.com
Brian P. Quinn*
bquinn@omm.com
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

* Admitted pro hac vice

*Attorneys for Counterclaim Defendants ESPN
Enterprises, Inc.; ESPN, Inc.; ABC Cable
Networks Group; American Broadcasting
Companies, Inc.; FX Networks, LLC;
International Family Entertainment, Inc.;
NGC Network US, LLC; SOAPnet, L.L.C; The
Walt Disney Company; Baby Network Limited*

13

## CERTIFICATE OF WORD COUNT (L.R. 7.1(C))

Pursuant to Local Rule 7.1(c), I hereby certify that, excluding the caption, table of contents, table of authorities, signature block, and this certificate, the foregoing Memorandum of Law contains 3,495 words, counted using the Microsoft Word program used to prepare it. It therefore complies with the word-count limitation of Local Rule 7.1(c).


Dated: April 24, 2026                                                   */s/ Daniel M. Petrocelli*

                                                                          Daniel M. Petrocelli