**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESPN ENTERPRISES, INC., et al., | |
| *Plaintiffs*, | Civil Action No. |
| -against- | 1:25-cv-07169-AS-BCM |
| DISH NETWORK L.L.C., | |
| *Defendant.* | |
| DISH NETWORK L.L.C., | |
| *Defendant/Counterclaim Plaintiff*, | |
| -against- | |
| ESPN ENTERPRISES, INC., et al., | |
| *Plaintiffs/Counterclaim Defendants,* | |
| and | |
| THE WALT DISNEY COMPANY, et al., | |
| *Counterclaim Defendants.* | |

**[PROPOSED] STIPULATED ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION ("ESI PROTOCOL")**

**1.     PURPOSE**

This stipulation sets forth a protocol that will govern the production format of electronically stored information ("ESI") in the above-captioned action, and any actions that may be later consolidated with that action.  The terms of this stipulation shall be construed to ensure the prompt, efficient, proportional, and cost-effective exchange of information between the parties consistent with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules"), the Individual

Practices in Civil Cases of the Honorable District Court Judge Arun Subramanian (the "Chambers' Rules"), and any other applicable orders or rules and the parties shall take reasonable steps to comply with the provisions and procedures set forth herein.

2.    **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.  The parties will meet and confer to resolve any dispute regarding the application of the protocol in this stipulation, including to the extent any party avers that compliance with this protocol imposes an undue burden.  Any practice or procedure set forth herein may be varied by agreement of the parties, which shall be confirmed in writing.  In the event that the parties cannot reach an agreement on a disputed matter subject to this protocol after a good faith effort, either party may submit the matter by letter-motion to the Court and the parties shall attempt to agree on a briefing schedule prior to the filing of any such motion.

3.    **DEFINITIONS**

Subject to the Local Rules of the Southern District of New York, the parties agree that the term "Document" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

4.    **PRESERVATION AND COLLECTION**

The parties have discussed their preservation and document collection obligations and needs and agree that preservation and collection of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and document collection and to ensure proper ESI is preserved and collected, the parties agree that:

a)    Custodial and non-custodial data sources likely to have discoverable information related to any of the claims, counterclaims or defenses at

2

issue in this action will be preserved to the extent such ESI exists and can be located and preserved in accordance with the parties' respective preservation and discovery obligations under the governing law and rules, including but not limited to the Federal Rules of Civil Procedure, the Local Rules, the Chambers' Rules and any other applicable rules or orders of this Court;

b)    Only ESI created or received between January 1, 2015 and the date that this action has finally concluded will be preserved;

c)    The parties will discuss the types of ESI they believe should be collected, as well as the custodians for whom they believe ESI should be collected;

d)    The parties will attempt to agree on the number of custodians per party for whom ESI will be collected.  The parties will meet and confer in good faith if any disputes arise, and issues that cannot be resolved between the parties will be raised with the Court; and

e)    The following data sources are not reasonably accessible because of undue burden or cost and ESI from these sources will be preserved only to the extent it is otherwise preserved in the ordinary course of business.  These sources need not be collected, searched, reviewed, or produced, except for good cause shown:

   i.  backup systems and/or tapes used for disaster recovery purposes or that are substantively duplicative of information that is more accessible elsewhere;

  ii.  systems no longer in use that cannot be accessed without undue effort;

 iii.  systems, server, and network logs;

 iv.  automatically saved interim versions of documents;

  v.  data accessible only by forensics (e.g., deleted or fragmented data);

 vi.  random access memory (RAM) temporary files or other ephemeral data that are difficult to preserve without disabling an operating system;

3

    vii.  on-line access data such as temporary internet files, history, cache, and cookies;

   viii.  dynamic fields of databases or log files that are not retained in the ordinary course of business;

    ix.  interim metadata that is frequently updated and overwritten automatically prior to collection.  For the avoidance of doubt, Section 4(d)(ix) does not relieve either party of (i) any obligation to extract via reasonable efforts the metadata that is available and reasonably accessible with a document at the time of collection for this litigation; or (ii) producing the metadata fields described in Appendices 1 and 2; and

    x.  information from mobile devices, handsets, personal digital assistants, and tablets that is completely duplicative of information that is more accessible elsewhere (i.e., emails on a phone that are otherwise collected from a computer). For the avoidance of doubt, this Section 4(d)(xiii) does not relieve either party of any obligation to preserve and collect text messages and other information from mobile devices that may be relevant.

Each party reserves the right to identify additional categories of data that are not reasonably accessible as the litigation progresses.

## 5.    SCOPE, SEARCH, AND CULLING

a)    The parties agree that in responding to a Fed. R. Civ. P. 34 request, responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information and will execute any reasonable search methodology to produce documents in this litigation.

b)    The parties agree they may use search terms to cull the collected dataset and manual linear review, technology assisted review ("TAR"), predictive coding, or some combination thereof, to identify and produce documents responsive to document requests.  If a party elects to use search terms, they agree to exchange search term hit reports, including the search terms used, hit counts, and the total number of documents returned by the terms and their families.  If a party uses TAR or predictive coding

methodologies, they agree that any such use must comply with generally accepted TAR processes and validation methodologies.  The parties further agree to exchange validation metrics supporting their use of TAR or predictive coding, including recall calculations and the richness of the target population.  To the extent a party proposes to use a multi-layered approach in culling, they will disclose those same metrics for each step of their process as appropriate (*e.g.*, a TAR culling does not involve search term hits).  The parties agree to answer any reasonable questions about their process or otherwise meet-and-confer in good faith.

c)      The parties agree that any party presenting specific and tangible evidence that the producing party's search and review methodology was deficient may request a meet and confer no later than 60 days prior to the close of fact discovery to discuss alternative methods to search and cull data.  If a Producing Party produces additional documents within that 60-day period before the close of fact discovery then the Receiving Party may request a meet and confer at any point before the close of fact discovery about any potential issues connected to those documents.

d)      Each party will use reasonable efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process.  Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary files, Dynamic Link Library, Event Log Files, Executables Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, MP3 Files, Package Manager Files, Program

Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

e)      Each party is required to produce only a single copy of a responsive document, and each party may de-duplicate responsive ESI across custodians based on MD5 or SHA-1 hash values at the document level. For emails with attachments, the hash value will be generated based on the parent/child document grouping. For the avoidance of doubt, the hash value is assigned based on the parent/child document grouping at the time of processing, which may differ between Microsoft and Google systems because of their treatment of hyperlinked documents.  To the extent that de-duplication through MD5 or SHA-1 hash values is infeasible, the parties shall meet and confer to discuss any other proposed method of de-deduplication.

f)      A producing party will produce all responsive members of email threads identified through their reasonable searches—*i.e.*, a party may not thread suppress their production.  Meaning, parties may not suppress from production earlier-in-time members of an otherwise responsive email thread.

g)      Each party must use reasonable efforts to suppress the production of embedded images (e.g., logos, signature blocks) as separate documents.  Parties need not produce embedded objects (non-image objects embedded in other documents, such as a spreadsheet embedded within a word-processing document) as separate documents, so long as the embedded object is visible or otherwise included and accessible in the container document and provided that upon reasonable and particularized request, a party will produce such files treated as attachments to the document from which it was extracted.

h)      The parties agree to produce hyperlinked files (as opposed to web content or systems outside of M365/Google (e.g., Box, Dropbox, etc.)) as part of the same document family as the document containing the hyperlink, to the extent such hyperlinked files exist and can be reasonably located within the possession, custody or control of the party and collected without undue burden.  Family relationships may be established through the provision of a relationship metadata field.  The Producing Party will collect the version of the hyperlinked file that existed at the time of collection. Hyperlinked documents will be identified in the load file and/or an overlay if necessary, which means that a Producing Party will take reasonable steps to produce hyperlinked documents with the stamp: HYPERLINKED DOCUMENT at the time the hyperlinked document is first produced; and, when a Producing Party substantially completes its production of documents, the Producing Party will provide image overlays as necessary to ensure that all hyperlinked documents include the stamp: HYPERLINKED DOCUMENT.  To the extent necessary, the parties will meet and confer to discuss a reasonable number of particularized requests for each party to produce or identify contemporaneous hyperlinked files to the extent such files exist and can be collected and produced using reasonable efforts.

## 6.      PRODUCTION FORMATS

The parties agree to produce documents in the formats described in Appendix 1 to this protocol. If particular documents warrant a different format, the parties will meet and confer to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the usability and searchability of documents as part of the document-production process.

## 7.      ROLLING PRODUCTION

The Parties agree that reasonably paced rolling productions are acceptable.

**8.     DOCUMENTS PROTECTED FROM DISCOVERY**

The Parties agree that documents protected from discovery will be addressed by their forthcoming Stipulation and (Proposed) Order Regarding Privilege (the "Privilege Protocol") and by the Stipulation and (Proposed) Order Regarding Non-Waiver and Clawback filed contemporaneously herewith.

**9.     NON-PARTIES**

a)     A party that issues a subpoena upon any non-party shall include a copy of this protocol and the operative protective order with the subpoena and state that the parties to this litigation have requested that non-parties produce documents in accordance with the specifications set forth herein to the extent reasonably feasible.

b)     A party that receives documents in response to a non-party subpoena shall within five (5) business days produce a copy of such documents to all other parties in the form in which such documents were received subject to all procedures and protections set forth in the operative protective order.  The receiving party may not use documents obtained via a non-party subpoena in this action until production to all other parties has been made.

**10.     LIMITATION, NON-WAIVER, AND MODIFICATION**

a)     This protocol applies to all Documents produced on or after the date this protocol is executed by all parties, as well as to all Documents produced during the course of the preliminary injunction briefing and hearing in September through October 2025 which will be re-produced with Bates numbers.

b)     The computation of any period of time described in this protocol shall be governed by the provisions set forth in Fed. R. Civ. P. 6(a).

d)     Nothing in this protocol is intended to or shall serve to limit a party's

right to review documents, ESI, or other information for relevance, responsiveness, and/or segregation of privileged and/or protected information prior to production.

e)      Nothing in this protocol shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, work-product doctrine, data privacy laws, or any other applicable privilege, immunity, or protection from discovery.  The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

f)      This protocol may be modified by the agreement of the parties, memorialized in writing, and submitted to the Court to enter as a modification to this stipulated Order.  Any such modification will be titled sequentially (e.g., "First Modified Protocol Re: Discovery of Electronically Stored Information") and each modified protocol will supersede the previous protocol.  Nothing in this protocol waives the right of any party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that the affected parties must first meet and confer and use reasonable efforts to negotiate any exception from or modification to this protocol prior to seeking relief from the Court.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: __June 1__, 2026          */s/ Daniel M. Petrocelli*
_____

Daniel M. Petrocelli (admitted *pro hac vice*)
dpetrocelli@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

*Counsel for Plaintiffs/Counterclaim Defendants ESPN Enterprises, Inc., et al.*

Dated: __June 1__, 2026          */s/ Lawrence E. Buterman (e-filed with consent)*
_____

Lawrence E. Buterman
lawrence.buterman@lw.com
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Facsimile: (212) 751-4864

*Counsel for Counterclaim Defendants FuboTV Inc. and FuboTV Media LLC*

Dated: __June 1__, 2026          */s/ Elyse D. Echtman (e-filed with consent)*
_____

Elyse D. Echtman
eechtman@steptoe.com
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 378-7551

*Counsel for Defendant/Counterclaim Plaintiff DISH Network, L.L.C.*

**IT IS ORDERED** that the foregoing ESI Protocol is approved.

Dated: __June 2, 2026__          _____

Hon. Arun Subramanian
United States District Judge

10

**APPENDIX 1**
**PRODUCTION FORMAT**

1. **Production Components.** Productions shall include single-page TIFFs, native files, text files, an ASCII delimited metadata file (preferably .dat) and an image load file (.opt)  that can be loaded into commercially acceptable production software (e.g., Concordance).

   a. **Single-Page TIFFs:** Documents that exist only in hard-copy format shall be scanned and produced as single-page Group IV TIFFs at a resolution of at least 300 dots per inch (dpi).  Except as otherwise provided herein, documents that exist as ESI shall also be produced as single-page Group IV TIFFs at a resolution of at least 300 dpi.  Each TIFF image shall be named according to a unique corresponding Bates number associated with the document.  Each image shall be branded according to the Bates number and the appropriate confidentiality designation according to the operative protective order. To the extent reasonable, when converting ESI from its native format into TIFF image format, hidden content (including hidden slides, columns and rows), tracked changes, edits, comments (including author comments), notes (including speakers notes) shall also be imaged so that such content is viewable on the image file.  TIFF images shall be produced in black and white with the exception of documents with elements where color is reasonably needed to accurately understand the document, including any photographs, and Word-type files with Track Changes, which shall be produced as color 300 dpi single page TIFF files.  If a receiving party finds the black and white version of a Document prevents them from reasonably understanding the contents of the document, the receiving party may request that the producing party provide a color image by specifying the Bates

1

number of the document requiring color reproduction. The producing party will not deny a reasonable request to provide a color copy, and the receiving party will limit the number of their requests to a reasonable number.

b.  **Native Files:** Documents that cannot be converted to image format in a reasonably usable manner, such as Spreadsheets (*e.g.*, Excel, Google Sheets), presentations (e.g., PowerPoint files), delimited text files (*e.g.*, comma-separated value (.csv) files and tab-separated value (.tsv) files), audio files, and video files shall be produced in native format. Any native files that are produced shall be produced along with extracted text (where reasonably available) and applicable metadata fields set forth in Appendix 2. A TIFF placeholder bearing the appropriate Bates number and confidentiality designation indicating that the document was provided in native format shall accompany the native file. If a document that would otherwise be produced in native format requires redaction, TIFF images and Optical Character Recognition ("OCR") text of the redacted document will suffice in lieu of a native file and extracted text.

c.  **Text Files:** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename.  A commercially acceptable technology for OCR shall be used for all scanned hard-copy documents.  When possible, the text of native files should be extracted directly from the native file.  OCR text files shall be substituted instead of extracted text files for redacted documents.

d.  **ASCII Delimited Metadata Files:** Each of the metadata fields set forth in Appendix 2 that can be collected and extracted through reasonable efforts shall be produced for each document.  The metadata file shall be delimited in accordance with .dat format. The parties are not obligated to manually populate any metadata

fields listed in Appendix 2 that cannot be collected or extracted through reasonable efforts with the exception of:

    i.   For all files, both electronic and hard-copy: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, ALLCUSTODIAN, REDACTED, and CONFIDENTIALITY.

e.  **Image Load Files:** Image load files (.opt) shall contain seven comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, and PAGE COUNT.  Each TIFF in a production must be referenced in the corresponding image load file.  The total number of documents referenced in a production's metadata file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production.  The total number of documents in a production should match the total number of records in the metadata file.

f.  **Text and Mobile Device Chat Messages:** Messages shall be processed and reviewed in 24-hour segment RSMF, or equivalent, format, maintaining familial relationships and embedded data. This data shall be produced in image format pursuant to above specifications. For purposes of this ESI Protocol, "Text Messages" means real-time communications sent via mobile devices or mobile device chat apps as text messages, chat client, or SMS, including but not limited to Bloomberg Chat, Slack, Google Talk, WhatsApp, Yahoo! Messenger, iMessage, AOL Instant Messenger, Blackberry Messenger, Telegram, Signal, ICQ, Pidgin, Line, Audium, Trillian, Skype, Zoom, or any proprietary instant messaging system.  Text Messages, as defined herein, excludes Google chat and MS Teams messages.

3

g. **Google Chat Messages**:  All chats exported from Google Vault will be processed as a chat conversation with each conversation as a single document, unless there is a 24-hour break between top-level messages.  See https://support.google.com/vault/answer/15762643?hl=en#:~:text=Exports,before%20and%20after%20Message%20C.

2. **Bates Numbering:** All images and native files must be assigned a unique Bates number that is sequential within a given document and across the production sets.  Bates numbering must maintain consistent padding (e.g., with a consistent number of leading zeros) across the entire production.  There shall be no spaces between the prefix and numeric value.  No special characters shall be used other than under-scores and dashes.  If suffixes are used, they shall be in dot notation (e.g., BATES000000001.001), unless the parties otherwise agree.  Bates numbers shall be branded in the lower right-hand comer of all TIFF images and shall not obscure any part of the underlying image to the extent possible.

3. **Confidentiality Designation:** Documents produced in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the protective order in this matter. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and stamped on the accompanying TIFF placeholder.

4. **Redaction:** The parties may redact information from any document, including from TIFF images, any metadata field, or native-file information, that is: (1) attorney-client privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; or (2) protected personally identifiable information (e.g., credit card numbers, account numbers, passwords, social security numbers, etc.) subject to non-disclosure obligations imposed by law or regulation.  The parties shall not

4

redact documents on the basis of relevance, without first meeting and conferring about the criteria for any such redactions.  The text of the redaction box shall state the basis for the redaction (e.g., "Attorney-Client Privilege" or "PII").  If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any of the metadata fields listed in Appendix 2.

5. **Document Families:** Documents that exist as part of a document family (i.e., an email and its static attachments) shall be produced in a family-complete manner if any one document in the family is deemed responsive to a party's document-production requests. Accordingly, parties will produce all non-privileged members of a document family where any one document in that family is deemed both responsive and not wholly privileged. Where a document family contains some privileged and some non-privileged documents, wholly privileged documents may be produced as single-page slip sheets bearing the appropriate Bates label stating that the document has been withheld.  Slip sheets shall be produced in the same position in the family as if the withheld document(s) had been produced.

6. **Unitization of Hard Copy Documents**: The parties will take reasonable steps to produce images of hard copy documents unitized to the extent the original documents appeared to be units in physical form, with attachments following parents, to the extent such structure exists and can be reasonably coded. There is no requirement that a producing party objectively code hard copy documents to provide metadata fields not otherwise available.

7. **Structured Data**:  Where relevant information is contained in a database or other structured or aggregated data source maintained by an application, the parties shall produce such information by generating one or more reports as they would in the

5

ordinary course of business.  The parties shall make reasonable efforts to ensure the reports are comprehensible, such as explaining the meaning of column headers or field codes, or using delimited text files and a corresponding data dictionary.  In the event a Receiving Party believes the data received is not reasonably usable, the parties agree to meet and confer in good faith with respect to a reasonable number of particularized requests to identify alternatives.

8. **Production Media:** Parties will produce documents via high-speed SFTP site.  If SFTP is not feasible, parties may produce using external hard drives or by way of other electronic transfer, such as between accounts at a cloud provider, subject to agreement between the parties.  The producing party shall encrypt the production data and shall forward the information necessary for decryption to the requesting party separately from the SFTP site or electronic media to which the production is saved.  Prior to the producing party's initial production, the requesting party shall provide the relevant contact information of the individual(s) to whom the requesting party shall provide the production media and password(s). Each piece of Production Media shall identify: (1) the producing party's name; (2)  a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"); (3) the production date; and (4) the Bates number range of the materials contained in the production.

9. **Time Zone:**  Plaintiffs/Counterclaim Defendants shall process all ESI using Eastern Standard Time, which is UTC – 5.  Defendant/Counterclaim Plaintiff shall process all ESI using Mountain Standard Time, which is UTC – 7.

10. **Passwords:**  The parties shall make reasonable efforts to remove passwords or other security protection from individual potentially responsive ESI documents.

**APPENDIX 2**
**METADATA FIELDS**

As described in Appendix 1, each of the metadata and coding fields set forth below that can be collected and extracted via reasonable efforts shall be produced for each document:

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PGCOUNT | Page Count |
| CUSTODIAN or SOURCE | The Individual (Custodian) from whom the documents originated and were deduplicated from. |
| ALLCUSTODIAN | All Individuals (Custodians) whose documents de-duplicated from the original Custodian |
| RECORDTYPE | To indicate type of record (e.g., email, attachment) |
| ATTACHMENTCOUNT | Number of attachments, (a.k.a. Family Count) |
| PAGECOUNT | The number of pages in the document. |
| RECORDTYPE | Hard Copy or ESI |
| VOLUME | Production volume name |
| SUBJECT | Subject line of an email |
| TITLE | Title from properties of a document |
| FILENAME | File name from properties of the native file |
| FILETYPE | Description of file's program-related origin (e.g., extension) |
| FILEPATH | Location of the original document (a.k.a. FolderPath) |
| TIME ZONE | Time zone used to normalize data during processing |
| DATERECEIVED | Date email was received (format:  MM/DD/YYY HH:MM:SS 24-hour format) |

1

| DATESENT | Date email was sent (format: MM/DD/YYYY HH:MM:SS 24-hour format) |
|---|---|
| TO | All recipients that were included on the "To" line of the email |
| FROM | Author of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| DATECREATED | For non-emails, date an electronic document was created (format: MM/DD/YYYY HH:MM:SS 24-hour format) |
| DATEMODIFIED | For non-emails, date an electronic document was modified (format: MM/DD/YYYY HH:MM:SS 24-hour format) |
| IMPORTANCE | Level of importance/sensitivity of messages or calendar invites. |
| LASTMODIFIEDBY, or LASTSAVEDBY | For non-emails, identifies the individual who last modified, edited or saved the document. |
| COLLABORATORS | The accounts and groups that have direct permission to edit the file or add comments. (*For documents stored on Google Drive*) |
| HASH | Mathematical algorithm calculating a unique value for a document to be used in deduplication. Common hash algorithms include MD5 and SHA. |
| REDACTED | Whether or not the document contains redactions |
| CONFIDENTIALITY | Confidential status of the document. E.g., "Confidential," "Highly Confidential—Attorneys' Eyes Only"–subject to specific Confidentiality designations in case Protective Order |
| NATIVELINK | Link to native file named by BEGBATES (Native Files only) |
| TEXTPATH | Link to text file named by BEGBATES |
| THREADID | Unique ID used to associate members of an e-mail thread; sometimes called Conversation Index ID or ConversationIndex |
| MESSAGEID | The unique message identifier generated by the source email or calendar system.  Also called Message ID. |
| PREVMESSAGEID | The MessageID of the previous message in the email thread |

2

3

| | (the message that was replied to or forwarded). Also called InReplyTo. |
|---|---|
| PARTICIPANTS | The participants of a text/chat conversation, represented by a phone number, email address, and/or name, in a reasonably structured format. |
| *For Google Chat or MS Teams Messages* | |
| DateFirstMessageSent | Timestamp for when the first message in a conversation was sent |
| DateLastMessageSent | Timestamp for when the last message in a conversation was sent |
| DateFirstMessageReceived | Timestamp for when the first message in a conversation was received |
| DateLastMessageReceived | Timestamp for when the last message in a conversation was received |

3