Elyse D. Echtman
212 378 7551
eechtman@Steptoe.com

Steptoe

1114 Avenue of the Americas
New York, NY 10036
212 506 3900 main
www.steptoe.com

The request to extend the stay by 30 days is GRANTED. The parties should submit an update to the Court on the status of settlement discussions on or before October 30, 2026.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 210.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: October 15, 2026

October 14, 2026

**VIA ECF**

The Honorable Arun Subramanian
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *ESPN Enterprises, Inc. et al. v. DISH Network L.L.C.*, Case No. 25-civ-7169 (AS):
**Joint Status Update and Request to Extend Stay**

Dear Judge Subramanian:

On behalf of Defendant DISH Network L.L.C. ("DISH"), we write in response to the Court's July 14, 2026 Order (ECF No. 209). That Order directed the parties to submit an update to the Court on the status of the bankruptcy proceeding every 90 days, beginning on October 14, 2026. We have conferred with counsel for Plaintiffs and certain Counterclaim Defendants ("Disney"), and counsel for Counterclaim Defendants FuboTV, Inc. and FuboTV Media, Inc. ("Fubo") and the parties provide the following joint update.

The chapter 11 plan of reorganization in DISH Network L.L.C.'s bankruptcy case was confirmed on September 29, 2026, and became effective on October 1, 2026. *See* Notice of (i) Entry of Order Confirming the DBS Debtors' Prepackaged Chapter 11 Plan of Reorganization and (ii) Occurrence of Effective Date, attached hereto as **Exhibit A** and **Exhibit B**, respectively. Accordingly, as of October 1, 2026, DISH Network L.L.C. has emerged from chapter 11, and the automatic stay under 11 U.S.C. § 362(a), applicable to proceedings against DISH Network L.L.C., has terminated.

Notwithstanding the termination of the automatic stay, all parties in this action respectfully request a 30-day extension of the stay entered by this Court. Settlement discussions are currently in progress. An extension of the stay will help facilitate the continuation of those settlement efforts.

Respectfully submitted,

*/s/ Elyse D. Echtman*

Elyse D. Echtman

Attachments

cc: Counsel of record

# EXHIBIT A

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 29, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DISH DBS CORPORATION,<br>DISH WIRELESS L.L.C., *et al.*,[1] | ) | Case No. 26-90627 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS, (II) CONFIRMING THE SECOND MODIFIED JOINT PREPACKAGED CHAPTER 11 PLAN OF DISH DBS CORPORATION AND CERTAIN OF ITS SUBSIDIARIES, AND (III) GRANTING RELATED RELIEF**

DISH DBS Corporation, DISH Broadcasting Corporation, DISH Network L.L.C., Dish Network Service L.L.C., DISH Operating L.L.C., DISH Technologies Holding Corporation, DISH Technologies L.L.C., Sling Media, L.L.C., Sling TV Gift Card Corporation, Sling TV Holding L.L.C., Sling TV L.L.C., and Sling TV Purchasing L.L.C (collectively, the "**DBS Debtors**"), and, where applicable, the DBS Debtors and the DISH Wireless Debtors,[2] having:

a. entered into that certain Restructuring Support Agreement, dated as of March 19, 2026, including the Term Sheet and all other exhibits and attachments thereto (as may be amended, modified, or supplemented from time to time in accordance with the terms thereof, the "**Restructuring Support Agreement**");

b. commenced service on June 29, 2026, of, among other things: (i) a cover letter (the "**Cover Letter**") including an electronic link and instructions to access electronic copies of (A) the *Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation,*

---

[1] The last four digits of DISH DBS Corporation's and DISH Wireless L.L.C.'s respective tax identification numbers are 8967 and 6388. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/DBS. The location of the Debtors' corporate headquarters and the Debtors' service address is 9601 S. Meridian Blvd., Englewood, Colorado 80112.

[2] Capitalized terms used but not otherwise defined in these findings of facts, conclusions of law, and order (this "**Confirmation Order**") have the meanings ascribed to them in the Plan, attached hereto as **Exhibit A.**

*DISH Wireless L.L.C., and Their Respective Affiliated Debtors and Debtors in Possession* [Dkt. No. 6] (the "**Initial Plan**"), and (B) the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation, DISH Wireless L.L.C., and Their Respective Affiliated Debtors and Debtors in Possession* [Dkt. No. 7] (the "**Initial Disclosure Statement**"); and (ii) ballots for voting on the Initial Plan to Holders of Claims entitled to vote on the Initial Plan, namely Holders in Class 1C (2026 Senior Secured Notes Claims), Class 1D (2028 Senior Secured Notes Claims), Class 1E (2026 Senior Notes Claims), Class 1F (2028 Senior Notes Claims), Class 1G (2029 Senior Notes Claims), and Class 2E (DISH Wireless General Unsecured Claims), in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Cases for the Southern District of Texas (the "**Complex Case Procedures**"), as evidenced by the *Certificate of Service* [Dkt. No. 470] (the "**Solicitation Certificate**");

c. commenced solicitation of votes on the Initial Plan on June 29, 2026;

d. commenced these chapter 11 cases (the "**Chapter 11 Cases**") on June 30, 2026 (the "**Petition Date**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**");

e. continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

f. Filed,[3] on June 30, 2026, the Initial Plan and Initial Disclosure Statement;

g. Filed, on July 1, 2026, the *Declaration of John Swieringa in Support of Chapter 11 Petitions and Requests for First Day Relief* [Dkt. No. 19], detailing the facts and circumstances of these Chapter 11 Cases;

h. Filed, on July 1, 2026, the *Debtors' Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures, (III) Approving the Forms of Ballots and Notices, (IV) Approving Certain Dates and Deadlines in Connection with the Solicitation and Confirmation of the Plan, (V) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan, (VI) Conditionally Waiving the Requirements that (A) the U.S. Trustee Convene a Creditors Meeting for the DBS Debtors and (B) the DBS Debtors File Schedules of Assets and Liabilities and Statements of Financial Affairs, and Rule 2015.3*

[3] Unless otherwise indicated, use of the term "Filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

*Reports, and (VII) Granting Related Relief* [Dkt. No. 18] (the "**Solicitation Procedures Motion**");

i. Filed, on July 7, 2026, a revised proposed *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures, (III) Approving the Forms of Ballots and Notices, (IV) Approving Certain Dates and Deadlines in Connection with the Solicitation and Confirmation of the Plan, (V) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan, (VI) Conditionally Waiving the Requirements that (A) the U.S. Trustee Convene a Creditors Meeting for the DBS Debtors and (B) the DBS Debtors File Schedules of Assets and Liabilities and Statements of Financial Affairs, and Rule 2015.3 Reports, and (VII) Granting Related Relief* [Dkt. No. 197];

j. Filed, on July 22, 2026, (i) the *Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation, DISH Wireless L.L.C., and their Respective Affiliated Debtors and Debtors in Possession* [Dkt. No 494], (ii) the *Disclosure Statement for the Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation, DISH Wireless L.L.C., and their Respective Affiliated Debtors and Debtors in Possession* [Dkt. No. 495], and (iii) a second revised proposed *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures, (III) Approving the Forms of Ballots and Notices, (IV) Approving Certain Dates and Deadlines in Connection with the Solicitation and Confirmation of the Plan, (V) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan, (VI) Conditionally Waiving the Requirements that (A) the U.S. Trustee Convene a Creditors Meeting for the DBS Debtors and (B) the DBS Debtors File Schedules of Assets and Liabilities and Statements of Financial Affairs, and Rule 2015.3 Reports, and (VII) Granting Related Relief* [Dkt. No. 492];

k. Filed, on August 11, 2026, (i) the *Second Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation, DISH Wireless L.L.C., and their Respective Affiliated Debtors and Debtors in Possession* [Dkt. No 911], (ii) the *Disclosure Statement for the Second Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation, DISH Wireless L.L.C., and their Respective Affiliated Debtors and Debtors in Possession* [Dkt. No. 912], and (iii) a third revised proposed *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures, (III) Approving the Forms of Ballots and Notices, (IV) Approving Certain Dates and Deadlines in Connection with the Solicitation and Confirmation of the Plan, (V) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan, (VI) Conditionally Waiving the Requirements that (A) the U.S. Trustee Convene a Creditors Meeting for the DBS Debtors and (B) the DBS Debtors File Schedules of Assets and Liabilities and Statements of Financial Affairs, and Rule 2015.3 Reports, and (VII) Granting Related Relief* [Dkt. No. 914];

l. Filed, on August 27, 2026, the *Debtors' Statement Regarding Case Schedule and Bifurcation of DBS Debtors' and DISH Wireless Debtors' Chapter 11 Plan* [Dkt. No. 1230], which stated the Debtors' intent to bifurcate the chapter 11 plans for the DBS Debtors and DISH Wireless Debtors;

m. Filed, on September 4, 2026, (i) the *Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation and Certain of its Subsidiaries* [Dkt. No. 1343], (ii) the *Disclosure Statement for the Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation and Certain of its Subsidiaries* [Dkt. No. 1344] (as may be amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits, supplements, and schedules thereto, the "**Disclosure Statement**"); and (iii) the proposed *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement as to the DBS Debtors, (II) Approving the Solicitation and Voting Procedures, (III) Approving the Form of Ballots and Notices, (IV) Approving Certain Dates and Deadlines in Connection With the Solicitation and Confirmation of the DBS Debtors' Plan, (V) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Confirmation of the DBS Debtors' Plan, (VI) Conditionally Waiving the Requirements That (A) the U.S. Trustee Convene a Creditors' Meeting for the DBS Debtors and (B) the DBS Debtors File Schedules of Assets and Liabilities and Statements of Financial Affairs, and Rule 2015.3 Reports, and (VII) Granting Related Relief (This Order Pertains to the DBS Debtors)* [Dkt. No. 1345];

n. obtained, on September 17, 2026, entry of the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement as to the DBS Debtors, (II) Approving the Solicitation and Voting Procedures, (III) Approving the Form of Ballots and Notices, (IV) Approving Certain Dates and Deadlines in Connection With the Solicitation and Confirmation of the DBS Debtors' Plan, (V) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Confirmation of the DBS Debtors' Plan, (VI) Conditionally Waiving the Requirements That (A) the U.S. Trustee Convene a Creditors' Meeting for the DBS Debtors and (B) the DBS Debtors File Schedules of Assets and Liabilities and Statements of Financial Affairs, and Rule 2015.3 Reports, and (VII) Granting Related Relief (This Order Pertains to the DBS Debtors)* [Dkt. No. 1509] (the "**DBS Solicitation Procedures Order**"), which conditionally approved the Disclosure Statement and approved: (i) the related prepetition solicitation and voting procedures (the "**Solicitation and Voting Procedures**"), attached as Exhibit 1 to the DBS Solicitation Procedures Order; (ii) the Cover Letter in connection with the solicitation of the Plan, attached as Exhibit 2 to the DBS Solicitation Procedures Order; (iii) the forms of ballots for voting on the Plan (collectively, the "**Ballots**"), which forms were attached as Exhibits 3A-1, 3A-2, 3B-1, 3B-2, 3D-1, 3D-2, 3E-1, and 3E-2 to the DBS Solicitation Procedures Order; (iv) the distribution of the solicitation materials and documents included in the solicitation packages (the "**Solicitation Packages**"); (v) the notice of non-voting status (the "**Non-Voting Status Notices**") and form for opting in to the Third-Party Release (the "**Opt-In Form**"); (vi) the notice of the Plan Supplement; (vii) the notice of the hearing to be held to consider final approval of the Disclosure Statement and confirmation of the

Plan (the "**Combined Hearing**," and such notice, the "**Combined Hearing Notice**"), attached as Exhibit 4 to the DBS Solicitation Procedures Order; and (vii) other forms, notices, and dates and deadlines, and distributed the DBS Solicitation Procedures Order, along with such exhibits, to the parties identified on the *Certificate of Service* [Dkt. No. 1550] (the "**Postpetition Solicitation Certificate**");

o. Filed, on September 15, 2026, the *Notice of Filing of the Plan Supplement for the Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation and Certain of Its Subsidiaries* [Dkt. No. 1491] (as may be amended, supplemented, or modified, the "**Plan Supplement**"), which included the following exhibits (each as defined in the Plan): (a) the Schedule of Rejected Contracts and Leases; (b) the Amended Notes Indentures; and (c) disclosures required under section 1129(a)(5) of the Bankruptcy Code;

p. distributed, on September 16, 2026, the Plan Supplement to the parties identified on the *Certificate of Service* [Dkt. No. 1517] (the "**Plan Supplement Certificate**");

q. distributed, on September 18, 2026, (i) the Combined Hearing Notice, substantially in the form attached as Exhibit 4 to the DBS Solicitation Procedures Order, to all parties in interest in the Chapter 11 Cases, and (ii) the Notice of Non-Voting Status, including the Opt-In Form, substantially in the form attached as Exhibit 5 to the DBS Solicitation Procedures Order, to Holders of Claims and Interests in the Non-Voting Classes, as evidenced by the applicable *Certificate of Service* [Dkt. Nos. 1550, 1598] (the "**Combined Hearing Certificate**");

r. published the Combined Hearing Notice in *The New York Times* on September 23, 2026, as evidenced by the *Proof of Publication* [Dkt. No. 1574] (the "**Publication Affidavit**");

s. Filed, on September 27, 2026, the *Second Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation and Certain of its Subsidiaries* [Dkt. No. 1604] (as may be amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits, supplements, and schedules thereto, the "**Plan**"), attached as **Exhibit A** hereto;

t. Filed, on September 27, 2026, the *Notice of Filing of First Amended Plan Supplement for the Second Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation and Certain of its Subsidiaries* [Dkt. No. 1606];

u. Filed, on September 27, 2026, the *Declaration of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC Regarding the Solicitation and Tabulation of Votes Cast on the Second Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation and Certain of its Subsidiaries* [Dkt. No.1607] (the "**Voting Report**");

v. Filed, on September 27, 2026, the *Declaration of John Swieringa in Support of Final Approval of the DBS Disclosure Statement and Confirmation of the Second Modified*

*Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation and Certain of Its Subsidiaries* [Dkt. No. 1608] (the "**Swieringa Declaration**");

w. Filed, on September 27, 2026, the *Declaration of Clark Ansel in Support of Final Approval of the DBS Disclosure Statement and Confirmation of the Second Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation and Certain of Its Subsidiaries* [Dkt. No. 1609] (the "**Ansel Declaration**" and, together with the Swieringa Declaration, the "**Confirmation Declarations**"); and

x. Filed, on September 27, 2026, the *DBS Debtors' Memorandum of Law in Support of (I) Final Approval of the DBS Disclosure Statement and (II) Confirmation of the Second Modified Joint Prepackaged Chapter 11 Plan of DISH DBS Corporation and Certain of Its Subsidiaries* [Dkt. No. 1610] (the "**Combined Brief**").

The Bankruptcy Court having:

a. entered, on September 17, 2026, the DBS Solicitation Procedures Order;

b. set September 23, 2026, at 5:00 p.m. (prevailing Central Time), as the deadline for relevant parties to vote on the Plan (the "**Voting Deadline**") and submit the Opt-In Forms, as applicable (the "**Opt In Deadline**");

c. set September 23, 2026, at 5:00 p.m. (prevailing Central Time), as the deadline for Filing objections to final approval of the Disclosure Statement and Confirmation of the Plan;

d. set September 29, 2026 at 1:00 p.m. (prevailing Central Time), as the date and time for the Combined Hearing, pursuant to sections 1126, 1128, and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018;

e. reviewed the (i) Plan, (ii) the Disclosure Statement, (iii) the DBS Solicitation Procedures Order, (iv) the Solicitation Packages, including the Cover Letter and the Ballots, (vi) the Notice of Non-Voting Status and Opt-In Form, (vii) the Plan Supplement, (viii) the Combined Brief, (ix) the Confirmation Declarations, (x) the Publication Affidavit, the Solicitation Certificate, the Postpetition Solicitation Certificate, the Plan Supplement Certificate, and the Combined Hearing Certificate (collectively, the "**Affidavits**"); (xi) the Combined Hearing Notice, and (xii) all Filed pleadings, exhibits, statements, responses, and comments regarding approval of the Disclosure Statement and Confirmation of the Plan, including all objections, joinders, statements, and reservations of rights;

f. considered the Restructuring Transactions incorporated and described in the Plan;

g. held the Combined Hearing;

h. heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation of the Plan, including any objections thereto;

i. considered all oral representations, testimony, documents, filings, exhibits, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan;

j. overruled (i) any and all objections to final approval of the Disclosure Statement and Confirmation of the Plan, and (ii) all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

k. taken judicial notice of all pleadings and other documents Filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Bankruptcy Court having found that the Combined Hearing Notice and the opportunity for any party in interest to object to final approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents Filed and other evidence in support of final approval of the Disclosure Statement and Confirmation of the Plan and presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders as follows:

## FINDINGS OF FACT AND CONCLUSION OF LAW

**IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

### A. Findings and Conclusions

1. The findings and conclusions set forth in this Confirmation Order and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any findings of fact and conclusions of law announced by the Bankruptcy Court at the Combined Hearing are hereby incorporated in this Confirmation Order. To the extent

any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B. Jurisdiction, Venue, and Core Proceeding**

2. This Bankruptcy Court has jurisdiction over these Chapter 11 Cases and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012. Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b)(2). This Bankruptcy Court may enter a Final Order consistent with Article III of the United States Constitution. To the extent the Bankruptcy Court cannot enter a Final Order, the DBS Debtors and the parties to the Restructuring Support Agreement hereby consent to entry of such a Final Order. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408, 1409.

**C. Eligibility for Relief**

3. The DBS Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code, and the DBS Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D. Commencement and Joint Administration of these Chapter 11 Cases**

4. On the Petition Date, each of the DBS Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. In accordance with the *Order (I) Directing Joint Administration of Cases and (II) Granting Related Relief* [Dkt. No. 72], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. Since the Petition Date, the DBS Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. No trustee or examiner has been appointed in the DBS Debtors' Chapter 11 Cases.

**E. Appointment of the Committee**

5. On July 12, 2026, the U.S. Trustee appointed the official committee of unsecured creditors (the "**Committee**") to represent the interests of the Debtors' unsecured creditors in these Chapter 11 Cases [Dkt. No. 276].

**F. Plan Supplement**

6. The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended in accordance with the Plan) complies with the Bankruptcy Code and the terms of the Plan, and the DBS Debtors provided good and proper notice of the Filing of the Plan Supplement in accordance with the DBS Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures, and all other applicable rules, laws, and requirements. No other or further notice is or will be required with respect to the Plan Supplement or any of the documents contained therein or related thereto, unless any such documents are further modified, in each case subject to the terms and conditions of the Plan. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan; *provided* that, subject to the terms of the Plan and paragraph 96 of this Confirmation Order, the DBS Debtors reserve the right to alter, amend, or modify the Plan Supplement pursuant to the terms of the Plan, this Confirmation Order, the Bankruptcy Code, the Bankruptcy Rules, *provided further* that no such alternation, amendment, or modification shall be inconsistent with the Plan, the Confirmation Order or the Restructuring Support Agreement.

**G. Modifications to the Plan**

7. Pursuant to, and in compliance with, section 1127 of the Bankruptcy Code, the DBS Debtors have modified the Initial Plan, which modifications are reflected in the Plan (the "**Plan**

**Modifications**"). In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (a) constitute material modifications under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially or adversely affect or change the treatment of any Claims or Interests, (d) require re-solicitation of votes on the Plan by any Holders of Claims, or (e) require that any such Holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Under the circumstances, the form and manner of notice of the Plan Modifications were adequate, and no other or further notice of the Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims that voted to accept the Plan or that are conclusively presumed to have accepted the Plan, as applicable, are deemed to have accepted the Plan as modified by the Plan Modifications. No Holder of a Claim that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

**H. Objections Overruled**

8. All parties have had a fair opportunity to litigate all issues raised, or that might have been raised, in objections to final approval of the Disclosure Statement and Confirmation of the Plan. Any resolution or disposition of an objection to final approval of the Disclosure Statement or Confirmation of the Plan explained or otherwise ruled on by the Bankruptcy Court on the record at the Combined Hearing is hereby incorporated by reference, and each such objection is hereby resolved or overruled as set forth in this Confirmation Order. All unresolved objections, statements, joinders, informal objections, and reservations of rights, if any, are hereby overruled on the merits (except in connection with unresolved objections solely to the extent such objections relate to Cure Costs payable or asserted to be payable by the DBS Debtors or the Reorganized DBS

Debtors under section 365 of the Bankruptcy Code under assumed Executory Contracts or Unexpired Leases).

**I. DBS Solicitation Procedures Order**

9. On September 17, 2026, the Bankruptcy Court entered the DBS Solicitation Procedures Order, which, among other things: (a) conditionally approved the Disclosure Statement; (b) approved the Solicitation and Voting Procedures; (c) approved the form of Ballots, the Non-Voting Status Notice, and the Opt-In Form; (d) approved the form of Combined Hearing Notice; (e) set September 23, 2026, at 5:00 p.m. (prevailing Central Time) as the Voting Deadline, the Opt-In Deadline, and deadline for objecting to final approval of the Disclosure Statement and Confirmation of the Plan (the "**Objection Deadline**"); and (f) set September 29, 2026 at 1:00 p.m. (prevailing Central Time) as the date and time for the Combined Hearing.

**J. Adequacy of the Disclosure Statement**

10. The Disclosure Statement: (i) contains sufficient information of a kind necessary to satisfy the disclosure requirements of applicable nonbankruptcy laws, rules, and regulations, including the Securities Act; and (ii) contains adequate information," as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code, with respect to the DBS Debtors, the Plan, and the transactions contemplated therein. The Filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

**K. Solicitation and Voting**

11. As described in the Solicitation Certificate and Voting Report, the DBS Debtors solicited votes to accept or reject the Plan in good faith, and such solicitation complied with the Solicitation and Voting Procedures, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including the registration

requirements under the Securities Act, was appropriate and satisfactory under the circumstances of these Chapter 11 Cases, and is approved in all respects.

12. Prior to the Petition Date, the Solicitation Packages were transmitted and served, including to all Holders in the Voting Classes and nominees, who were directed to distribute Solicitation Packages to each Beneficial Holder within five business days of receipt of such materials from the Solicitation Agent, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, the Solicitation Procedures Order, and any applicable non-bankruptcy laws. Service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further notice is required.

13. As set forth in the Voting Report, the Solicitation Packages were distributed to Holders in the Voting Classes and Nominees that held a Claim or Interest as of June 29, 2026 (the **"Voting Record Date**"). The establishment and notice of the Voting Record Date was reasonable and sufficient.

14. The time during which the DBS Debtors solicited acceptances of, or rejections to, the Plan was reasonable and sufficient for each Holder in each Voting Class to make an informed decision to accept or reject the Plan.

15. Under sections 1126(f) and 1126(g) of the Bankruptcy Code, the DBS Debtors were not required to solicit votes from the Holders of Claims or Interests, as applicable, in the Non-Voting Classes, each of which is conclusively presumed to have accepted the Plan. Nevertheless, the DBS Debtors served the Combined Hearing Notice on the DBS Debtors' full creditor matrix and served the Notice of Non-Voting Status and Opt-In Form, as applicable, to all Holders of Claims or Interests in the Non-Voting Classes. The Combined Hearing Notice adequately

informed Holders of Claims or Interests of critical information regarding voting on (if applicable) and objecting to the Plan, including the Voting Deadline, the Opt-In Deadline, and the Objection Deadline and other applicable deadlines, and the Plan's releases, exculpation, and injunctions.

**L. Notice**

16. As evidenced by the Affidavits, the DBS Debtors provided due, adequate, and sufficient notice of the commencement of these Chapter 11 Cases, the Plan, the Disclosure Statement, the Combined Hearing, the Plan Supplement, the Voting Deadline, the Opt-In Deadline, the Objection Deadline, and all other materials distributed by the DBS Debtors in connection with final approval of the Disclosure Statement and Confirmation of the Plan in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Bankruptcy Local Rules, the Complex Case Procedures, and the procedures set forth in the Solicitation Procedures Order. Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases and was made in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures, and the DBS Solicitation Procedures Order. No other or further notice is or shall be required.

**M. Burden of Proof—Confirmation of the Plan**

17. The DBS Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. In addition, and to the extent applicable, the Plan is confirmable under the clear-and-convincing evidentiary standard.

**N. Bankruptcy Rule 3016**

18. The Plan and all modifications thereto are dated and identify the DBS Debtors as the proponents of the Plan, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b). The discharge, release, injunction, and

exculpation provisions of the Plan are set forth in bold therein and in the Disclosure Statement, thereby complying with Bankruptcy Rule 3016(c).

**O. Compliance with Bankruptcy Code Requirements – Section 1129(a)(1)**

19. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

(i) *Proper Classification – Sections 1122 and 1123*

20. Article III of the Plan provides for the separate classification of Claims and Interests into nine Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

(ii) *Specified Unimpaired Classes – Section 1123(a)(2)*

21. Article III of the Plan specifies that Holders of Other Secured Claims in Class 1A, Holders of Other Priority Claims in Class 1B, Holders of DBS General Unsecured Claims in Class 1H, Holders of DBS Intercompany Claims in Class 1I, and Holders of Interests in DBS Debtors in Class 1J are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code and are conclusively presumed to have accepted the Plan. Additionally, Article II of the Plan provides that Administrative Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims will be paid in accordance with the terms of the Plan, although these Claims are not classified under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

(iii) *Specified Treatment of Impaired Classes – Section 1123(a)(3)*

22. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "**Impaired Classes**") are Impaired under the Plan, within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes.

| Class | Claims and Interests | Treatment |
|---|---|---|
| 1C | 2026 Senior Secured Notes Claims | Entitled to Vote |
| 1D | 2028 Senior Secured Notes Claims | Entitled to Vote |
| 1F | 2028 Senior Notes Claims | Entitled to Vote |
| 1G | 2029 Senior Notes Claims | Entitled to Vote |

Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

(iv) *No Discrimination – 1123(a)(4)*

23. The Plan provides for the same treatment by the DBS Debtors of each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

(v) *Adequate Means for Plan Implementation – Section 1123(a)(5)*

24. The provisions of Article IV and elsewhere in the Plan, together with the Plan Supplement, provide, in detail, adequate and proper means for the Plan's implementation, including regarding: (a) the general settlement of Claims and Interests; (b) the authorization for the DBS Debtors and the Reorganized DBS Debtors, as applicable, to take all actions necessary to effectuate the Plan, including those actions necessary or appropriate to effectuate the Restructuring Transactions and any restructuring transaction steps set forth herein; (c) issuance and distribution of the Amended Notes; (d) the vesting of assets in the Reorganized DBS Debtors; (e) the cancellation of all notes, instruments, certificates, and other documents evidencing Claims or Interests (and any guarantees or other obligations of a DBS Debtor thereunder) that are satisfied,

released, compromised, discharged, cancelled, or otherwise treated under the Plan; (f) the preservation and vesting of certain Causes of Action in the Reorganized DBS Debtors; and (g) the effectuation and implementation of documents and further transactions with respect to the foregoing or as contemplated under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

(vi) *Voting Power of Equity Securities – Section 1123(a)(6)*

25. The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. In accordance with the Plan, on or immediately prior to the Effective Date, the new organizational documents of the Reorganized DBS Debtors shall be automatically adopted by the applicable Reorganized Debtors. Such documents will prohibit the issuance of non-voting equity Securities, thereby satisfying section 1123(a)(6).

(vii) *Directors and Officers – Section 1123(a)(7)*

26. The initial directors and officers of the Reorganized DBS Debtors have been disclosed in the Plan Supplement, and the provisions of the Plan with respect to the manner of selection of any officer, director, or trustee under the Plan (and any successor thereto) are consistent with the interests of creditors and equity holders and with public policy. Accordingly, the Plan satisfies the requirement of section 1123(a)(7) of the Bankruptcy Code.

(viii) *Impairment/Unimpairment of Classes – Section 1123(b)(1)*

27. Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(ix) *Assumption – Section 1123(b)(2)*

28. Article V.A of the Plan provides that, on the Effective Date, all Executory Contracts or Unexpired Leases will be deemed assumed by the applicable Reorganized DBS Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy

Code, other than those that: (a) are identified on the Schedule of Rejected Contracts and Leases; (b) previously expired or terminated pursuant to their own terms; (c) have been previously assumed or rejected by the DBS Debtors pursuant to a Final Order; or (d) are the subject of a motion to reject Filed by the DBS Debtors on or before the Confirmation Date. Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

(x) *Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action – Section 1123(b)(3)*

29. In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. The compromises and settlements embodied in the Plan are the result of extensive, arm's-length, good-faith negotiations and preserve value for the DBS Debtors, the DBS Estates, and all their stakeholders; avoid extended, uncertain, time-consuming, and value-destructive litigation; and represent a fair and reasonable compromise of all Claims, Interests, and controversies. Entry into such compromises and settlements represents a sound exercise of the DBS Debtors' business judgment. The compromises and settlements in the Plan are fair, equitable, reasonable, and in the best interests of the DBS Debtors and the DBS Estates and satisfy the requirements of applicable law for approval pursuant to Bankruptcy Rule 9019.

30. Based on the representations and arguments of proposed counsel to the DBS Debtors and all other testimony actually given or proffered and other evidence introduced at the Combined Hearing and the full record of the Chapter 11 Cases, and in consideration for the distributions and other benefits provided under the Plan and the consideration provided by certain

of the Released Parties, this Confirmation Order constitutes the Bankruptcy Court's approval of such settlements, as well as a finding by the Bankruptcy Court that such settlements are in the best interests of the DBS Debtors, the DBS Estates, and the Holders of Claims and Interests and are fair, equitable, and reasonable, maximize the value of the DBS Estates by preserving and protecting the ability of the Reorganized DBS Debtors to continue operating outside of bankruptcy protection and in the ordinary course of business, and allow the DBS Debtors to expeditiously exit chapter 11. Based on the foregoing, the compromises and settlements in the Plan satisfy the requirements of applicable Fifth Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

a. **DBS Debtor Release**

31. Article VIII.C of the Plan describes certain releases granted by the DBS Debtors (the "**DBS Debtor Release**"). The DBS Debtors have demonstrated that the releases provided under the DBS Debtor Release constitute a sound exercise of their business judgment, and the DBS Debtors have otherwise established the propriety of the DBS Debtor Release and satisfied the requirements of Bankruptcy Rule 9019 with respect thereto. Each of the Released Parties has made a substantial contribution to the Plan and to the DBS Debtors' reorganization. The DBS Debtor Release is a necessary and integral element of the Plan, is fair, equitable, reasonable, and is in the best interests of the DBS Debtors, the DBS Estates, and Holders of Claims and Interests.

32. For the reasons set forth herein and in the Confirmation Declarations, the DBS Debtor Release: (a) reflects a reasonable balance between the potential success of litigation with respect to each of the settled Claims and disputes, on the one hand, and the benefits of fully and finally resolving such Claims and disputes and allowing the DBS Debtors to exit chapter 11 expeditiously, on the other hand; (b) is a good-faith settlement and compromise of the Claims and Causes of Action released by the DBS Debtor Release; (c) is provided in exchange for the good and

valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitate the Restructuring Transactions and implement the Plan, following extensive, arm's-length negotiations between sophisticated parties represented by counsel and advisors; (d) is given, and made, after due notice and opportunity for hearing; and (e) serves as a bar to any of the DBS Debtors, the Reorganized DBS Debtors, or the DBS Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the DBS Debtor Release. The DBS Debtors' or the Reorganized DBS Debtors' pursuit of any such Claims or Causes of Action against the Released Parties is not in the best interests of the DBS Estates or the DBS Debtors' constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims or Causes of Action.

33. The DBS Debtor Release appropriately offers protection to parties that participated in the DBS Debtors' restructuring process. Each of the Released Parties made significant concessions and contributions to these Chapter 11 Cases. The DBS Debtor Release for the DBS Debtors' current and former directors and officers is appropriate because the DBS Debtors' directors, officers, and managers share an identity of interest with the DBS Debtors, supported and made substantial contributions to the success of the Plan and these Chapter 11 Cases, and actively participated in relevant meetings and negotiations prior to the commencement of and during these Chapter 11 Cases. The DBS Debtor Release for the Consenting Creditors is appropriate because such parties have actively supported the Plan, including through the prepetition negotiation and execution of the Restructuring Support Agreement which, in accordance with the Plan, allows the DBS Debtors to deleverage their prepetition capital structure and provides the DBS Debtors with enhanced strategic flexibility. The DBS Debtor Release was an integral component of the support provided, and the contributions and concessions made, by the Consenting Creditors, and the

Consenting Creditors would not have agreed to provide such support or make such contributions and concessions without the DBS Debtor Release, as the inclusion of the DBS Debtor Release was a negotiated provision of the Restructuring Support Agreement. Finally, the DBS Debtor Release of EchoStar is appropriate because EchoStar has actively supported the Plan and provided substantial contributions to the DBS Debtors' restructuring efforts, including by providing operational capital through the Shared Services Agreement.

34. The scope of the DBS Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases. The DBS Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the DBS Estates and the critical nature of the DBS Debtor Release to the Plan. The DBS Debtor Release is authorized and approved.

b. **Third-Party Release**

35. The Third-Party Release, set forth in Article VIII.F of the Plan, is a necessary and integral element of the Plan, is fair, equitable, reasonable, and is in the best interests of the DBS Debtors, the DBS Estates, and all Holders of Claims and Interests. The Third-Party Release: (a) is consensual; (b) represents a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (c) is beneficial to and in the best interests of the DBS Debtors, the DBS Estates, and their stakeholders, and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in these Chapter 11 Cases; (d) is specific in language and scope; (e) is essential to the Confirmation of the Plan; (f) is given in exchange for the substantial contributions made and the good and valuable consideration provided by the Released Parties; (g) is a condition to the good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (h) is given and made after due notice and opportunity for hearing; (i) constitutes a bar to the assertion of any Claim or

Cause of Action released pursuant to the Third-Party Release by any of the Releasing Parties; (j) promoted the participation of, and support from, the Released Parties in the Plan process and the Chapter 11 Cases; and (k) supported Confirmation of the Plan, which maximizes value for all of the DBS Debtors' stakeholders.

36. The Third-Party Release is consensual given that, among other things: (a) the Releasing Parties were provided adequate notice of these Chapter 11 Cases, the Plan, and the deadline to object to Confirmation and opt in to the Third-Party Release; (b) the release provisions of the Plan were conspicuous, emphasized with bold typeface in the Plan, the Disclosure Statement, the Ballots (which included an opt in election), the Notice of Non-Voting Status, and the Combined Hearing Notice; (c) Holders of Claims and Interests in the Non-Voting Classes received the Opt-In Form; and (d) the Combined Hearing Notice was sent to all parties that receive notice in these Chapter 11 Cases (including those not entitled to vote on the Plan) and published in *The New York Times* on September 23, 2026. The Releasing Parties were given due and adequate notice of the Third-Party Release, including the deadline to object to, or opt into, the Third-Party Release, and thus the Third-Party Release is consensual under controlling precedent in the Fifth Circuit. The Third-Party Release is authorized and approved.

c. **Exculpation**

37. The exculpation described in Article VIII.G of the Plan (the "**Exculpation**") is appropriate under applicable law, including *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F. 4th 419 (5th Cir. 2022) and *Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 132 F.4th 353, 360–62 (5th Cir. 2025), because it was supported by proper evidence, proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents and is appropriately limited in scope. Without limiting anything in the Exculpation, each

Exculpated Party has participated in these Chapter 11 Cases in good faith and in compliance with applicable laws with regard to solicitation of votes and distribution of consideration pursuant to the Plan, and is appropriately released and exculpated from any Cause of Action for any claim arising from the Petition Date up to and including the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Disclosure Statement, the Definitive Documents, the Solicitation Materials, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the DBS Debtors' Chapter 11 Cases, the First Day Pleadings, the Definitive Documents, the negotiation and pursuit of the Restructuring Support Agreement, the Amended Notes Indentures, the Plan Supplement, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; *provided, however*, that the foregoing exculpation shall not apply to any act or omission that is determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. The Exculpated Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of Securities hereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such

Exculpated Parties from liability. The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. The Exculpation, including its carveout for actual fraud, willful misconduct, or gross negligence, is fair, reasonable, and appropriate under the circumstances of the Chapter 11 Cases and is consistent with established practice in this jurisdiction.

38. Solely with respect to the Exculpation, notwithstanding anything to the contrary in the Plan or the Plan Supplement, each of the Exculpated Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security offered or sold under the Plan. The Exculpated Parties are entitled to the protection of section 1125(e) of the Bankruptcy Code. The Exculpation is authorized and approved.

d. **Injunction**

39. The Injunction set forth in Article VIII.H of the Plan is essential to the Plan and is necessary to implement, preserve, and enforce the DBS Debtors' discharge (to the extent provided under the Plan), the DBS Debtor Release, the Third-Party Release, and the Exculpation. The Injunction is appropriately tailored to achieve its purpose. The Injunction provided in the Plan is authorized and approved.

e. **Preservation of Causes of Action**

40. Pursuant to Article IV.M of the Plan and in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan and paragraph 88 of this Confirmation Order, the Reorganized DBS Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the DBS Debtors and the DBS Estates whether arising before or after the Petition Date, and the Reorganized DBS Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than any Causes of Action released by the DBS Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, subject to paragraph 88 of this Confirmation Order, which shall be deemed released and waived by the DBS Debtors and the Reorganized DBS Debtors as of the Effective Date.

41. The provisions regarding the preservation of Causes of Action in the Plan and this Confirmation Order are appropriate, fair, equitable, and reasonable, and are in the best interests of the DBS Debtors, the DBS Estates, and Holders of Claims and Interests.

f. **Lien Release**

42. The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the DBS Estates described in Article VIII.B of the Plan (the "**Lien Release**") is essential to the Plan and necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the DBS Debtors, the DBS Estates, and Holders of Claims and Interests.

(xi) *Additional Plan Provisions – Section 1123(b)(6)*

43. The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xii) *Cure of Defaults – Section 1123(d)*

44. Article V.C of the Plan provides for the satisfaction of Cure Costs associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365 of the Bankruptcy Code or as otherwise agreed between the DBS Debtors and the counterparty to each such assumed or assumed and assigned Executory Contract and Unexpired Lease. The DBS Debtors shall cure, or provide adequate assurance that they will promptly cure, any monetary defaults, pursuant to sections 365(b)(1) and 1123(b)(2) of the Bankruptcy Code, (1) on or prior to the Effective Date, for such amounts that have come due under the terms of the Executory Contract or Unexpired Lease prior to the Effective Date, (2) in accordance with the terms of the Executory Contract or Unexpired Lease, for such amounts that come due on or after the Effective Date, or (3) on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree in writing. In the event of a dispute regarding (a) the amount of any Cure Costs, (b) the DBS Debtors' or Reorganized DBS Debtors' ability to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the undisputed portion of such Cure Costs shall be paid in accordance with the first sentence of Article V.C of the Plan, and the applicable disputed Cure Costs shall be paid following the entry of a Final Order resolving the dispute; provided, however, that any dispute as to the amount of Cure Costs or any potential contractual obligation under such Executory Contract or Unexpired Lease, whether arising before or after the Effective Date, shall be resolved: (i) by any court of competent jurisdiction as provided (A) by the forum selection, venue, and choice of law provisions of such Executory Contract or Unexpired Lease or (B) under applicable non-bankruptcy law; or (ii) under the terms of a settlement between the DBS Debtors or the Reorganized DBS Debtors, on the one hand, and the non-Debtor party to such Executory Contract or Unexpired

Lease, on the other hand, without any further notice to or action, order, or approval of the Bankruptcy Court. With respect to the foregoing proviso, if the dispute relates to the amount of any Cure Costs, the applicable Executory Contract or Unexpired Lease shall be treated as having been assumed by the DBS Debtors or the Reorganized DBS Debtors under sections 365 and 1123(b)(2) of the Bankruptcy Code pending resolution of any such dispute. The foregoing provisions of this paragraph 44 are subject in all respects to the provisions of paragraph 114 of this Confirmation Order with respect to the Programmer Parties, as applicable.

45. The assumption of any Executory Contract or Unexpired Lease and the satisfaction of related Cure Costs in full or as otherwise agreed among the DBS Debtors or Reorganized DBS Debtors, as applicable, on the one hand, and the counterparty to such Executory Contract or Unexpired Lease, on the other hand, pursuant to the Plan and this Confirmation Order, shall result in the full release and satisfaction of any non-monetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time on or prior to the Effective Date. As such, the Plan provides that the DBS Debtors will cure, or provide adequate assurance that the DBS Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**P. DBS Debtor Compliance with the Bankruptcy Code – Section 1129(a)(2)**

46. The DBS Debtors have complied with the applicable provisions of the Bankruptcy Code and thus satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each DBS Debtor:

a. is eligible to be a debtor under section 109 and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b. complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c. complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable non-bankruptcy law, rule, or regulation, the DBS Solicitation Procedures Order, and all other applicable laws, in transmitting the Solicitation Packages and related documents and notices and in soliciting and tabulating the votes on the Plan.

**Q. Plan Proposed in Good Faith – Section 1129(a)(3)**

47. The DBS Debtors have proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the commencement of these Chapter 11 Cases, the Restructuring Support Agreement, the Plan, the Confirmation Declarations, the Voting Report, the process leading to Confirmation, including the support of Holders of Claims for the Plan, and the transactions to be implemented pursuant thereto. These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of facilitating the DBS Debtors' implementation of the Restructuring Transactions.

48. The Plan is the product of good-faith, arm's-length negotiations by and among the DBS Debtors, the Required Consenting Creditors, and other parties in interest. Consistent with the overriding purpose of chapter 11, the DBS Debtors commenced these Chapter 11 Cases with the belief that the reorganization for the DBS Debtors was appropriate and warranted under the circumstances, and the Plan was negotiated and proposed with the intention of accomplishing a successful reorganization and maximizing stakeholder value and for no ulterior purpose. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**R. Payment for Services or Costs and Expenses – Section 1129(a)(4)**

49. The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid to Professionals by the DBS Debtors or the

Reorganized DBS Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**S. Directors, Officers, and Insiders – Section 1129(a)(5)**

50. The identities of or process for appointment of the Reorganized DBS Debtors' initial directors and officers after the Effective Date were disclosed in the Plan Supplement. Accordingly, the DBS Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**T. No Rate Changes – Section 1129(a)(6)**

51. Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**U. Best Interest of Creditors – Section 1129(a)(7)**

52. The liquidation analysis attached as Exhibit D to the Disclosure Statement and the other evidence related thereto in support of the Plan that was admitted into evidence, whether by proffer, live testimony, or otherwise, at or in connection with the Combined Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the DBS Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code. As a result, the DBS Debtors have demonstrated that the Plan is in the best interests of their creditors, and the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**V. Acceptance by Certain Classes – Section 1129(a)(8)**

53. The Unimpaired Classes are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.

**W. Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code – Section 1129(a)(9)**

54. The treatment of Administrative Claims, including Allowed Professional Fee Claims, and Priority Tax Claims under Article II of the Plan, and Other Priority Claims in Class 1B under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

55. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, priority tax claims filed by the Tennessee Department of Revenue shall be paid according to 11 U.S.C. § 1129(a)(9)(C) with interest paid according to 11 U.S.C. § 511.

**X. Acceptance by At Least One Impaired Class – Section 1129(a)(10)**

56. As evidenced by the Voting Report, Classes 1C, 1D, 1F, and 1G, each of which is Impaired, voted to accept the Plan by the requisite numbers and amounts of Claims, as determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code). Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**Y. Feasibility – Section 1129(a)(11)**

57. The financial projections attached to the Disclosure Statement as <u>Exhibit C</u>, and the other evidence supporting Confirmation of the Plan proffered or adduced by the DBS Debtors at, or prior to, the Combined Hearing or in the Confirmation Declarations Filed in connection therewith: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate

methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized DBS Debtors or any successor to the Reorganized DBS Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized DBS Debtors will have sufficient funds available to meet their obligations under the Plan, including, for the avoidance of doubt, any Administrative Claims described in the *Stipulation and Agreed Order Modifying the Automatic Stay* [Dkt. No. 1369] to the extent such claims are liquidated in accordance with Article II.A of the Plan. The financial projections, together with the Ansel Declaration, demonstrate that estimation of contingent, unliquidated, and disputed Administrative Claims is not necessary for purposes of determining feasibility of the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**Z. Payment of Fees – Section 1129(a)(12)**

58. Article XII.C of the Plan provides for the payment of all fees payable by the DBS Debtors or the Reorganized DBS Debtors, as applicable, under 28 U.S.C. § 1930(a). Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**AA. Non-Applicability of Certain Sections – 1129(a)(13), 1129(a)(14), (15), and (16)**

59. Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The DBS Debtors owe no retiree benefits or domestic support obligations, are not individuals, and are not nonprofit corporations.

**BB. Only One Plan – Section 1129(c)**

60. The Plan (including previous versions thereof) is the only chapter 11 plan Filed in each of the DBS Debtors' Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**CC. Principal Purpose of the Plan – Section 1129(d)**

61. No Governmental Unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section five of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**DD. Not Small Business Cases – Section 1129(e)**

62. The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases.

**EE. Good-Faith Solicitation – Section 1125(e)**

63. The DBS Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code. The Released Parties and the Exculpated Parties have likewise acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support of the Plan and consummation, including, among other things, solicitation of acceptances of the Plan, as applicable, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided for in the Plan and this Confirmation Order.

**FF. Satisfaction of Confirmation Requirements**

64. Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**GG. Likelihood of Satisfaction of Conditions Precedent to the Applicable Effective Date**

65. Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.

**HH. Implementation.**

66. All documents necessary to implement the Plan and the Restructuring Transactions contemplated thereby, including those contained in the Plan Supplement, and all other relevant and necessary or desirable documents have been negotiated in good faith and at arm's length and shall, on completion of documentation and execution, be valid, binding, and enforceable agreements, not avoidable and not in conflict with any federal, state, or foreign law.

**II. Disclosure of Facts**

67. The DBS Debtors have disclosed all material facts regarding the Plan prior to the Combined Hearing, including that each DBS Debtor will emerge from its Chapter 11 Case as a validly existing corporation, limited liability company, partnership, or other corporate form, as applicable, with separate assets, liabilities, and obligations, as set forth in the Plan.

**JJ. Good Faith**

68. The DBS Debtors and their respective Representatives have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the DBS Estates for the benefit of their stakeholders. The Plan accomplishes this goal. Accordingly, the DBS Debtors or the Reorganized DBS Debtors, as applicable, and their Representatives have been acting in good faith, are acting in good faith, and will continue to act in good faith if they proceed to: (a) consummate the Plan, the Restructuring Transactions, and all settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order and the Plan to reorganize the DBS Debtors' businesses and effectuate the Restructuring Transactions.

**KK. DWLLC Claims Trust and DWLLC Intercompany Loan.**

69. In accordance with Article VI.E of the Plan, the treatment of Allowed 2028 Senior Secured Notes Claims, Allowed 2028 Senior Notes Claims, and Allowed 2029 Senior Notes Claims against the DBS Debtors under Classes 1D, 1F and 1G, respectively, and the treatment of such Allowed DBS Notes Claims under the Plan with respect to the DBS Debtors shall not alter, impair, satisfy, discharge, or otherwise affect such holders' separate DISH Wireless General Unsecured Claims against DWLLC under the DWLLC Intercompany Loan assigned to the DWLLC Claims Trust for the ratable benefit of DWLLC Claims Trust Beneficiaries prior to the Petition Date in accordance with the Restructuring Support Agreement. For the avoidance of doubt, the Committee and certain creditors or parties in interest dispute the claims asserted against DWLLC in respect of the DWLLC Intercompany Loan in DWLLC's Chapter 11 Case and, for the avoidance of doubt, no representation or warranty is made that there will be any distributions or recovery in respect of the DWLLC Intercompany Loan under any plan that may be confirmed in the DISH Wireless Debtors' cases or otherwise, and the rights of all Persons and Entities are reserved with respect to the DWLLC Intercompany Loan, subject to the terms and conditions of the Restructuring Support Agreement with respect to the parties thereto.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

**A. Final Approval of the Disclosure Statement**

70. The Disclosure Statement is **APPROVED** as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

**B. Solicitation**

71. The solicitation of votes on the Plan complied with the DBS Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures, and applicable non-bankruptcy law, was appropriate and satisfactory based on the circumstances of these Chapter 11 Cases, and is approved in all respects.

**C. Notice of Combined Hearing**

72. The Combined Hearing Notice was appropriate and satisfactory based on the circumstances of these Chapter 11 Cases and complied with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures, and applicable non-bankruptcy law.

**D. Confirmation of the Plan**

73. The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.

74. This Confirmation Order approves the Plan Supplement, including the documents contained therein, as they may be amended up to and including the Effective Date in accordance with and as permitted by the Plan, subject to the consent rights therein and in the Restructuring Support Agreement, and in all other Definitive Documents.

**E. Objections Overruled**

75. All objections, statements, joinders, and reservations of rights pertaining to final approval of the Disclosure Statement and Confirmation of the Plan that have not been withdrawn, waived, or resolved before entry of this Confirmation Order are hereby **OVERRULED** and **DENIED** on the merits in their entirety, with prejudice; *provided* that this paragraph shall not resolve an unresolved objection to the extent it disputes an asserted Cure Cost arising under an assumed Executory Contract or Unexpired Lease. Any such unresolved Cure Cost dispute,

including any dispute regarding the ability of the Reorganized DBS Debtors to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, shall be resolved in accordance with Articles V.C and XI.16 of the Plan and, if applicable, paragraph 114 of this Confirmation Order with respect to the Programmer Parties.

76. All objections to final approval of the Disclosure Statement or Confirmation of the Plan not Filed and served prior to the Objection Deadline set forth in the Combined Hearing Notice, if any, are deemed waived and have not been considered by the Bankruptcy Court. All parties have had a full and fair opportunity to litigate all issues raised or that could have been raised in the objections to final approval of the Disclosure Statement or Confirmation of the Plan, and the objections have been fully and fairly litigated or resolved, including by agreed-upon provisions as set forth in this Confirmation Order. All withdrawn objections are deemed withdrawn with prejudice.

**F. Omission of Reference to Potential Plan Provisions**

77. The failure to specifically include or refer to any particular article, section, or provision of the Plan or the Plan Supplement in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of this Bankruptcy Court that the Plan and any related documents be confirmed and approved in their entirety.

**G. Deemed Acceptance of Plan**

78. In accordance with section 1126 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan.

### H. No Action Required

79. Under section 1142(b) of the Bankruptcy Code and any other comparable provisions under applicable law, no action of the respective directors, equity holders, managers, or members of any of the DBS Debtors is required to authorize any of the DBS Debtors or the Reorganized DBS Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, or any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

80. Subject to Article IV of the Plan, the DBS Debtors and the Reorganized DBS Debtors, as applicable, are authorized, from and after the date of entry of this Confirmation Order, to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document, or take any action necessary or appropriate to implement the transactions contemplated by the Plan.

### I. Binding Effect

81. Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, on the occurrence of the Effective Date, the terms of the Plan and the Restructuring Transactions (including any Liens granted under the Plan), together with any documents related or ancillary thereto, shall be immediately effective and enforceable, not subject to avoidance or other challenge, legal or otherwise, and deemed binding on the DBS Debtors, the Reorganized DBS Debtors, any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-DBS Debtor parties to Executory Contracts and Unexpired Leases with the DBS Debtors. All Claims,

Interests, and debts shall be fixed, adjusted, Reinstated or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim, Interest, or debt has voted on the Plan.

**J. Incorporation by Reference**

82. The terms and provisions of the Plan are incorporated by reference and are an integral part of this Confirmation Order. Except as set forth in this Confirmation Order, the terms of the Plan, the Plan Supplement, all exhibits thereto, this Confirmation Order, the Definitive Documents, and all other relevant and necessary documents shall, on and after the Effective Date, be binding in all respects on, and shall inure to the benefit of, the DBS Debtors, the DBS Estates, the Reorganized DBS Debtors, their creditors, and their respective successors and assigns, non-DBS Debtor affiliates, any affected third parties, all Holders of Interests, all Holders of any Claims, whether known or unknown, against the DBS Debtors, including all contract counterparties, leaseholders, Governmental Units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar Entities in respect of the DBS Debtors, and each of their respective affiliates, successors, and assigns.

**K. Vesting of Assets in the Reorganized DBS Debtors**

83. Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Plan Supplement), or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, from and after the Effective Date, all property of each DBS Estate, all Causes of Action belonging to the DBS Debtors or the DBS Estates that are not released, waived, or extinguished pursuant to the Plan, and any property acquired by any of the DBS Debtors pursuant to the Plan shall vest in each respective Reorganized DBS Debtor, and/or any successors, assigns, or transferees of the applicable DBS Debtors or Reorganized DBS Debtors, including in connection with the Restructuring Transactions, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances and interests.

Notwithstanding anything to the contrary in the Plan, including Article IV.I of the Plan, such vesting free and clear shall not apply to, and nothing in the Plan or the Confirmation Order shall discharge, release, impair, waive, alter, or otherwise affect, the rights, interests, or Claims of Holders of Reinstated Claims or Unimpaired Claims. On and after the Effective Date, except as otherwise provided herein or in the Plan, each Reorganized DBS Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects. For the avoidance of doubt, all present and future property subject to Liens securing the indebtedness evidenced by the DBS Notes or obligations under the DBS Indentures as amended shall remain subject to all such Liens.

**L. Effectiveness of All Actions**

84. All actions contemplated by the Plan, including all actions contemplated by or in connection with all Definitive Documents are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of, the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or equity holders of the DBS Debtors or the Reorganized DBS Debtors and with the effect that such actions had been deemed taken by unanimous action of such officers, directors, managers, members, or equity holders.

**M. Release, Exculpation, Discharge, and Injunction Provisions**

85. The release, exculpation, discharge, and injunction provisions set forth in the Plan, including those contained in Article VIII.A–H of the Plan, are incorporated herein in their entirety, are hereby approved and authorized in their entirety, and shall be immediately effective and

binding on the Effective Date on all Persons and Entities to the extent provided in the Plan, without further notice to, order of, or action by this Bankruptcy Court.

86. For the avoidance of doubt, notwithstanding anything to the contrary in the Plan, the Plan Supplement, or any other provision of this Confirmation Order, nothing in the Plan, the Plan Supplement, or this Confirmation Order shall be deemed to release or enjoin any rights, claims, causes of action or defenses of the DISH Wireless Debtors or their chapter 11 estates against any Person or Entity, including the DBS Debtors, the Professionals and any other Related Parties of the foregoing, it being understood that all rights, claims, causes of action, and defenses of the DISH Wireless Debtors and/or their chapter 11 estates against any Person or Entity, including the DBS Debtors, the Professionals, and any other Related Parties of the foregoing are expressly preserved hereunder and shall not be released, enjoined, affected, impaired, compromised, settled, waived or discharged under the Plan or this Confirmation Order.

87. For the avoidance of doubt, notwithstanding anything to the contrary in the Plan, the Plan Supplement, or any other provision of this Confirmation Order, nothing in the Plan, the Plan Supplement, or this Confirmation Order shall be deemed to release, waive, enjoin, or modify any rights, claims, causes of action, or defenses against any of the DISH Wireless Debtors or their chapter 11 estates, or any Entity acting on behalf of the DISH Wireless Debtors or their chapter 11 estates, including the Special Committee, the Committee, or any successor of any of the forgoing, including under section 502(h) of the Bankruptcy Code, it being understood that all rights, claims, causes of action, and defenses against any of the DISH Wireless Debtors or their chapter 11 estates, or any Entity acting on behalf of the DISH Wireless Debtors or their chapter 11 estates, including the Special Committee, the Committee, or any successor of any of the forgoing, are expressly

preserved hereunder and shall not be released, enjoined, affected, impaired, compromised, settled, waived, or discharged under the Plan or the Confirmation Order.

**N. Preservation of Causes of Action**

88. Except with respect to Holders of Claims in the Voting Classes that are Released Parties, and subject to Article VIII.D of the Plan, notwithstanding anything to the contrary in the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, each Reorganized DBS Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the DBS Debtors, whether arising before, on, or after the Petition Date, and, as applicable, the Reorganized DBS Debtors' rights to commence, prosecute, or settle such retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary, other than the Causes of Action released and discharged by the DBS Debtors (a) with respect to Holders of Claims in the Voting Classes that are Released Parties pursuant to the releases and exculpations contained in the Plan, including in Article VIII thereof, and (b) with respect to Consenting Creditors (solely in the Consenting Creditors' capacities as such) and their respective property and successors and assigns (solely in their capacities as such) pursuant to Article VIII.D of the Plan. For the avoidance of doubt, subject to this paragraph 88, consistent with the Reinstatement of their Claims against the DBS Debtors under the Plan and this Confirmation Order, and notwithstanding anything to the contrary in the Plan or this Confirmation Order, neither the DBS Debtors, nor their Estates or the Reorganized DBS Debtors, or any of their respective Related Parties, are or shall be deemed to have released or discharged any Holder of a DBS General Unsecured Claim of or from any Cause of Action, whether arising before, on, or after the Petition Date.

**O. Executory Contracts and Unexpired Leases**

89. Subject to paragraph 114 of this Confirmation Order with respect to the Programmer Parties, the provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including provisions addressing disputes concerning assumption and Cure Costs, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety. Nothing in this Confirmation Order or Article V of the Plan shall limit, modify, or otherwise affect: (a) the treatment, including the effective date of assumption or rejection of any Executory Contract or Unexpired Lease of a DBS Debtor that was previously assumed or rejected pursuant to a Final Order; (b) the prosecution, resolution, withdrawal, or settlement, and the effective date of any relief granted, of any motion to assume or reject an Executory Contract or Unexpired Lease of a DBS Debtor that is pending as of the Confirmation Date; or (c) the right of any DBS Debtor to seek or obtain authority to abandon personal property under section 554 of the Bankruptcy Code. Any pending motion to assume or reject may be withdrawn, settled, or otherwise prosecuted by the DBS Debtors prior to the Effective Date or the Reorganized DBS Debtors on and after the Effective Date, as applicable.

90. For the avoidance of doubt, on the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, all Executory Contracts or Unexpired Leases not otherwise rejected shall be deemed assumed by the applicable Reorganized DBS Debtor, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (b) previously expired or terminated pursuant to their own terms; (c) have been previously assumed or rejected by the DBS Debtors pursuant to a Final Order; or (d) are the subject of a motion to reject that is pending on the Effective Date.

91. To the maximum extent permitted by applicable law, any provision in an Executory Contract or Unexpired Lease assumed pursuant to the Plan and this Confirmation Order that restricts, conditions, or prohibits, or purports to restrict, condition, or prohibit, or is breached or deemed breached by, assumption of such Executory Contract or Unexpired Lease pursuant to the Plan and this Confirmation Order, including any "change of control" provision or similar provision, shall be solely unenforceable with respect to the assumption of such Executory Contract or Unexpired Lease pursuant to the Plan and this Confirmation Order, and such provisions shall not entitle the non-DBS Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any default-related rights or demands for payment on account of such assumption. Any disputed Cure amounts shall be determined in accordance with Article V.C of the Plan and applicable bankruptcy and non-bankruptcy law, and, to the extent applicable, the provisions of paragraph 114 of this Confirmation Order with respect to the Programmer Parties.

92. The DBS Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the DBS Debtors, are necessary to the implementation of the Plan, and are in the best interests of the DBS Debtors, and the DBS Estates. Except as set forth in paragraph 114 below with respect to the Programmer Parties, this Confirmation Order constitutes a Final Order approving the assumption or rejection of the Executory Contracts and Unexpired Leases as set forth in the Plan and the Schedule of Rejected Contracts and Leases pursuant to sections 365 and 1123 of the Bankruptcy Code.

**P. Claims Based on Rejection of Unexpired Leases**

93. Notwithstanding anything to the contrary in the Plan, Plan Supplement, this Confirmation Order or any related documents, to the extent that a landlord of a rejected Unexpired Lease of nonresidential real property wishes to assert any claims with respect to such Unexpired

Lease, including an Administrative Claim or a rejection claim, such claims will be treated timely in accordance with the Plan and this Confirmation Order if any such claim is filed no later than thirty (30) days after the later of (i) the Effective Date of the DBS Debtors' or the Reorganized DBS Debtors' surrender and relinquishment of control of the premises in writing to the landlord and (ii) the Rejection Date (as defined below), whichever is later.

**Q. Effective Date of Rejection for Rejected Unexpired Leases**

94. Notwithstanding anything to the contrary in the Plan, Plan Supplement, this Confirmation Order or any related documents, the rejection date (the "**Rejection Date**") for an Unexpired Lease of nonresidential real property shall not occur until the later of (a) the rejection date set forth in the Plan Supplement; (b) the date the DBS Debtors or the Reorganized DBS Debtors relinquish control of the premises by notifying the affected landlord in writing of the DBS Debtors' or the Reorganized DBS Debtors' surrender of the premises and (i) turning over keys, key codes, and security codes, if any, to the affected landlord or (ii) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord may rekey the leased premises, and (c) the Effective Date. For the avoidance of doubt, the DBS Debtors or the Reorganized DBS Debtors shall be required to provide such landlord (and their counsel, if known) with actual written notice (email from counsel being sufficient) of surrender. Prior to the Reorganized DBS Debtors' surrender of the premises and subject to the terms of the applicable Unexpired Lease, the applicable landlord and the DBS Debtors or the Reorganized DBS Debtors, as applicable, shall cooperate in good faith to coordinate reasonable access to the applicable premises during normal business hours on mutually agreeable dates to facilitate the removal of the DBS Debtors' or the Reorganized DBS Debtors' personal property.

**R. Abandonment of Personal Property for Rejected Unexpired Leases**

95. Notwithstanding anything to the contrary in the Plan, Plan Supplement, this Confirmation Order or any related documents, the DBS Debtors or the Reorganized DBS Debtors are authorized to abandon any personal property remaining on the leased premises of a non-residential real property Unexpired Lease as of the Rejection Date. For the avoidance of doubt, any and all property located on the DBS Debtors' leased premises on the Rejection Date of the applicable Unexpired Lease shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Date free and clear of all liens, claims, encumbrances, or interests. The landlord may use or dispose of such abandoned property without further notice or liability to the DBS Debtors or any third party. To the extent applicable, the automatic stay is modified to permit such use or disposition, including but not limited to the transfer of title by the applicable DBS Debtor(s). Notwithstanding any other provision of this Confirmation Order, (a) the DBS Debtors are not authorized to abandon, and are directed to remove, any hazardous materials as defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law and (b) to the extent the DBS Debtors seek to abandon personal property that contains any "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the DBS Debtors' employees and/or customers, or any other individual (the "**Confidential Information**"), the DBS Debtors shall remove the Confidential Information from such personal property before abandonment.

**S. Plan Supplement**

96. Except as set forth in the Plan or this Confirmation Order, the DBS Debtors reserve the right to alter, amend, modify, or supplement any document in the Plan Supplement in accordance with the Restructuring Support Agreement and the Plan at any time before the Effective

Date of the Plan or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court; *provided, however*, that the DBS Debtors shall not alter, amend, modify or supplement any document in the Plan Supplement in a manner that is inconsistent with the Plan unless the DBS Debtors first file notice of the proposed modification with the Bankruptcy Court and serve such notice on parties in interest, and such parties are afforded a reasonable opportunity to object to, and to be heard by the Bankruptcy Court on the proposed modification before it becomes effective.

**T. Restructuring Transactions**

97. Subject to the terms of the Restructuring Support Agreement and the Plan, the DBS Debtors or Reorganized DBS Debtors, as applicable, are hereby authorized, immediately upon entry of this Confirmation Order, to enter into and take all steps desirable or necessary to effectuate the Restructuring Transactions (including the negotiation, execution, delivery, filing, and performance of the Amended Notes Indentures and any related instruments, agreements, and documentation contemplated thereby, and making all Plan distributions and issuances, including the issuance of the Amended Notes under the Amended Notes Indenture, in each case, as provided in the Plan and the applicable Amended Notes Indentures), the entry into and consummation of the transactions contemplated by the Plan and the Plan Supplement, as the same may be modified in accordance with the Plan from time to time prior to the Effective Date, and may take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Reorganized DBS Debtors, in each case as and to the extent provided in the Plan. Any transfers of assets, Claims, or Interests effected or any obligations incurred through the Restructuring Transactions as contemplated by and in accordance with the Restructuring Support Agreement and the Plan are hereby approved and shall not constitute a preference or a preferential transfer, fraudulent conveyance, or any

similar voidable transaction under the Bankruptcy Code or any applicable non-bankruptcy law. Except as otherwise provided in the Plan, each Reorganized DBS Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable DBS Debtor is incorporated or formed. The DBS Debtors or the Reorganized DBS Debtors, as applicable, are hereby authorized, immediately upon entry of this Confirmation Order, without any further notice to, action by, or the need to seek any third-party consents, corporate approvals, or further approvals of this Bankruptcy Court, to take any and all actions necessary to implement the Restructuring Transactions contemplated by the Plan, if any, including the transfers of assets of and/or Claims and Liens against a DBS Debtor or Reorganized DBS Debtor, as applicable, or its property. For the avoidance of doubt, the Confirmation Order hereby authorizes and approves any amendments to, and the execution and delivery of, the Amended Notes Indentures in accordance with the Restructuring Support Agreement and the Plan, without the need for any further consent or approval of any holder of the DBS Notes.

**U. Securities Law Matters**

98. To the extent the Amended Notes are issued, offered, distributed, exchanged, or otherwise delivered under the Plan, the Plan provides that such Amended Notes shall be issued, offered, and distributed to the fullest extent permitted in reliance on the exemption from registration provided by section 1145 of the Bankruptcy Code and/or section 4(a)(2) of the Securities Act and any other available exemption(s) from registration under applicable securities laws. To the extent section 1145 of the Bankruptcy Code is not available or is determined not to apply to any issuance or distribution of the Amended Notes, the Plan provides that such notes shall be offered, issued, and distributed pursuant to one or more other available exemptions from

registration (including, as applicable, section 4(a)(2) of the Securities Act, Regulation D, and/or Regulation S) and may be subject to customary legends and transfer restrictions consistent with applicable law and the applicable governing documents. The Plan therefore complies with applicable law.

**V. Cancellation of Notes, Instruments, Certificates, and Other Documents**

99. On the Effective Date, except to the extent otherwise provided in the Plan or this Confirmation Order, all notes, instruments, certificates, and other documents evidencing Claims or Interests (and any guarantees or other obligations of a DBS Debtor thereunder) shall, to the extent relating to Claims or Interests that are satisfied, released, compromised, discharged, cancelled, or otherwise treated under the Plan, be deemed cancelled and of no further force and effect. Holders of or parties to such cancelled instruments, certificates, and other documentation shall have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan or a Confirmation Order; *provided*, *however*, that the foregoing shall not cancel, impair, or otherwise affect (1) any Claim or Interest that is Reinstated under the Plan, (2) any Claim based on the 2026 Senior Secured Notes Indenture, the 2028 Senior Notes Indenture, the 2028 Senior Secured Notes Indenture, and the 2029 Senior Notes Indenture, in each case to the extent amended and supplemented pursuant to the applicable Amended Notes Indentures, or any obligations and rights thereunder or under any related documents or agreements, including any and all rights and obligations under security documents executed or delivered in connection with the 2026 Senior Secured Notes Indenture or the 2028 Secured Notes Indenture, in each case as amended and supplemented, or (3) any claim of any DISH Wireless Debtor or its chapter 11 estate. All privileges, rights, indemnities and immunities of the Indenture Trustees, including the Collateral Agent for the 2026 Senior Secured Notes and the 2028 Senior Secured Notes, are expressly

preserved. Notwithstanding anything to the contrary herein, the Plan's general provision for cancellation of any notes, indentures, securities, instruments, certificates, or other documents shall not impair, waive, release, discharge or otherwise affect the rights of any Indenture Trustee or trustee of the DWLLC Claims Trust to payment of fees and expenses, indemnification, reimbursement, priority of payment, charging liens, exculpation, limitation of liability, or any rights or obligations necessary to receive, process, or make distributions under the Plan or to enforce the foregoing rights.

100. Any such cancelled instrument, agreement or other document that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of, as applicable: (a) enabling Holders of Allowed Claims under such agreements to receive distributions under the Plan as provided therein; and (b) allowing and preserving the rights of the Agents and any other applicable paying agent to (i) make distributions in satisfaction of Allowed Claims under such agreements, (ii) maintain and exercise their respective charging liens against any such distributions, and to preserve any rights of the Agents to payment of fees and expenses as against any distributions to the Holders, including any rights to priority of payment and/or to exercise charging liens (if any) and enforce their rights under such agreement, (iii) seek compensation and reimbursement for any reasonable and documented fees and expenses incurred in making such distributions, (iv) maintain and enforce any right to indemnification, expense reimbursement, contribution, or subrogation or any other claim or entitlement, (v) exercise their rights and obligations relating to the interests of their Holders, and (vi) appear and be heard in these Chapter 11 Cases.

101. On the Effective Date, the Indenture Trustees shall be automatically and fully released and discharged from any further responsibility under the 2026 Senior Secured Notes

Indenture, the 2028 Senior Notes Indenture, the 2028 Senior Secured Notes Indenture, and the 2029 Senior Notes Indenture and shall have no further obligation or liability in respect of the 2026 Senior Secured Notes Indenture, the 2028 Senior Notes Indenture, the 2028 Senior Secured Notes Indenture, and the 2029 Senior Notes Indenture up to and including the Effective Date, except as provided in the Plan and this Confirmation Order. The Indenture Trustees on and after the Effective Date shall have the rights and duties set forth in the Amended Notes Indentures. The fees, expenses, and costs of any Indenture Trustee or trustee of the DWLLC Claims Trust, including fees, expenses, and costs of each of their respective professionals incurred after the Effective Date in connection with the 2026 Senior Secured Notes Indenture, the 2028 Senior Notes Indenture, the 2028 Senior Secured Notes Indenture, the 2029 Senior Notes Indenture and any applicable DWLLC Claims Trust agreement, and reasonable and documented fees, costs, and expenses associated with effectuating distributions pursuant to the Plan or any applicable DWLLC Claims Trust agreement, including the fees and expenses of counsel, shall be paid in accordance with the terms of the Plan and the applicable Definitive Documents.

**W. Distributions**

102. The procedures governing distributions in Article VI of the Plan shall be, and hereby are, approved in their entirety.

**X. Subordination Rights**

103. Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and this Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any

contractual, legal, or equitable subordination rights to property, assets, and interests distributed under the Plan, in each case other than as provided in the Plan.

**Y. Provisions Regarding Certain Patent Litigation Claims**

104. Notwithstanding anything to the contrary contained in Article III.B.8 of the Plan or any other provision of the Plan, the Disclosure Statement, any Plan Supplement, or this Confirmation Order (including any discharge, release, exculpation, settlement, or injunction provisions contained herein or therein, such as those under Section 1141 of the Bankruptcy Code):

a) All pre-petition and post-petition claims, causes of action, liabilities, remedies, and defenses arising out of or relating to the patent infringement claims (the "**Patent Claims**") of Adeia Inc. and certain of its affiliates ("**Adeia**") and of Velos Media, LLC and/or TechStream LLC and certain of their affiliates (together "**Velos**") (collectively, the "**Patent Claims**") shall "ride through" these Chapter 11 Cases completely unaffected.

b) With respect to the Patent Claims, the respective legal, equitable, and contractual rights of Adeia and of Velos and the rights, claims, and defenses of the Reorganized DBS Debtors, shall each remain completely unaltered and unimpaired by the Plan, any Plan Supplement, or this Confirmation Order. The Patent Claims shall not be discharged, compromised, released, waived, settled, or capped by Confirmation or consummation of the Plan.

c) Adeia and Velos shall each be permitted to pursue, liquidate, litigate, and adjudicate all such respective Patent Claims (including claims to recover both pre-petition damages and administrative liabilities, if any) to final judgment or settlement in the ordinary course in the appropriate non-bankruptcy forum. The automatic stay of Section 362 of the Bankruptcy Code, to the extent applicable, and any injunctions or stays are hereby deemed terminated and lifted as of the Effective Date to permit such litigation to proceed.

d) The Reorganized DBS Debtors shall satisfy any final judgment or award on the respective Patent Claims that is not modified or stayed, or any settlement liquidated into in connection with the Patent Claims, in each case without any requirement that Adeia or Velos file a proof of claim or request allowance of an administrative expense claim in these Chapter 11 Cases.

**Z. Provisions Regarding Texas Taxing Authorities**

105. Notwithstanding anything to the contrary in the Plan, the Restructuring Support Agreement, any Plan Supplement, or this Confirmation Order, the secured ad valorem tax claims

of the Texas Taxing Authorities[4] (the "**Texas Tax Claims**") shall be classified as Class 1A – Other Secured Claims. The DBS Debtors or Reorganized DBS Debtors, as applicable, shall pay all

[4] The term "**Texas Taxing Authorities**" is defined as all ad valorem taxing jurisdictions represented by the firms of Linebarger Goggan Blair and Sampson, Perdue Brandon Fielder Collins and Mott, and McCreary Veselka Bragg & Allen, including but not limited to: City of Allen, Allen Independent School District, Angelina County, Aransas County, Atascosa County, Beckville Independent School District, Bee County, Bexar County, Blanco CAD, Bosque County, Brooks County, Brownsboro Independent School District, Caddo Mills, Caddo Mills Independent School District, Caldwell CAD, Cameron County, Camp CAD, Campbell, Campbell Independent School District, City of Carrollton, Cass County, Cayuga Independent School District, Celeste, Celeste Independent School District, Chilton Independent School District, Clear Brook City MUD, Coleman County AD, City of Commerce, Concho CAD, Cotulla Independent School District, Crane County, Culberson Co – Allamoore Independent School District, Culberson County, Cypress-Fairbanks Independent School District, Dallas County, DeWitt County, Delta County, Dilley Independent School District, Duval County, City of Eagle Pass, Eagle Pass Independent School District, Ector CAD, City of El Lago, City of El Paso, Ellis County, Era Independent School District, City of Eustace, Eustace Independent School District, Town of Fairview, Fannin CAD, Fort Bend County, Franklin County, Frankston Independent School District, Frio Hospital District, City of Frisco, Gainesville Independent School District, Galveston County, Goliad County, Gonzales, Grayson County, Greenville Independent School District, Gregg County, Hamilton CAD, Hardin – Jefferson Independent School District, Harris – Fort Bend Independent School District #100, Harris County Emergency Service District (Nos. 01-17, 19-21, 24-25, 28-29, 46-48, 50, 60, 75 & 80), Harris County ID #03, Harris County WCID #01, Hawk Cove, Hays CISD, Hidalgo County, Hood CAD, Hopkins County, City of Houston, Houston City College, Houston Independent School District, Hudspeth AD, City of Humble, Hunt Memorial Hospital District, Irving Independent School District, Jackson County, Jasper County, Jefferson County, City of Jersey Village, Jim Hogg County, Jim Wells CAD, Karnes City Independent School District, Katy Independent School District, Kaufman County, Kenedy County, Kerr County, Kinney CAD, Kleberg County, La Salle County, LaPoynor Independent School District, Lamar CAD, Lavaca County, Lee County, Lewisville Independent School District, Liberty County, Limestone County, Live Oak CAD, Llano County, Lone Oak Independent School District, Lone Star College System, Lovejoy ISD, Loving County, Lucas, Madison County, Malakoff, Malakoff Independent School District, Marquez, Matagorda County, McAllen, McLennan County, McMullen County, Mills CAD, Montgomery County, Morgan Mill Independent School District, Morris CAD, City of Nassau Bay, Navarro County, Normangee, Normangee Independent School District, Northlake, Northlake Independent School District, Northwest Independent School District, Nueces County, Orange County, Parker CAD, City of Pasadena, Pearsall, Pearsall Independent School District, Pecos County, Pleasanton, Polk County, Prosper, Prosper Independent School District, Quinlan Independent School District, Rains County AD, Reagan County, Red River County, Reeves County, Refugio County, Richardson, Robertson County, Rockwall CAD, Rusk County, Sabine County, Sachse, San Augustine County, San Marcos CISD, San Patricio County, San Saba CAD, City of Seabrook, Shelby County, Smith County, City of South Houston, Star Harbor, Starr County, Stephenville Independent School District, Sterling County, Sulphur Springs, Sulphur Springs Independent School District, Tarrant County, Teague Independent School District, Terrell CAD, Texas City Independent School District, Tom Green CAD, Trinidad Independent School District, Tyler County, Upshur County, Val Verde County, Van Zandt CAD, Victoria County, Ward County, Webb CISD, City of Webster, West Tawakoni, West University Place, Wilson County, Winkler County, Wise County, Wolfe City Independent School District, Wood County, Wylie, Zapata County, Zavala CAD, Waller Independent School District, Waller County Tax Assessor-Collector, Waller

delinquent portions of the Texas Tax Claims (tax years 2025 and prior) in full in cash on or prior to the Effective Date and shall pay the current year 2026 taxes in the ordinary course of business as such taxes come due and prior to said ad valorem taxes becoming delinquent under Texas law. The Texas Tax Claims shall include all pre- and post-petition interest as allowed under Texas law and the Bankruptcy Code. The Texas Taxing Authorities' statutory liens securing the Texas Tax Claims (the "**Tax Liens**") remain unaltered by the Plan and the Confirmation Order and shall be retained against the Reorganized DBS Debtors' real and tangible personal property located in Texas, or any proceeds from the sale thereof, with the same validity, extent and priority as existed

---

Independent School District, Austin County Appraisal District, Brazoria County Et Al, Dickinson Independent School District, City Of Friendswood, Friendswood Independent School District, Clear Creek Independent School District, Santa Fe Independent School District, Galveston County WCID # 8, Harris County Utility District #6, Harris County Municipal Utility District #287, City Of Houston, Harris-Fort Bend Counties Municipal Utility District #5, Faulkey-Gully MUD, Pasadena Independent School District, San Jacinto College District, Harris County MUD #400, Alief Independent School District, Deer Park Independent School District, City Of Bellaire, City Of Galena Park, City Of Taylor Lake Villages, Tomball Independent School District, City Of Tomball, Humble Independent School District, Alief Independent School District, La Porte Independent School District, Galena Park Independent School District, Crosby Independent School District, Spring Branch Independent School District, Sheldon Independent School District, City Of Alamo, City Of Palmview, City Of Mercedes, City Of Penitas, City Of La Feria, Camero County Drainage District #6, Delta Lake Irrigation District, Richardson Independent School District, City Of Grapevine, Grapevine-Colleyville Independent School District, Wichita County, Burleson County, Luling Independent School District, Colorado County, Copperas Cove Independent School District, Falls County, Fayette County, Karnes County, Kendall County, Kerrville Independent School District, Menard County, Milam County, Anderson County, Bandera County, Bastrop County, Bell County Tax Appraisal District, Bosque County Tax Units, Bowie Central Appraisal District, Brazos County, Brown Central Appraisal District, Burnet Central Appraisal District, Calhoun County Appraisal District, Callahan County, Cherokee Central Appraisal District, Cherokee County, Comal County, Comanche County, Coryell County, Dallam Central Appraisal District, Dallam County, Denton County, Erath County, Floyd Central Appraisal District, Freestone County, Gladewater ISD, City of Gladewater, Gorman ISD, Grimes Central Appraisal District, Guadalupe County, Hardin County, Harrison Central Appraisal District, Harrison County, Hartley Central Appraisal District, Hays County, Henderson County, Hill County, Hill County Appraisal District, Jasper County Tax Units, Lampasas Central Appraisal District, Leon County, Limestone County Tax Units, Lynn County Appraisal District, Mason Central Appraisal District, McCulloch Central Appraisal District, Medina County, Midland Central Appraisal District, Milam County, Newton County, Nowton ISD, City of Newton, Nueces Canyon CISD, Panola County Tax Units, Pine Tree ISD, Runnels County, Town of Saint Paul, City of Somerville, Stephens County, Taylor County Central Appraisal District, City of Waco, and Williamson County.

on the Petition Date, until such time as the Texas Tax Claim respective to each ad valorem tax entity is paid in full. In the event the DBS Debtors or Reorganized DBS Debtors sell, convey, or transfer any property which is the collateral of the Texas Taxing Authorities, any sales proceeds shall be remitted to the Texas Taxing Authorities to be applied to the tax debt incident to any such property sold, conveyed or transferred and such proceeds shall be disbursed at the time of closing prior to any disbursement of sale proceeds to any other person or entity.

106. Further, the Texas Taxing Authorities may amend their Tax Claims to reflect the actual assessed 2026 tax amounts without prior authorization of the Bankruptcy Court or the DBS Debtors or Reorganized DBS Debtors, and said amendments shall not be deemed disallowed in full or expunged without any further action, order, or approval of the Bankruptcy Court. To be clear, the Texas Taxing Authorities are not waiving their rights (i) to assert the amount of their Tax Claims and any priority or secured nature of such Tax Claims; and (ii) to enforce the Tax Liens on account of any default in payment of the Tax Claims under this Confirmation Order. All rights and defenses of the DBS Debtors and Reorganized DBS Debtors under non-bankruptcy Law and the Bankruptcy Code are reserved and preserved with respect to this provision of the Confirmation Order and the Texas Tax Claims, including their right to dispute or object to the Texas Tax Claims and liens.

**AA. Provisions Regarding Reinstated Sling Arbitration Claims**

107. With respect to certain disputed data privacy claims (the "**Sling Arbitration Claims**") asserted against one of the DBS Debtors by Bursor & Fisher P.A. and Labaton Keller Sucharow LLP on behalf of certain claimants identified in that certain *Dispute Resolution Notice* dated March 12, 2025 and subsequent correspondence related thereto (collectively, the "**Sling Arbitration Claimants**"), such Sling Arbitration Claims shall be deemed Class 1H DBS General Unsecured Claims and shall receive treatment as set forth in Article III.B.8 of the Plan. Any Proof

of Claim submitted by any individual Sling Arbitration Claimant in connection with the Sling Arbitration Claims shall be disregarded in accordance with Article III.B.8 and Article XI.1 of the Plan.

**BB. Provisions Regarding Liberty Mutual**

108. Notwithstanding any other provisions of the Plan, this Confirmation Order, any Plan Supplement or any other order of the Bankruptcy Court, on the Effective Date, all rights and obligations of Liberty Mutual Insurance Company (the "**Surety**") related to the (i) surety bonds of any kind issued by the Surety to the DBS Debtors and maintained in the ordinary course of business (the "**Surety Bonds**"), (ii) payment and/or indemnity agreements between the DBS Debtors and the Surety, setting forth the Surety's rights against the DBS Debtors, and the DBS Debtors' obligations to pay and indemnify the Surety from any loss, cost, or expense that the Surety may incur, in each case, on account of the issuance of any Surety Bonds on behalf of the DBS Debtors, (iii) the Surety's collateral agreements governing collateral in connection with the DBS Debtors' Surety Bonds, including but not limited to, as applicable, control agreements, trust agreements, deposit accounts, letters of credit and proceeds therefrom and/or (iv) ordinary course premium payments to the Surety for the DBS Debtors' Surety Bonds (collectively, the "**Bond Program**," and the DBS Debtors' obligations arising therefrom, the "**Bond Obligations**") shall be reaffirmed and ratified by the applicable Reorganized DBS Debtors and continue in full force and effect according to their terms and applicable non-bankruptcy law and are not discharged or released by the Plan in any way. For the avoidance of any doubt, nothing in the Plan, this Confirmation Order, any Plan Supplement, or other agreements between the DBS Debtors and third-parties, including any exculpation, release, injunction, exclusions and discharge provisions of the Plan, including any of those provisions contained in Article VIII of the Plan, shall bar, alter, limit, impar, release or modify or enjoin any of the Bond Obligations. The Surety is deemed to not have opted in to

any release, discharge, exculpation and injunction provisions of the Plan that apply or could be interpreted to apply to the Surety, its rights or claims in any response, and is otherwise not a Releasing Party or Released Party under the Plan. Further, nothing in this Confirmation Order, the Plan, the Plan Supplement or any other documents including in or related thereto, shall authorize or permit the substitution of any principal under any of the Surety Bonds without the Surety's consent.

109. The Bond Program and all Bond Obligations related thereto shall be treated by the Reorganized DBS Debtors and the Surety in the ordinary course of business as if these Chapter 11 Cases had not been commenced; and in furtherance thereof, in the event that any of the Bond Obligations cease to be in effect upon the Effective Date for reasons other than their expiration or termination in accordance with the terms of the applicable agreements, the Reorganized DBS Debtors and the Surety shall execute the documents that are necessary to reinstitute such Surety Bond Obligations, including the indemnity obligations thereunder, as such Surety Bond Obligations were in effect immediately prior to the Effective Date; provided, however, that nothing in the foregoing shall be deemed to alter, limit, modify or expand any such Bond Obligations. The Surety shall have no obligation to continue in place any existing surety bonds and/or renew any existing Surety Bonds or issue any new bonds on behalf of the DBS Debtors and/or Reorganized DBS Debtors. For the avoidance of any doubt, with a reservation of rights to all parties, and only to the extent applicable, all agreements related to the Bond Obligations are assumed by the DBS Debtors and the Reorganized DBS Debtors pursuant to section 365 of the Bankruptcy Code upon the Effective Date. Finally, as part of the ordinary course of business of the Bond Program, the DBS Debtors will pay any unpaid premiums and loss adjustment expenses that are due and owing to the Surety on the Effective Date prior or contemporaneously thereto. Nothing in the Plan or

these foregoing paragraphs shall affect in any way the Surety's rights against any non-debtor, or any non-debtor's rights against the Surety, including under the Bond Program or with regard to the Bond Obligations.

**CC. Provisions Relating to Chubb Insurance Policies**

110. Notwithstanding anything to the contrary in the Plan, any exhibit to the Plan, this Confirmation Order, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Materials, the First Day Pleadings or any order entered related thereto, the Plan Supplement, the Amended Notes Indentures, any bar date notice or claim objection, any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, or confers Bankruptcy Court jurisdiction), or any other Definitive Document, including any amendments, restatements, supplements, or other modifications to such orders, agreements and documents, the following provisions shall apply solely with respect to the Chubb Policies[5] and only with respect to the DBS Debtors and the Reorganized DBS Debtors.[6]

a) except as set forth in Article IV.D of the Plan, on the Effective Date, all of the Chubb Policies that were issued to the DBS Debtors or their predecessors as first named Insured shall vest, unaltered and in their entirety, in the DBS Debtors and continue in full force and effect after the Effective Date in accordance with their respective terms and conditions;

b) on and after the Effective Date, the Reorganized DBS Debtors shall become and remain liable in full for all of their and the DBS Debtors' obligations under the Chubb Policies regardless of whether such obligations arise before, on or after the

---

5 "**Chubb Policies**" means any insurance policy issued by a Chubb Insurer that has been issued to or provides coverage at any time to any of the DBS Debtors, and all agreements, documents, or instruments relating thereto.

6 For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall amend, modify, impair, or otherwise affect the terms of any Chubb Policy, or the rights, obligations, coverage, defenses, or interests thereunder, with respect to any other insureds or covered parties under a Chubb Policy.

Effective Date, and, for the avoidance of doubt, Chubb Insurers[7] shall not need to nor be required to file or serve an objection to any proposed Cure Costs or a request, application, Claim, Proof of Claim, or motion for payment or allowance of any Administrative Claim, and Chubb Insurers shall not be subject to any Claims bar date or similar deadline governing Cure Costs, Proofs of Claim, or Administrative Claims;

c) except as provided under Article IV.D of the Plan and/or this paragraph of the Confirmation Order, nothing shall permit or otherwise effect a sale, assignment, or any other transfer of the Chubb Policies and/or any rights, proceeds, benefits, claims, rights to payments, or recoveries under or relating thereto by the DBS Debtors or the Reorganized DBS Debtors without the prior express written consent of the applicable Chubb Insurer if required under the terms of the Chubb Policies and/or applicable non-bankruptcy law;

d) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit with respect to claims against the DBS Debtors or the Reorganized DBS Debtors: (I) claimants with valid workers' compensation claims or direct action claims against a Chubb Insurer under applicable non-bankruptcy law to proceed with their claims; (II) the Chubb Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Chubb Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; (III) the Chubb Insurers to draw against any or all of the collateral or security provided by or on behalf of the DBS Debtors (or the Reorganized DBS Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the DBS Debtors (and the Reorganized DBS Debtors, as applicable) and/or apply such proceeds to the obligations of the DBS Debtors (and the Reorganized DBS Debtors, as applicable) under the applicable Chubb Policies, in such order as the applicable Chubb Insurer may determine in accordance with the terms of the Chubb Policies and/or applicable non-bankruptcy law; and (IV) the Chubb Insurers to cancel any Chubb Policy that affords coverage solely to the DBS Debtors and/or the Reorganized DBS Debtors and take other actions relating to the Chubb Policies (including effectuating a setoff or recoupment) solely with respect to the DBS Debtors and/or the Reorganized DBS Debtors, to the extent permitted by the terms of the Chubb Policies and/or applicable non-bankruptcy law.

---

[7] "**Chubb Insurer**" means ACE American Insurance Company, ACE Fire Underwriters Insurance Company, Indemnity Insurance Company of North America, Westchester Fire Insurance Company, Federal Insurance Company, Executive Risk Indemnity Inc., Vigilant Insurance Company, and/or any of their respective U.S.-based predecessors and affiliates that issued or entered into a Chubb Policy.

111. For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall be deemed to revest in any Reorganized DBS Debtor any Chubb Policy, proceeds, rights, or interests that are not property of the applicable DBS Estate.

112. No distributions under the Plan shall be made on account of a Claim against a DBS Debtor that is payable pursuant to one of the Chubb Policies until the Holder of such Claim has made reasonable efforts to exhaust all remedies with respect to such Chubb Policy. To the extent that one or more of the Chubb Insurers pays or satisfies in full or in part such Claim (if and to the extent finally adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such payment, the applicable portion of such Claim shall be expunged without a claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

113. Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary or other covered party under any of the Chubb Policies, nor shall anything contained herein (a) constitute or be deemed a waiver by any Chubb Insurer of any rights or defenses, including coverage defenses, held by such Chubb Insurer under any Chubb Policy, applicable law, equity, or otherwise, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any Chubb Insurer.

**DD. Provisions Relating to Programmer Parties**

114. Notwithstanding any provision of the Plan, the Plan Supplement, any document or transaction contemplated by or necessary to effectuate the Plan (including, for the avoidance of doubt, the Disclosure Statement, or any order conditionally approving the same), or any other provision of this Confirmation Order, the provisions of this paragraph 114 shall govern the treatment of all Claims (including Administrative Claims) held by the following creditors of the

DBS Debtors (collectively, the "**Programmer Parties**" or individually, a "**Programmer Party**"), and the assumption, rejection or other treatment of all agreements (including Executory Contracts) to which the following Programmer Parties are or were a party (the "**Programmer Agreements**"):[8] A+E Television Networks, LLC ("**A+E**"); AMC Global Media Inc. ("**AMC**"); Hearst Television Inc. ("**Hearst**"); Montclair Communications, Inc. ("**Montclair**"); Paramount Skydance Corporation ("**Paramount**"); Sinclair Broadcast Group, Inc. ("**Sinclair**"); Starz Entertainment, LLC ("**Starz**"); TEGNA, Inc. ("**TEGNA**"); TelevisaUnivision, Inc. ("**Univision**"); The Walt Disney Company ("**Disney**"); UP Entertainment, LLC ("**UP**") and Fox Cable Network Services, LLC ("**FCNS**"), Fox Television Holdings, LLC ("**FTH**") and Fox Television Stations, LLC ("**FTS**") (FCNS, FTH and FTS, collectively and individually, as applicable, "**Fox**"). To the extent any provisions of the Plan, the Plan Supplement, any document or transaction contemplated by or necessary to effectuate the Plan (including, for the avoidance of doubt, the Disclosure Statement, or any order conditionally approving same), or any other provision of this Confirmation Order conflict with this paragraph 114, this paragraph shall govern.

a) *Payment of Effective Date Amounts to the Programmer Parties*

i. On or before the Effective Date, the DBS Debtors or the Reorganized DBS Debtors, as applicable, shall pay to each Programmer Party, in Cash, the following amounts, which constitute amounts payable by the DBS Debtors for content and services provided by such Programmer Party prior to the Effective Date (the "**Effective Date Amounts**"):

a. A+E: $15,377,429
b. AMC: $ 8,321,668
c. Hearst: $7,190,518
d. Montclair: $56,042
e. Paramount: $52,106,341
f. Sinclair: $32,223,509
g. Starz: $8,150,443

---

8 The Programmer Parties listed here include all of their subsidiaries, affiliates, and related Entities that are or were parties to a Programmer Agreement with the DBS Debtors.

h. TEGNA: $17,473,277
i. Univision: $17,205,645
j. Disney: $267,448,002
k. UP: $358,036
l. Fox: $76,924,124

ii. With respect to Programmer Agreements that constitute Executory Contracts, the Effective Date Amounts constitute Cure Costs required to be paid to such Programmer Party under section 365(b)(1) of the Bankruptcy Code as a condition to the assumption of such Executory Contract as of the Effective Date, subject to paragraph 114(a)(iv) below.

iii. In the event the DBS Debtors or Reorganized DBS Debtors fail to timely pay the Effective Date Amounts as set forth herein, the Programmer Parties shall have the right to seek enforcement of their rights under paragraph 114(a)(i)-(ii) before the Bankruptcy Court, and the Bankruptcy Court shall have jurisdiction to hear and determine such request.

iv. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, any document or transaction contemplated by or necessary to effectuate the Plan (including, for the avoidance of doubt, the Disclosure Statement, or any order conditionally approving the same), or any other provision of this Confirmation Order, neither payment of the Effective Date Amounts nor the DBS Debtors' assumption of any Programmer Agreement shall be deemed to modify, alter, waive or otherwise affect the rights, Claims or defenses of any Programmer Party under its respective Programmer Agreement(s) or applicable non-bankruptcy law, including any Programmer Party's right to seek payment of additional amounts asserted to be due and owing from the DBS Debtors or the Reorganized DBS Debtors for the period prior to the Effective Date pursuant to paragraph 114(c), in accordance with the terms of the applicable Programmer Agreement, or any right to conduct an audit of the amounts due and owing by the DBS Debtors or Reorganized DBS Debtors under a Programmer Party's Programmer Agreement. For the avoidance of doubt, notwithstanding the approval of the assumption of a Programmer Agreement pursuant to the Plan and this Confirmation Order, (a) nothing in this Confirmation Order shall constitute a determination or finding that no further defaults under any such Programmer Agreement exist, including those that would constitute monetary defaults payable as Cure Costs under section 365(b)(1) of the Bankruptcy Code, the Plan and this Confirmation Order, and (b) the failure of any Programmer Party to assert any such default or demand cure of such default prior to the assumption of a Programmer Agreement shall not constitute a waiver of any such default.

v. Any fees and other amounts payable by the DBS Debtors for content and services provided by a Programmer Party prior to the Effective Date that have not become due under any Programmer Agreement(s) prior to the Effective Date (the "**Post-Effective Date Payables**") shall be paid by the Reorganized DBS Debtors, in Cash, (a) when such Post-Effective Date Payable becomes due subject to the terms and conditions of the applicable Programmer Agreement(s), including dispute resolution provisions, without any further action by the applicable Programmer Party; or (b) at such time and upon such terms as may be agreed upon in writing by the applicable Programmer Party and the DBS Debtors or the Reorganized DBS Debtors, as applicable. The DBS Debtors' failure to pay any Post-Effective Date Payable on or prior to the Effective Date shall not delay, condition, or otherwise affect the assumption of the Programmer Agreement under which such Post-Effective Date Payable arose, to the extent such Programmer Agreement constitutes an Executory Contract, or the effectiveness of such assumption as of the Effective Date, and such Programmer Party consents to such assumption notwithstanding the DBS Debtors' failure to pay such Post-Effective Date Payable on or before the Effective Date; *provided*, *however*, that nothing in the Confirmation Order shall modify, alter, waive, limit or affect the rights, Claims and remedies of any Programmer Party under any Programmer Agreement or applicable non-bankruptcy law in the event the payment of a Post-Effective Date Payable contemplated by this paragraph 114(A)(v) is not made in accordance with the applicable Programmer Agreement; *provided*, *further*, that a Programmer Party's consent to assumption of any Programmer Agreement that is an Executory Contract in accordance with paragraph 114 shall not constitute an agreement to modify, alter, waive, limit, expand or otherwise affect the contractual rights and obligations of the parties to such Programmer Agreement, including the contractual term of such Programmer Agreement.

b) *No Rejection of Programmer Agreements*

i. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, the Disclosure Statement (including any order conditionally approving same), or this Confirmation Order, no Programmer Agreement shall be rejected under the Plan, and the DBS Debtors shall not seek to reject any such Programmer Agreement or alter, amend, modify or supplement the Schedule of Rejected Contracts and Leases after entry of this Confirmation Order to add any such Programmer Agreement to such schedule.

c) *Jurisdiction*

i. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, any document or transaction contemplated by or necessary

to effectuate the Plan (including, for the avoidance of doubt, the Disclosure Statement, or any order conditionally approving the same), or any other provision of this Confirmation Order, on or after the Effective Date, any dispute related to any previous, current, or future Programmer Agreement or any Claim arising under, related to or in connection with any Programmer Agreement, including any dispute regarding the parties' respective obligations under such Programmer Agreement or the amount payable by any party to such Programmer Agreement (including as to Post-Effective Date Payables), shall be preserved, and shall be determined and adjudicated under the applicable law of such Programmer Agreement and exclusively in the forum provided by the forum selection, venue, and choice of law provisions of such Programmer Agreement (the "**Contract Forum**"), and in no event in Bankruptcy Court (except and solely in the event of the DBS Debtors' or Reorganized DBS Debtors' nonpayment of the Effective Date Amounts, which remains subject to paragraph 114(a)(iii) hereof) under the Bankruptcy Code, without regard to the commencement or pendency of the DBS Debtors' chapter 11 cases. For the avoidance of doubt, the Contract Forum shall have exclusive jurisdiction after the Effective Date to adjudicate all matters pertaining to a Programmer Party's Claims against the DBS Debtors or Reorganized DBS Debtors and any disputes arising under or related to the Programmer Agreements, including matters set forth in Article XI subsections 1, 3, 6, 10-13, 15, 16 and 23 of the Plan, to the extent related to a Programmer Party's Claims against the DBS Debtors or Reorganized DBS Debtors or the performance, breach, enforcement or respective obligations of the parties under a Programmer Agreement, whether arising before or after the Effective Date. For the avoidance of doubt, the Programmer Parties agree that no Programmer Party shall assert in any Contract Forum (or any forum other than the bankruptcy court) that the DBS Debtors or the Reorganized DBS Debtors have not assumed any Programmer Agreement that is an Executory Contract under section 365 of the Bankruptcy Code. For purposes of clarity, notwithstanding anything else to the contrary in the Plan or any other provision of this Confirmation Order, on or after the Effective Date, the automatic stay arising under section 362 of the Bankruptcy Code shall be deemed terminated and shall not apply as to any dispute related to any previous, current, or future Programmer Agreement or any Claim arising under, related to or in connection with any Programmer Agreement, including any dispute regarding the parties' respective obligations under such Programmer Agreement or the amount payable by any party to such Programmer Agreement (including as to Post-Effective Date Payables).

ii. Any ruling, order or judgment of the Contract Forum with respect to the matters set forth in the preceding paragraph shall be enforceable as a Final Order.[9]

d) *No Release by Programmer Parties*

i. For the avoidance of doubt, the Programmer Parties and their Related Parties do not constitute Releasing Parties under the Plan.

**EE. Provisions Relating to Survival and Wrongful Death Claims**

115. Notwithstanding anything to the contrary in the Plan, the Disclosure Statement, any Plan Supplement, or this Confirmation Order:

a) All post-petition claims, causes of action, rights, remedies, and defenses arising out of or relating to the survival and wrongful death claims (the "**Survival and Wrongful Death Claims**") of (i) the Estate of Russell Wilson, by and through its successor in interest and heir at law Nicole Gomez, and Nicole Gomez, individually, as an heir at law of Russell Wilson (collectively, the "**Wilson Claimants**"), and (ii) the Estate of Josslyn Lifvendahl, by and through its successors in interest and heirs at law Dan Lifvendahl and Shannon Lifvendahl, Dan Lifvendahl, individually, as an heir at law of Josslyn Lifvendahl, and Shannon Lifvendahl, individually, as an heir at law of Josslyn Lifvendahl (collectively, the "**Lifvendahl Claimants**" and, together with the Wilson Claimants, the "**Survival and Wrongful Death Claimants**") shall "ride through" these Chapter 11 Cases completely unaffected.

b) With respect to the Survival and Wrongful Death Claims, the legal and equitable rights, claims, and defenses of the Survival and Wrongful Death Claimants, and the rights, claims, and defenses of the Reorganized DBS Debtors, shall remain completely unaltered and unimpaired by the Plan, any Plan Supplement, or this Confirmation Order. The Survival and Wrongful Death Claims shall not be discharged, compromised, released, waived, settled, or capped by Confirmation or consummation of the Plan. For the avoidance of doubt: (i) nothing in this Confirmation Order, the Plan, or any Plan Supplement shall expand, diminish, waive, or otherwise affect any defense (including any defense on the merits or on the basis of any statute of limitations or repose), counterclaim, right of setoff or recoupment, or objection available to any Reorganized DBS Debtor with respect to the Survival and Wrongful Death Claims, all of which are expressly preserved; (ii)

[9] As used in this paragraph 114 with respect to the Programmer Parties, and notwithstanding any other definition as provided under the Plan, "Final Order" shall mean an order of any court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, vacated or amended, and that is not stayed.

nothing herein shall affect, impair, or alter any rights, obligations, or coverage under any contract of insurance, any insurance policy, or any related agreements that may provide coverage with respect to the Survival and Wrongful Death Claims, and all such insurance rights and obligations, if any, are preserved for all parties in interest; (iii) nothing herein shall be construed as an admission of liability by, or a waiver of any defense of, any Reorganized DBS Debtor, nor as the assumption by any Reorganized DBS Debtor of any obligation, liability, or claim that it would not otherwise have absent this Confirmation Order; and (iv) nothing herein shall limit or expand any Reorganized DBS Debtor's rights to seek transfer of venue, abstention, dismissal, or any other procedural relief available under applicable non-bankruptcy law in connection with the litigation of the Survival and Wrongful Death Claims in the appropriate non-bankruptcy forum.

c) Consistent with the *Stipulation and Agreed Order Modifying the Automatic Stay* [Dkt. No. 1369] (the "**Stipulation and Order**"), from and after entry of this Confirmation Order and on and after the Effective Date, the Survival and Wrongful Death Claimants shall be permitted to pursue, liquidate, litigate, and adjudicate all such Survival and Wrongful Death Claims (including claims to recover administrative liabilities, if any) to final judgment or settlement in the ordinary course in the appropriate non-bankruptcy forum, subject to applicable statutes of limitation or repose and in a manner otherwise consistent with applicable law. Nothing in this paragraph 115(c) shall be construed to modify, supersede, or expand the terms of the Stipulation and Order, which shall continue to govern the terms and scope of relief from the automatic stay as between the DBS Debtors and the Survival and Wrongful Death Claimants between the Confirmation Date and the Effective Date.

d) In accordance with Article II.A of the Plan, any applicable Reorganized DBS Debtor shall satisfy any final judgment or award against it in connection with the Survival and Wrongful Death Claims (to the extent such judgment or award is not modified or stayed) without any requirement that the Survival and Wrongful Death Claimants file a proof of claim or request allowance of an Administrative Claim in these Chapter 11 Cases.

e) Nothing in this paragraph 115 shall be construed to or deemed to be a determination or adjudication of the merits, validity, or amount of the Survival and Wrongful Death Claims or a waiver, election, or admission by any DBS Debtor or Reorganized DBS Debtor as to coverage, liability, or the validity or amount of any such judgment or award, all of which rights are expressly reserved. Nothing in this Confirmation Order shall be construed to modify or supersede the Section 503(b)(1) administrative priority status of the Survival and Wrongful Death Claims, as prescribed in Paragraph 5 of the Stipulation and Agreed Order Modifying the Automatic Stay [Dkt. No. 1369].

**FF. Provisions Relating to Barrios-Contreras**

116. Notwithstanding anything to the contrary in the Plan, Disclosure Statement, Plan Supplement, Solicitation Materials, or this Confirmation Order:

a) Liliana Barrios-Contreras ("**Barrios-Contreras**") shall not be deemed to have affirmatively opted into or consented to the Third-Party Release contained in Article VIII.F and shall not be deemed a Releasing Party thereunder based upon silence, non-voting status, failure to submit a Release Opt In Form, participation in these Chapter 11 Cases, or other conduct not constituting affirmative consent;

b) to the extent any asserted claim of Barrios-Contreras is characterized or treated by the DBS Debtors as a Class 1H DBS General Unsecured Claim, nothing herein shall constitute agreement by Barrios-Contreras to treatment less favorable than that provided under Article III.B.8, including Unimpaired and Reinstated treatment and preservation of the applicable legal, equitable, and contractual rights;

c) entry of this Confirmation Order of the Plan shall not itself impose upon Barrios-Contreras any requirement that is not otherwise imposed by the Plan, without prejudice to merits defenses otherwise legally available in the appropriate forum. For the avoidance of doubt, nothing herein shall constitute an admission or determination that any Proof of Claim, bar-date, claim-allowance, or claim-processing requirement applies to any particular asserted claim of Barrios-Contreras;

d) nothing herein shall adjudicate the timing, adequacy, sufficiency, constitutional effectiveness, or legal effect of notice of the Chapter 11 Cases to Barrios-Contreras; constitute an admission or determination that any asserted claim, act, omission, injury, obligation, continuing use, revenue, economic benefit, remedy, or asserted right necessarily arose prepetition or is properly classified as a DBS General Unsecured Claim or a Claim in any other Class; or waive, prejudice, restrict, or otherwise impair Barrios-Contreras's ability to seek any enlargement, tolling, extension, relief from a deadline, or other remedy available based upon notice. Nothing herein shall preclude Barrios-Contreras from asserting any other classification or treatment otherwise available under the Plan or applicable law;

e) nothing herein shall determine the legal status or effect of Barrios-Contreras's August 26, 2026 filing or commencement of the existing AAA-administered proceeding against Sling (the "**Barrios-Contreras Arbitration**"); require its withdrawal, dismissal, abandonment, severance, or commencement anew; adjudicate Sling's prior assertions concerning 11 U.S.C. § 362 or any alleged voidness, contempt, sanctions, penalties, or similar consequences; or waive, prejudice, restrict, or otherwise impair Barrios-Contreras's ability to seek relief under 11 U.S.C. § 362(d) or other applicable law. For the avoidance of doubt, nothing herein shall waive, prejudice, restrict, or otherwise impair Barrios-Contreras's ability to seek any relief available under 11 U.S.C. § 362(d), including

termination, annulment, modification, or conditioning of the automatic stay, and including relief having retroactive effect if and to the extent available under applicable law, with respect to the filing, commencement, administration, or continuation of the Barrios-Contreras Arbitration against Sling. Nothing herein constitutes an admission that the August 26, 2026 filing or commencement violated the automatic stay, that retroactive relief is required, or that any particular form of relief under 11 U.S.C. § 362(d) is necessary or appropriate. Barrios-Contreras may proceed with the Barrios-Contreras Arbitration on and after the Effective Date, *provided* that the Effective Date shall not constitute the earliest or exclusive date upon which prosecution of the Barrios-Contreras Arbitration against Sling may become permissible, and nothing herein shall restrict Barrios-Contreras from seeking authority to proceed before the Effective Date under 11 U.S.C. § 362(d) or other applicable law. For avoidance of doubt, nothing herein shall constitute an adjudication of the substantive merits of the Barrios-Contreras Arbitration or alter the parties' existing right and defenses therein;

f) nothing in the Plan, Confirmation Order, or individualized provisions applicable to Barrios-Contreras shall expand, as to Barrios-Contreras, the scope or application of any discharge, injunction, release, exculpation, claim-processing requirement, or other limitation beyond that otherwise provided by the Plan and applicable law, or constitute Barrios-Contreras's consent to the application of any such provision where its applicability is disputed;

g) without adjudicating the applicability or legal effect of 11 U.S.C. § 362, Sling shall not seek contempt, sanctions, penalties, or similar relief against Barrios-Contreras for the August 26, 2026 filing or commencement of the Barrios-Contreras Arbitration or administrative, corrective, service-related, or ministerial acts directly related to such August 26, 2026 filing or commencement; and

h) no subsequent amendment, modification, supplement, or clarification of the Plan or Confirmation Order shall materially alter these individualized protections without Barrios-Contreras's written consent or further order of the Court after notice and an opportunity to be heard. If the Effective Date shall not have occurred on or before October 1, 2026, then the DBS Debtors and Barrios-Contreras shall, on or before October 8, 2026, jointly submit a stipulated order, in a form mutually agreed upon, lifting the automatic stay to permit Barrios-Contreras to proceed against Sling in the Barrios-Contreras Arbitration. Any such stipulated order shall be consistent with the terms of this paragraph, and the parties shall request that the fourteen-day stay provided by Bankruptcy Rule 4001(a)(4) shall be waived and that the stipulated order be effective immediately upon entry by the Bankruptcy Court.

## GG. Provisions Regarding Gray Entities

117. The provisions of this paragraph 117 shall govern the assumption, rejection or other treatment of all agreements (including Executory Contracts) to which Gray Media, Inc. or any of

its subsidiaries, affiliates or related Entities (collectively, the "**Gray Entities**") is or was a party (collectively, the "**Gray Agreements**") and the treatment of any and all Claims (including Administrative Claims) held by the Gray Entities. To the extent any provisions of the Plan, the Plan Supplement, any document or transaction contemplated by or necessary to effectuate the Plan (including, for the avoidance of doubt, the Disclosure Statement, or any order conditionally approving same), or any other provision of this Confirmation Order conflict with this paragraph 117, this paragraph shall govern:

a) On or before the Effective Date, the DBS Debtors or the Reorganized DBS Debtors, as applicable, shall: (a) cure, or provide adequate assurance to Gray that they will promptly cure, all monetary defaults under all Gray Agreements to be assumed under the Plan; and (b) provide adequate assurance of future performance under such Gray Agreements. Notwithstanding any provision of the Plan, the Plan Supplement, any document or transaction contemplated by or necessary to effectuate the Plan (including, for the avoidance of doubt, the Disclosure Statement, or any order conditionally approving the same), or any other provision of this Confirmation Order, Gray shall have the right to seek enforcement of its rights under this subparagraph (a) before the Bankruptcy Court, and the Bankruptcy Court shall have jurisdiction to hear and determine such request.

b) Except as provided in the foregoing subparagraph (a), from and after the Effective Date, any dispute related to any Gray Agreement or any Claim arising under, related to or in connection with any Gray Agreement, including any dispute regarding the parties' respective obligations thereunder or the amount payable by any party thereto, shall be preserved, and shall be determined and adjudicated under the choice of law provision of the applicable Gray Agreement and exclusively in the forum provided by the forum selection, venue, and choice of law provisions of such agreement, and in no event in the Bankruptcy Court.

c) For the avoidance of doubt, none of the Gray Entities shall constitute Releasing Parties under the Plan.

**HH. Provisions Regarding the HSSC Entities' Claim(s)**

118. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall satisfy, extinguish, discharge, release, enjoin or otherwise impair any claims or causes of action held by Hughes Satellite Systems Corporation

or its affiliates and subsidiaries (collectively, the "**HSSC Entities**") against the Debtors or their non-Debtor affiliates. The HSSC Entities shall retain all rights to prosecute, adjudicate, liquidate, and otherwise resolve their claim(s) in any court of competent jurisdiction, and to seek entry and enforcement of any resulting judgment or other relief, whether monetary or injunctive, against the Reorganized DBS Debtors.

**II. Provisions Regarding PES Partners, LLC**

119. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, including paragraph 88 hereof, from and after the date of this Confirmation Order, neither the DBS Debtors nor the Reorganized DBS Debtors shall assert any Cause of Action, including any chapter 5 cause of action, against PES Partners, LLC arising from or relating to any act or omission occurring on or before the Effective Date, other than any counterclaims or defenses they may have in connection with the reconciliation and allowance of the claim of PES Partners, LLC for rejection damages resulting from the DBS Debtors' rejection of the lease agreement as set forth in the Plan Supplement.

**JJ. Compromise of Controversies**

120. In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan, and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

**KK. Indemnification Provisions**

121. All indemnification provisions in place as of the Effective Date (whether in the bylaws, certificates of incorporation, limited liability company agreements, limited partnership agreements, other organizational documents, board resolutions, indemnification agreements,

employment contracts, or otherwise) for the current and former members of any governing body, general partners, directors, officers, managers, members, employees, attorneys, accountants, investment bankers, advisors, and other professionals of, or acting on behalf of, the DBS Debtors, as applicable, shall be assumed by the Reorganized DBS Debtors as of the Effective Date.

**LL. Insurance Policies**

122. Consistent with Article V.F, nothing in the Plan, any exhibit to the Plan, this Confirmation Order, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Materials, the First Day Pleadings or any order entered related thereto, the Plan Supplement, the Amended Notes Indentures, or any other Definitive Document, including any amendments, restatements, supplements, or other modifications to such orders, agreements and documents, shall diminish, impair, or otherwise modify any rights of the Debtors, the Reorganized DBS Debtors, or any other insured, additional insured, beneficiary, or other covered party under any insurance policy that provides coverage to or for the benefit of any Debtor or such other insured, including any D&O Policies. To the extent any insurance policy issued to, or providing coverage to, any DBS Debtor is an Executory Contract and has not previously been rejected pursuant to a Final Order of the Bankruptcy Court, such insurance policy shall be deemed assumed by the applicable Reorganized DBS Debtor effective as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code. For the avoidance of doubt, nothing in the Plan shall be deemed to revest in any Reorganized DBS Debtor any insurance policy, proceeds, rights, or interests that are not property of the applicable DBS Estate.

**MM. Directors and Officers' Liability Insurance**

123. Notwithstanding anything to the contrary in the Plan, including Article V.A thereof, no D&O Policy shall be deemed rejected, terminated, cancelled, or adversely affected by operation of any provision of the Plan or this Confirmation Order. To the extent any D&O Policy is deemed

an Executory Contract, such D&O Policy shall be deemed assumed by the applicable Reorganized DBS Debtor as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, and this Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumption.

124. After the Effective Date, none of the Reorganized DBS Debtors shall terminate, cancel, impair, or otherwise reduce the coverage under any D&O Policies (including any tail policy) in effect as of the Effective Date or purchased in connection with the Chapter 11 Cases, and all current and former members, managers, directors, officers, employees, and other individuals insured thereunder shall remain entitled to the full benefits of such D&O Policies for the full term of such policies, in each case, in accordance with and subject to the terms, conditions, limitations, and exclusions of such D&O Policies. Nothing in the Plan, any exhibit to the Plan, this Confirmation Order, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Materials, the First Day Pleadings, or any order entered related thereto, the Plan Supplement, the Amended Notes Indentures, or any other Definitive Document, including any amendments, restatements, supplements, or other modifications to such orders, agreements, and documents, shall alter, amend, modify, or otherwise impair any rights, obligations, or coverage under any D&O Policy.

**NN. Authorization to Consummate**

125. The DBS Debtors are authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.

**OO. Professional Fee Claims**

126. Notwithstanding anything in the Plan to the contrary, all requests for payment of Professional Fee Claims for services rendered to the DBS Debtors and reimbursement of expenses

incurred in connection therewith prior to the Effective Date must be Filed in accordance with Article II.B.1 of the Plan on or before the date that is forty-five (45) days after the later of (a) the Effective Date and (b) entry of an order authorizing the retention of such Professional in accordance with Article II.B.1 of the Plan. The Bankruptcy Court shall determine the Allowed amounts of Professional Fee Claims against the DBS Debtors after notice and a hearing (to the extent required) in accordance with the procedures established by the Bankruptcy Court. The Reorganized DBS Debtors shall pay such Professional Fee Claims, to the extent not previously paid, in Cash in the amount Allowed by the Bankruptcy Court as soon as reasonably practicable after such Professional Fee Claim is Allowed.

127. On the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the DBS Debtors or the Reorganized DBS Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**PP. Ad Hoc Group Professional Fees**

128. To the extent payable under Section 11 of the Restructuring Support Agreement, the DBS Debtors, EchoStar, or DNC shall pay, or cause to be paid, the Ad Hoc Group Professional Fees in accordance with, and subject to, Section 11 of the Restructuring Support Agreement. For the avoidance of doubt, (a) the Ad Hoc Group Professional Fees shall not constitute Professional Fee Claims and shall not be subject to the procedures set forth in Article II.A or Article II.B of the Plan, including the requirement to file fee applications; and (b) nothing in the Plan shall require Milbank LLP or any other advisor entitled to payment of Ad Hoc Group Professional Fees under the Restructuring Support Agreement to file a Proof of Claim or an application under sections 330 or 503 of the Bankruptcy Code as a condition to payment of the Ad Hoc Group Professional Fees.

129. To the extent not otherwise paid, the DBS Debtors, EchoStar, DNC, or the Reorganized DBS Debtors, as applicable, shall promptly pay in Cash in full outstanding and invoiced Ad Hoc Group Professional Fees as follows: (a) on the Effective Date, Ad Hoc Group Professional Fees incurred, or estimated to be incurred, during the period prior to the Effective Date to the extent invoiced to the DBS Debtors at least two (2) Business Days in advance of the Effective Date, and (b) after the Effective Date, any unpaid Ad Hoc Group Professional Fees within five (5) Business Days of receiving an invoice; *provided* that such Ad Hoc Group Professional Fees shall be paid by the DBS Debtors, EchoStar, DNC, or the Reorganized DBS Debtors, as applicable, in accordance with the terms of any applicable engagement letters or other contractual arrangements without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases, and without any requirement for further notice or Bankruptcy Court review or approval; *provided further* that, to the extent timely invoiced, Ad Hoc Group Professional Fees that are not paid by the DBS Debtors or the Reorganized DBS Debtors, as applicable, within the timeframes set forth herein, such Ad Hoc Group Professional Fees shall not be deemed waived and shall be included in a subsequent invoice.

**QQ. Indenture and DWLLC Claims Trust Trustee Fees and Expenses**

130. On the Effective Date, the DBS Debtors or the Reorganized DBS Debtors, as applicable, shall pay in full in Cash all reasonable and documented fees, expenses, costs, disbursements, indemnities, and other amounts due and owing to the Indenture Trustees under the applicable Indentures, including the reasonable and documented fees and expenses of counsel and other professionals retained by the Indenture Trustees, in each case to the extent not previously paid. To the extent any such fees, expenses, costs, disbursements, indemnities, or other amounts are incurred after the Effective Date in connection with distributions, cancellation mechanics, lien releases, implementation of the Plan, enforcement of the Indenture Trustees' rights, or any other

duties expressly required under the Plan, this Confirmation Order, or the applicable Indentures, such amounts shall be paid promptly in Cash by the Reorganized DBS Debtors or such other applicable funding source provided under the Plan. Nothing in the Plan or the Confirmation Order shall impair, waive, release, discharge, or otherwise affect the Indenture Trustees' rights to payment, reimbursement, indemnification, priority of payment, charging liens, or any other rights, protections, privileges, immunities, or remedies under the applicable Indentures, the Plan, the Confirmation Order, or applicable law.

131. All reasonable and documented fees, expenses, costs, disbursements, indemnities, and other amounts incurred by the trustee of the DWLLC Claims Trust on or before the Effective Date of the Plan, including the reasonable and documented fees and expenses of its professionals, in each case to the extent not previously paid, shall be paid in full in Cash by the DBS Debtors or the Reorganized DBS Debtors, as applicable, on the Effective Date, without the need for the trustee of the DWLLC Claims Trust to file a Proof of Claim, Administrative Claim request, fee application, or other request for allowance, and without Bankruptcy Court review or approval. For the avoidance of doubt, notwithstanding anything in the Plan or any agreement related to the DWLLC Claims Trust to the contrary, in no event shall any of the DISH Wireless Debtors or their estates, successors, or assigns pay or have any obligation to pay any Indenture and DWLLC Claims Trust Trustee Fees and Expenses.

**RR. Section 1146(a) Exemption**

132. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (including, for the avoidance of doubt, any transfers from a DBS Debtor to a Reorganized DBS Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, equity security, or other interest in the DBS Debtors or the Reorganized DBS Debtors, as applicable; (b) the Restructuring

Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; (e) the grant of collateral as security pursuant to the Plan; or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**SS. Documents, Mortgages, and Instruments**

133. This Confirmation Order is, and shall be, binding on and shall govern the acts of all Persons or Entities including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and state officials, and corresponding officials in all

applicable jurisdictions, both foreign and domestic, and all other Persons and Entities who may be required, by operation of applicable law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, local, and foreign government agency is hereby directed to accept any and all documents (other than the Plan) and instruments necessary, useful, advisable, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan, including the Restructuring Transactions, and this Confirmation Order and, to the extent such Persons or Entities are not identified by the DBS Debtors or Reorganized DBS Debtors, as applicable, after reasonable due inquiry, the DBS Debtors or Reorganized DBS Debtors, as applicable, shall be granted power of attorney to sign on behalf of such Person or Entity.

### TT. Continued Effect of Stays and Injunction

134. Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court that is in existence upon entry of this Confirmation Order shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

### UU. Nonseverability of Confirmation Order and Plan Provisions Upon Confirmation

135. Each term and provision of **this Confirmation Order and** the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the DBS Debtors; and (c) non-severable and mutually dependent.

### VV. Post-Confirmation Modifications

136. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Restructuring Support Agreement and the Plan, the DBS Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to the DBS Debtors, one or more times after Confirmation (but, for the avoidance of doubt, before the Effective Date), and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided, however*, that no such modification may be made unless the DBS Debtors first file notice of the proposed modification with the Bankruptcy Court and serve such notice on parties in interest, and such parties are afforded a reasonable opportunity to object to, and to be heard by the Bankruptcy Court on the proposed modification before it becomes effective. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.A of the Plan.

**WW. Waiver of Filings**

137. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the DBS Debtors to File any list, schedule, or statement with the Bankruptcy Court or the U.S. Trustee is permanently waived as to any such list, schedule, or statement not Filed as of the Confirmation Date.

**XX. Governmental Approvals Not Required**

138. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority, with respect to the dissemination, implementation, or Consummation of the Plan and the Disclosure Statement,

any certifications, documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement, including the documents contained in the Plan Supplement, the implementation and consummation of the Restructuring Transactions, and any other documents that are necessary or desirable to implement or consummate the Restructuring Transactions.

**YY. Government Units' Police and Regulatory Powers**

139. Notwithstanding any provision to the contrary in the Plan, Plan Supplement, this Confirmation Order, or any implementing Plan documents, nothing shall: (i) require the United States or any State to file any Proofs of Claim or request for administrative expense in the Chapter 11 Cases for any right, claim, liability, defense, or Cause of Action; (ii) affect or impair the exercise of the United States' or any State's police and regulatory powers against the DBS Debtors, the Reorganized DBS Debtors, any non-debtor, or any other Person; (iii) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (iv) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the DBS Debtors or the Reorganized DBS Debtors and such rights and defenses are expressly preserved; (v) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (vi) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law. For the avoidance of doubt, nothing in this Confirmation Order shall expand or otherwise enlarge the police or regulatory powers of the United States or any State with respect to the DBS Debtors.

**ZZ. Reporting**

140. After the Effective Date, the DBS Debtors or Reorganized DBS Debtors, as applicable, shall have no obligation to File with the Bankruptcy Court, serve on any parties, or otherwise provide any party with any other report that the DBS Debtors or Reorganized DBS Debtors, as applicable, were obligated to provide under the Bankruptcy Code or an order of the Bankruptcy Court, including obligations to provide any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases; *provided* that the DBS Debtors or Reorganized DBS Debtors, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements. Up to the Effective Date, the DBS Debtors will File such reports as are required under the Bankruptcy Local Rules.

**AAA. Notices of Confirmation and Effective Date**

141. The Reorganized DBS Debtors shall cause service of the notice of entry of this Confirmation Order and the occurrence of the Effective Date (the "**Notice of Effective Date**") to be provided in accordance with Bankruptcy Rules 2002 and 3020(c) on all Holders of Claims and Interests as soon as reasonably practicable after the Effective Date. Notwithstanding the above, no notice of Confirmation or consummation or service of any kind shall be required to be mailed or made on any Entity to whom the DBS Debtors or the Reorganized DBS Debtors mailed notice of the Combined Hearing but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the DBS Debtors or the Reorganized DBS Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. The Combined Hearing Notice, this

Confirmation Order, and the Notice of Effective Date are adequate under the particular circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

**BBB. Failure of Consummation**

142. If consummation does not occur for a DBS Debtor, the Plan and the findings in this Confirmation Order shall be null and void in all respects as to such DBS Debtor, and nothing contained in the Plan or the Disclosure Statement as to such DBS Debtor shall: (a) constitute a waiver or release of any claims (including Claims) by the DBS Debtors, any Holders of Claims or Interests, or any other Entity; (b) prejudice in any manner the rights of the DBS Debtors, any Holders of Claims or Interests, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking by the DBS Debtors, any Holders of Claims or Interests, or any other Entity.

**CCC. Substantial Consummation**

143. On the Effective Date, the Plan shall be deemed to be substantially consummated under section 1101(2) of the Bankruptcy Code.

**DDD. Waiver of Fourteen-Day Stay**

144. Notwithstanding Bankruptcy Rule 3020(e) or 6004, this Confirmation Order is effective immediately and not subject to any stay.

**EEE. References to and Omissions of Plan Provisions**

145. References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

**FFF. Headings**

146. Headings utilized herein are for convenience and reference only and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**GGG. Effect of Conflict**

147. This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

**HHH. Final Order**

148. This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

**III. Dissolution of Committees**

149. If the Effective Date of the Plan occurs before the effective date of the DISH Wireless Plan, the Committee shall not dissolve on the Effective Date of the Plan. Instead, the Committee shall continue in existence following the Effective Date of the Plan and shall continue to have standing and a right to be heard in the Chapter 11 Cases, including with respect to matters arising in or related to the DISH Wireless Debtors' Chapter 11 Cases; *provided* that, from and after the Effective Date of the Plan, the Committee's continuing standing and right to be heard, insofar as they relate to the DBS Debtors, the Reorganized DBS Debtors, or matters arising under the Plan, shall be limited to the following purposes: (a) any applications, and any relief related thereto, for Professional Fee Claims and requests for allowance of fees and expenses under section 503(b) of the Bankruptcy Code that are allocable to the DBS Debtors, (b) any appeals of, or related to, this Confirmation Order, (c) any other appeal relating to the Plan to which the Committee is a party, and (d) any matters related to the DISH Wireless Debtors until such time that the Committee

is dissolved in accordance with the DISH Wireless Plan. Except with respect to any continuing confidentiality obligations, the members of the Committee shall be released and discharged, as of the Effective Date of the Plan, from all rights and duties arising from or related to the Chapter 11 Cases solely to the extent such rights and duties relate to the DBS Debtors and are not among the limited purposes for which the Committee continues in existence as set forth in the foregoing sentence. For the avoidance of doubt, Article XII.D of the Plan does not release or discharge the Committee or its members from any rights or duties relating to the DISH Wireless Debtors' Chapter 11 Cases. The Reorganized DBS Debtors, as applicable, shall be responsible for paying any reasonable fees or expenses incurred by the members of or advisors to any statutory committee, including any reasonable fees or expenses incurred by Professionals for the Committee in connection with the purposes for which the Committee remains in existence following the Effective Date, after the Effective Date, in each case to the extent allocable to the Reorganized DBS Debtors or the DBS Debtors.

**JJJ. Retention of Jurisdiction**

150. Except as set forth in this Confirmation Order or the Plan, the Bankruptcy Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan and this Confirmation Order, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article XI of the Plan, pursuant to sections 105(a) and 1142 of the Bankruptcy Code. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, but subject in all respects to (a) Articles V.C and XI.16 of the Plan and (b) paragraph 114 of this Confirmation Order with respect to the Programmer Parties, this Bankruptcy Court retains jurisdiction to the maximum extent otherwise allowed by law under the applicable circumstances.

Signed: September 29, 2026

Christopher Lopez
United States Bankruptcy Judge

# EXHIBIT B

I E U I E S A ES BA RU C C UR
F R E S U ER IS RIC F E AS
US IVISI

| | | |
|---|---|---|
| In re:<br><br>DISH DBS CORPORATION,<br>DISH WIRELESS L.L.C., *et al.*,<br><br>Debtors.[1] | )<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 11<br><br>Case No. 26-90627 (CML)<br><br>(Jointly Administered) |

**ICE F I E R F R ER C FIRMI E BS EB RS RE AC A E C A ER A F RE R A I A I A II CCURRE CE F EFFEC IVE A E**

**EASE A E ICE** that, on September 29, 2026, the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") entered the *indin s o act, Concl sions o Law, and rder I pprovin the Disclos re Statement on a inal asis, II Con irmin the Second Modi ied oint Prepacka ed Chapter Plan o DISH D S Corporation and Certain o its S sidiaries, and III rantin elated elie* Dkt. No. 1649 (the "**BS Con ir ation rder**"), which, among other relief, approved the *Disclos re Statement or the Modi ied oint Prepacka ed Chapter Plan o DISH D S Corporation and Certain o its S sidiaries* Dkt. No. 1344 and confirmed the *Second Modi ied oint Prepacka ed Chapter Plan o DISH D S Corporation and Certain o its S sidiaries* Dkt. No. 1604 (as may be modified, amended, or supplemented in accordance with its terms, and including all exhibits, schedules, or supplements thereto, the "**BS an**").[2]

**EASE A E FUR ER ICE** that each of the conditions precedent to the occurrence of the Effective Date, as set forth in Article I of the DBS Plan, has been satisfied or waived in accordance therewith, and the DBS Plan became effective and was substantially consummated on __tober______ (the "**E e ti e ate**").

**EASE A E FUR ER ICE** that the Court has approved, among other things, certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the DBS Plan and in the DBS Confirmation Order.

---

1 The last four digits of DISH DBS Corporation's and DISH Wireless L.L.C.'s respective tax identification numbers are 967 and 63 . A complete list of each of the Debtors in these Chapter 11 Cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https: dm.epiq11.com DBS. The location of the Debtors' corporate headquarters and the Debtors' service address is 9601 S. Meridian Blvd., Englewood, Colorado 0112.

2 Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the DBS Plan.

**EASE A E FUR ER ICE** that the DBS Plan and its provisions are binding on the DBS Debtors, the Reorganized DBS Debtors, all Holders of Claims against or Interests in the DBS Debtors, and each such Holder's respective heirs, executors, administrators, successors, and assigns, regardless of whether such Holder voted to accept the DBS Plan or whether the Claim or Interest of such Holder is Impaired under the DBS Plan.

**EASE A E FUR ER ICE** that all requests for payment of Professional Fee Claims must be filed with the Court and served on the Reorganized DBS Debtors on or before the later of (a) November 16, 2026 and (b) the date that is forty-five (45) days after entry of an order authorizing the retention of such Professional.

**EASE A E FUR ER ICE** that, pursuant to Article II. of the DBS Plan, any Entity that desires to receive notices or other documents after the Effective Date must file a renewed request to receive notices and documents pursuant to Bankruptcy Rule 2002, and the Reorganized DBS Debtors are authorized to limit the list of Entities receiving notices and documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

**EASE A E FUR ER ICE** that the DBS Plan and the DBS Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the DBS Plan and the DBS Confirmation Order in their entirety.

**EASE A E FUR ER ICE** that the DBS Confirmation Order, the DBS Plan, and copies of all documents filed in the Chapter 11 Cases are available free of charge by: (a) calling the Debtors' restructuring hotline at ( ) 73-075 (U.S. Canada toll free) or 1 (971) 414-349 (International, for calls originating outside of the U.S. Canada) or (b) visiting the Debtors' restructuring website at https: dm.epiq11.com DBS. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER (Public Access to Court Electronic Records) at: www.txs.uscourts.gov.

*emainder o Pa e Intentionally Le t lank*

October 1, 2026
Houston, Texas

s Charles . oster

I E CASE
Charles R. oster (Texas Bar No. 2412 27 )
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email: charles.koster whitecase.com

I E CASE
Thomas E Lauria (Texas Bar No. 1199 025)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Email: tlauria whitecase.com

Ronald . orsich (admitted *pro hac vice*)
Doah im (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Email: rgorsich whitecase.com
doah.kim whitecase.com

Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
300 N. LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 1-5400
Email: mlinder whitecase.com
laura.baccash whitecase.com

David M. Turetsky (admitted *pro hac vice*)
Samuel P. Hershey (S.D. Texas Fed. No. 3465170)
Andrea Amulic (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 19- 200
Email: david.turetsky whitecase.com
sam.hershey whitecase.com
andrea.amulic whitecase.com

*Proposed Co nsel to the De tors and De tors in Possession*

**Certi i ate o Ser i e**

I certify that on October 1, 2026, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Charles . oster*
Charles R. oster